**STEVEN AMES BROWN**
Entertainment Law 83363
69 Grand View Avenue
San Francisco, California 94114-2741
415/647-7700 Tele
415/285-3048 Fax

**THERESE Y. CANNATA** SBN 88032
Cannata, Ching & O'Toole, LLP
100 Pine Street
San Francisco, California 94111
415/409-8900 Tele
415409-8904 Fax

Attorneys for plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN AMES BROWN, | CIVIL NO. Cv. 08-02348 VRW |
|        Plaintiff, | |
|    v. | ADMINISTRATIVE MOTION RE: RELATED CASES |
| ANDREW B. STROUD, an individual and STROUD PRODUCTIONS AND ENTERPRISES, INC. | [L.R. 3-12] |
|       Defendants. | |
| _____/ | |

TO:  THE COURT AND ALL PARTIES

PLEASE TAKE NOTICE that pursuant to Local Rules 3-12 and 7-11, Plaintiff hereby brings an administrative motion to determine whether the within action is "related" to *Nina Simone v. San Juan Music Group,* Cv 94-1288-TEH ("Prior Action").  Alternatively, Plaintiff moves to transfer this case to Judge Henderson to avoid the possibility of subsequent inconsistent results.   The motion will be based on this notice and the accompanying supporting materials.

MEMORANDUM

At all times herein mentioned Plaintiff has been an attorney licensed in California and a member of the bar of this Court.  Nina Simone was an iconic singer and recording artist. Between 1961 and 1973 Nina Simone was married to defendant Andrew Stroud. Simone and Stroud had one child, Lisa Celeste Stroud.   Simone died in 2003 and her estate is in probate in the Los Angeles Superior Court.  The Estate's administrator is Lisa Stroud.

After Simone and Stroud divorced, Stroud claimed rights in various Simone recordings.  Prior to 1994, Stroud transferred whatever rights he had in the recordings at issue, reserving onto himself a royalty, *i.e.,* a share of the gross revenue.  *Brown Dec.,* ¶¶ 3 – 4.

In 1994, Nina Simone filed the Prior Action against Stroud's successors in this Court.  She was represented by Plaintiff.   Under Plaintiff's agreement with Simone, she transferred to him a 40% ownership interest in any sound recordings the title to which she recovered in that action.   *Brown Dec.,* ¶ 3.   This Court entered various permanent injunctions against the named defendants and those acting in concert with them, prohibiting them, *inter-alia,* from manufacturing or vending any items embodying Nina Simone's voice or authorizing others to manufacture or vend such items.  Attached hereto as *Exhibit 1* is a true copy of one of the Court's injunctions in the Prior Action.

In 1995, Nina Simone filed an additional action against other persons in the "Stroud chain of title" to the disputed masters, *Nina Simone v. Sehorn, et al.*, Cv 95-3590-CAL. Again the Court entered various permanent injunctions against such persons, virtually identical in form to the injunction issued in the Prior Action.  Attached hereto as *Exhibit 2* is a true copy of one of the Court's injunctions in the additional action.

No later than 2000, in a conversation with Plaintiff, defendant Andrew Stroud acknowledged he had received notice of the injunctions, had read them, and understood they prohibited him from licensing any the disputed Nina Simone recordings that were the subject of the injunctions.  During that same conversation, Mr. Stroud was reminded that the injunctions also prohibited him from manufacturing or vending, or soliciting or authorizing others to manufacture or vend, *any* items embodying Nina Simone's voice, not merely the vocal performances embodied in the disputed recordings.  *Brown Declaration,* ¶ 4.

In 2004, Plaintiff and the Estate of Nina Simone licensed their Nina Simone recording of *Just in Time* for use in a motion picture distributed by Castle Rock Entertainment, Inc. and two Warner Bros.' companies, all three of which had principal places of business in California.  This particular Nina Simone version of *Just in Time* was the subject of the injunction in the Prior Action.  *Brown Dec.*, ¶ 6

In 2005, Defendants, through their counsel, slandered Plaintiff's title to *Just in Time* by stating to Castle Rock and the two Warner Bros. companies that the Stroud company was the sole owner of the recording.  Defendants violated the injunctions by demanding that Castle Rock and the two Warner Bros. companies obtain Stroud's consent to the distribution of the film embodying *Just in Time* and by further demanding that Castle Rock and the two Warner Bros. companies pay licensing fees to Stroud.  *Brown Dec.* ¶ 7, *Exhibit 3.*

///

Defendant Andrew Stroud has further violated the injunctions by offering to sell to consumers downloaded copies of *Just in Time* on websites accessible in California. *Brown Dec.,* ¶ 8.

The purpose of this action is to obtain declaratory relief in Plaintiff's favor and against Defendants, finding that, *inter-alia,* Defendants are bound by the prior injunctions. Attached hereto as *Exhibit 4,* is a true copy of the *Complaint* herein.

Local Rule 3-12 defines a "related case" as including, *inter-alia*, a case where the property is substantially the same and there is the possibility of conflicting results or duplication of judicial labor if the cases are conducted before different judges.

The property is identical. The very recording at issue herein is covered by the injunction issued in the Prior Action.  Moreover, the Stroud defendants appear to be claiming 100% ownership of 52 recordings covered by the prior injunctions.  *Brown Dec.*, ¶ 9.  Deciding who is bound by the prior injunction and which versions of recordings are covered by the prior injunction duplicates the judicial labor and moreover, creates uncertainty if the within action proceeds before a judge who did not grant the original injunction.

That directly leads to a second and perhaps overarching concern.  Since there always remains the possibility of direct contempt proceedings under the prior injunction, there is always the possibility that Judge Henderson may come to a different conclusion as to who is bound by his injunction and which versions of Nina Simone's recordings were the subject of his injunction.  That could lead to conflicting results. [1]

[1] The Court may be curious as to why Plaintiff did not simply petition to intervene in the Prior Action and enforce the injunction by way of direct contempt proceedings.  Simply put, Plaintiff's goal is to bring Defendants into compliance and this proceeding accomplishes that result without the necessity of Plaintiff seeking a contempt citation against the father of the co-owner of the subject property.  (Nina Simone's estate is administered by Andrew Stroud's daughter, Lisa Stroud.)  Moreover, since neither Plaintiff nor the Defendants have joined Lisa as a party, this matter can be concluded without the spectacle of Mr. Stroud and Lisa Stroud being adverse parties.

Thus, whether the Court determines the two actions are "related" within Local Rule 3-12, or whether the Court transfer's this case to Judge Henderson under its inherent power to supervise its own proceedings, the only way to eliminate the possibility of inconsistent results is to transfer this case to Judge Henderson.

Dated: July 20, 2008

Respectfully submitted,


/x/

STEVEN AMES BROWN,
Plaintiff in *pro se*

DECLARATION OF STEVEN AMES BROWN

I, STEVEN AMES BROWN, declare:

1.  I am the plaintiff in this action.

2.  At all times herein mentioned I was an active member of the State Bar of California and the bar of this Court.

3.  I was Nina Simone's attorney in *Nina Simone v. San Juan Music Group,* Cv 94-1288-TEH and *Nina Simone v. Sehorn, et al.*, Cv 95-3590-CAL.  Pursuant to my written contract with Nina Simone, I received from her a 40% ownership interest in all sound recordings the titles to which were cleared in those lawsuits.  I attach as *Exhibit 1* a true copy of one of the injunctions issued in *Nina Simone v. San Juan Music Group* and as *Exhibit 2*, a true copy of one of the injunctions issued in *Nina Simone v. Sehorn*.

4.  In no later than 2000, I received an unsolicited telephone call from Andrew Stroud.  He told me the purpose of his call was to discuss a possible joint-venture to exploit Nina Simone sound recordings.  During that call, Mr. Stroud admitted that he had sold any interest he ever had in 52 of the recordings he claimed to have received from Nina Simone and retained a royalty interest.  He also told me he had received copies of the injunctions, had read them, understood he had no right to exploit recordings listed in those injunctions and assured me he was proposing the exploitation of different recordings.  I pointed out to him that he could not receive any royalties on the 52 recordings because they were all covered by the injunctions.  I also pointed out to him that the injunctions not only prohibited his exploitation of those recordings, but prohibited him from attempting to license *any* recordings embodying Nina Simone's voice.  I concluded the call by summarizing for Mr. Stroud that he was essentially out of the Nina Simone business and that if we found out he was in any manner participating in the exploitation of any Nina Simone recordings, I was certain that Nina would sue him.

///

5.  Nina Simone passed away on April 21, 2003 and as of her death, I had no knowledge of Mr. Stroud exploiting or attempting to exploit any Nina Simone recordings.

6.  One of the sound recordings which was the subject of all the injunctions is Nina Simone's live recording of *Just in Time*.  In 2004 a license was issued on behalf of the Estate of Nina Simone and me, authorizing the synchronization of *Just in Time* in the motion picture *Before Sunset*, which was to be distributed by Castle Rock and the two Warner Bros. companies, companies I know to have their principal places of business in California.

7.  In 2005, Andrew Stroud, doing business under the name of Stroud Productions & Enterprises, Inc., served a demand letter on Castle Rock and two Warner Bros. companies in California concerning the version of *Just in Time* synchronized into *Before Sunset*.  Attached as *Exhibit 3* is a true copy of the demand letter that was forwarded to me by one of the Warner Bros.' companies.

8.  Within the last three years I have personally seen a website, which I know to have been registered to "Andy Stroud" at his home address of 5900 Arlington Avenue, Bronx, New York, which sold downloadable copies of the version of *Just in Time* that was the subject of the injunctions and was embodied in the motion picture *Before Sunset*.  I accessed the website from San Francisco.  I activated the "listen" button and heard an excerpt from the recording of which I am an owner and I added the selection to the purchase "cart" thereby verifying that it was in fact for sale on that website.  Today I ran a "whois" ownership check on the domain and Andy Stroud remains the registrant, *i.e.,* registered owner.

9.  I believe that Defendants are claiming ownership of 52 of the recordings covered by the injunctions, and not just the track *Just in Time*, based on the following facts.  First, Mr. Stroud confirmed that he had transferred all his interest in those 52 recordings and since he is now claiming ownership of one of those recordings (apparently disputing that

he ever sold the catalog), the other 51 recordings would appear to remain in the same catalog he is claiming.  Second, Mr. Stroud's attorney, Adam R. Bialek (of the same firm that represents him here), told Dorothy Weber (the attorney I retained to defend Castle Rock and the two Warner Bros. companies   against Stroud's claims) that Mr. Stroud intended to commence a number of lawsuits concerning the 52 recordings because he claims he owns them.  Dorothy Weber repeated the statements to me. [1]

10.   Attached as *Exhibit 4* is a true copy of the *Complaint* in this matter.

11.   As required by Local Rule 7-11(a), we have requested the Defendants to stipulate to the "relating" of the two cases.  Attached as *Exhibit 5* is a true copy of the request.  We have received no response to that letter.

12.  I have read the requirements of Local Rule 3-12(b) that notice be served on all other known parties.  With respect to the prior actions, there are no longer any "parties" in that the actions have been fully adjudicated and final judgments and injunctions entered. No rights of any defendant in those prior actions are affected by the within proceeding. Moreover, I am informed and believe that the corporate defendants in the earlier proceedings have been fully dissolved and the only natural person who stood in the "chain of title" to the 52 recordings as successor to the Stroud defendants was Marshall Sehorn, who is deceased.   If there are any surviving persons or entities from those prior proceedings, I do not know their whereabouts.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: July 20, 2008

/x/

_____

---

[1] [These statements are not offered to prove the truth of the matter asserted, but merely to prove that Stroud's authorized representative is claiming that Mr. Stroud is the sole owner of the 52 recordings and intends to initiate lawsuits for infringement of his alleged rights.]

ORIGINAL
FILED

MAR 6    1995

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1    **STEVEN AMES BROWN**
     Attorney
2    69 Grand View Avenue
     San Francisco, California 94114-2741
3    415/647-7700

4    Attorney for plaintiff

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11   NINA SIMONE,
                                           CIVIL NO. CV-94--1288-TEH
12            Plaintiff,

13       v.

14   SAN JUAN MUSIC GROUP,
     MUSICRENT, INC. THE LONG ISLAND          **JUDGMENT & PERMANENT**
15   MUSIC COMPANY LTD., TRING                **INJUNCTION**
     INTERNATIONAL PLC,
16   DOES I-XX, inclusive,

17            Defendants.
                                        /
18

19

20       Upon the agreement of the parties in their *Stipulation For Entry of Judgment*, it

21   is by this Court ordered and adjudged this day:

22       1. The Court has jurisdiction of the subject matter hereof and the parties to the

23   *Stipulation For Entry of Judgment.*

24       2.   The provisions of this Judgment are applicable to and binding upon San

25   Juan Music Group and Musicrent, Inc. along with Jay Chernow and Michael Chernow

26   San Juan, and each of them, and upon all persons acting in concert with them, who

Exhibit 1

1   have actual or constructive notice of same (collectively known as "San Juan").

2          3. San Juan, their officers, agents, servants, employees, and all persons acting
3   in concert or participation with them, and each of them, are perpetually enjoined from
4   doing, or attempting to do, or causing to be done, either directly or indirectly, by any
5   means, method or device, whether presently known or hereafter to be devised, any
6   and all of the following acts or practices:

7          A.   Manufacturing or vending any items which bear the name "Nina
8   Simone", without the written consent of Nina Simone, or her lawful representative,
9   first had and obtained.

10         B.   Manufacturing or vending any items which bear the likeness of Nina
11  Simone, without the written consent of Nina Simone, or her lawful representative,
12  first had and obtained.

13         C.   Manufacturing or vending any items which bear the voice or any
14  musical performance by Nina Simone, without the written consent of Nina Simone, or
15  her lawful representative, first had and obtained.

16         D.   Soliciting or authorizing any person, firm or entity to perform any of
17  the acts prohibited in subsections "A" through "C" above, without the written
18  consent of Nina Simone, or her lawful representative, first had and obtained.

19         4. Nina Simone shall recover the sum of fifteen thousand dollars ($15,000.00),
20  which such sum shall include all costs awarded to her and paid and delivered to
21  "Steven Ames Brown Client Trust."

22         5. All licenses heretofore made by San Juan, or anyone acting in concert with
23  them, or any of them, which authorizes any form of exploitation of any sound
24  recordings bearing the name, voice and/or musical performances of Nina Simone
25  ("Licenses"), are hereby modified as follows:

26  ///

Page 2

Exhibit 1

A.    The Licenses in effect on June 1, 1994 shall terminate on December 1, 1995, unless earlier terminated by the terms thereof;

B.    The authority to manufacture sound recordings pursuant to any Licenses in effect on June 1, 1994 expires on May 31, 1995, unless earlier terminated by the terms thereof;

C.    The authority pursuant to any Licenses in effect on June 1, 1994 to sell off inventory expires on December 1, 1995, unless earlier terminated by the terms thereof;

D.    All statements and royalties due under any Licenses shall be delivered to Steven Ames Brown at 69 Grand View Avenue, San Francisco, California 94114-2741. All royalty payments shall be payable to Steven Ames Brown & Jon S. Heim until December 1, 1995 which such royalties shall be shared equally by Nina Simone and San Juan.    No portion of any royalties accruing under any Licenses after December 1, 1995 inures to the benefit of San Juan.

E.    San Juan shall use their best efforts to ensure that all royalties owing under any Licenses are timely and accurately paid as directed in subparagraph D above.  San Juan shall for diligently and thoroughly pursue any acts of underpayment of royalties or untimely delivery of accountings, at their own cost.  Without limiting the foregoing duty, if after 30 days written notice of default to San Juan and/or any of the Licensees that a default by any Licensee in the performance of any obligation imposed by any license has not been satisfactorily performed, Nina Simone may, in her own name and without further notice or obligation to San Juan in respect thereto, enforce the obligation.

6.  San Juan has transferred, sold and assigned to Nina Simone, all their right, title and interest in and to any and all sound recordings embodying any vocal and/or musical performances by Nina Simone, including but not limited to: *Do Nothing Till*

Page 3

Exhibit 1

*You Hear From Me, I Got It Bad & That Ain't Good, Hey Buddy Bolden, Something To Live For, You Better Know It, I Like The Sunrise, Solitude, The Gal From Joe's, Satin Doll, It Don't Mean A Thing If It Ain't Got That Swing, Black is The Color, Since My Love Is Gone, Blue Prelude, Spring Is Here, I Loves You Porgy, When I Was A Young Girl, Near To You, The Thrill Is Gone, Little Liza Jane, Here Comes The Sun, My Way, Fine And Mellow, Nina's Blues, Work Song, Angel of Morning, Ain't Got No/I Got Life, You Can Have Him (I Don't Want Him), Peace Of Mind, Don't Take All Night, Four Women, "No Opportunity Necessary, No Experience Needed," Summertime, How Long Must I Wander, Please Lead Me, Wild Is The Wind, Trouble In Mind, After You've Gone, Nobody, I Want A Little Sugar In My Bowl, Ne Me Quitte Pas, Don't Let Me Be Misunderstood, Just In Time, Sea Lion Woman, House of the Rising Sun, Remind Me, Gin House Blues, Backlash Blues, Assignment Song, "To Be Young, Gifted And Black," Ain't No Use, How Can I Make Him Love Me, I Am Blessed, Laziest Gal In Town, For All We Know, Night Song* (the "Masters.")

    7.  Within 14 days hereof, San Juan shall deliver to Nina Simone, in care of her attorney, Steven Ames Brown:

    A. Each "master recording" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone; each "outtake" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone;  all packages, boxes, wrappers, board labels, track sheets, packing slips and each and every other item which identifies the contents of each box or container pertaining to each "master recording" or "outtake."

    B. All licenses ever made which pertain to any recordings embodying a vocal or musical performance by Nina Simone, or references the name Nina Simone,

Exhibit 1

1 | unredacted.

2 |       C. All royalty statements ever created concerning any items embodying a
3 | vocal or musical performance by Nina Simone or references the name Nina Simone,
4 | that were generated for any one and for any purpose, unredacted.

5 |     8. Within 14 days hereof, San Juan shall deliver a notice to each of its
6 | licensees stating that effective September 30, 1994 all royalty statements and
7 | payments are to be delivered to Steven Ames Brown at 69 Grand View Avenue, San
8 | Francisco, California 94114-2741 and all royalties are to be payable to Steven Ames
9 | Brown & Jon S. Heim. A copy of each notice shall simultaneously be sent to Nina
10 | Simone in care of her attorney, Steven Ames Brown, at his address above.

11 |     9. All parties hereto shall bear their own costs and attorney's fees.

12 |     10. Nina Simone shall take no further action against any of defendant's
13 | licensees, timely disclosed pursuant to paragraph 7.B., including but not limited to
14 | Tring International PLC and/or The Long Island Music Company in respect of the
15 | Masters, except as provided for herein.

16 |     11. Except as provided for herein, Nina Simone shall not license any of the
17 | Masters to any of San Juan's licensees timely disclosed to Simone by San Juan as
18 | provided for in paragraphs 7.B. & C., for any period commencing before December 1,
19 | 1995.

20 |     Dated: March $\underline{6}$ , 1995

21 |                     It is so ordered:

22 |

23 |

24 |                     THELTON E. HENDERSON

25 |                     Hon. Thelton E. Henderson, C.J.
                    United States District Court Judge

26 |

Exhibit 1

RECEIVED

JUL - 9 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL
FILED

JUL  9 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  **STEVEN AMES BROWN**
   Entertainment Law 83363
2  69 Grand View Avenue
   San Francisco, California 94114-2744
3  415/647-7700

4  Attorney for plaintiff

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  NINA SIMONE,
                                    CIVIL NO. C-95-3590-CAL
12          Plaintiff,

13      v.

14  MARSHALL SEHORN, an individual and
    *dba* RED DOG EXPRESS & WHITE DOG       JUDGMENT & PERMANENT
15  RECORDS; EXCELL MUSIC, INC.;            INJUNCTION RE: SEHORN
    WHITE DOG RECORDS, LTD.; RED DOG
16  EXPRESS, INC.; ANTHONY SANUCCI,
    an individual; JERRY WILLIAMS *dba*
17  SWAMP DOG ENTERTAINMENT GROUP;          JUL 2 1 1998
    THE MUSIC WORKS, LTD, *dba* TOMATO
18  RECORDS                                 ENTERED IN CIVIL DOCKET_____, ER

19          Defendants.

20  _____/

21

22          Upon the agreement of the parties in their *Stipulation For Entry of Judgment*, and

23  taking into consideration the *Declaration of Steven Ames Brown*, the Court finds there is

24  no just reason for delaying the entry of judgment upon the *Stipulation* and the Court orders

25  that judgment be entered forthwith;

26          IT IS BY THIS COURT ORDERED AND ADJUDGED THIS DAY:

Exhibit 2

1    1. The Court has jurisdiction of the subject matter hereof and the parties hereto,

2  including Barbara Darcy who has voluntarily submitted herself to the jurisdiction of this

3  Court.

4    2. The provisions of judgment are applicable to and binding upon Marshall Sehorn,

5  Red Dog Express, Inc., White Dog Records, Ltd., Excel Music, Inc. and Barbara Darcy

6  (collectively "Sehorn") and upon all persons acting in concert with them who have actual

7  or constructive notice of hereof.

8    3. Nina Simone is the sole and exclusive owner of the copyrights and all other

9  rights of reproduction of the sound recordings embodying her vocal land/or musical

10  performances of the compositions: *Do Nothing Till You Hear From Me, I Got It Bad & That*

11  *Ain't Good, Hey Buddy Bolden, Something To Live For, You Better Know It, I Like The*

12  *Sunrise, Solitude, The Gal From Joe's, Satin Doll, It Don't Mean A Thing If It Ain't Got That*

13  *Swing, Black is The Color, Since My Love Is Gone, Blue Prelude, Spring Is Here, I Loves*

14  *You Porgy, When I Was A Young Girl, Near To You, The Thrill Is Gone, Little Liza Jane,*

15  *Here Comes The Sun, My Way, Fine And Mellow, Nina's Blues, Work Song, Angel of*

16  *Morning, Ain't Got No/I Got Life, You Can Have Him (I Don't Want Him), Peace Of Mind,*

17  *Don't Take All Night, Four Women, "No Opportunity Necessary, No Experience Needed,"*

18  *Summertime, How Long Must I Wander, Please Lead Me, Wild Is The Wind, Trouble In*

19  *Mind, After You've Gone, Nobody, I Want A Little Sugar In My Bowl, Ne Me Quitte Pas,*

20  *Don't Let Me Be Misunderstood, Just In Time, Sea Lion Woman, House of the Rising Sun,*

21  *Remind Me, Gin House Blues, Backlash Blues, Assignment Song, "To Be Young, Gifted*

22  *And Black," Ain't No Use, How Can I Make Him Love Me, I Am Blessed, Laziest Gal In*

23  *Town, For All We Know, Night Song, That's All I Want From You; Cotton Eyed Joe; I Wish*

24  *I Knew How It Would Feel To Be Free; But Beautiful; Tell Me More & More & Then Some;*

25  *This Year's Kisses; Strange Fruit; Don't Explain; Pigfoot And A Bottle of Beer; Love Me Or*

26  *Leave Me, The Other Woman, Devil's Workshop, The Way I Love You, Life, One More*

*Sunday in Savannah, I'll Look Around, Blues, When I Was In My Prime, Zungo, Nobody Wants You, I Love To Love, Ding Song, I Love My Baby, Sinnerman, Pirate Jenny, For Awhile, You Took My Teeth, Do What You Gotta Do, Mississippi Goddamn, I Sing Just To Know That I'm Alive, My Baby Just Cares For Me, It's Cold Out Here, Fodder On Her Wings, Touching And Caring, Saratoga, You Must Have Another Lover, Flo Me La, I'm Blue, In The Evening By Moonlight, He Was Too Good To Me, Children Go Where I Send You, Buzzin, Ya Betcha, Lovin' Woman, "Baubles, Bangles and Beads," Bouncin' Back Pepper Pie, Rug Cutter, Black Swan, Twelfth of Never, Will I find My Love Today, Samson And Delilah, You'd Be So Nice To Come Home To, If He Changed My Name, Day And Night* and all alternate versions, excerpts, and outtakes thereof and all artwork pertaining thereto ("*Master Recordings*").

4.    Sehorn, their officers, agents, servants, employees, heirs, successors and all persons acting in concert or participation with them, or any of them, are perpetually enjoined from doing, or attempting to do, or causing to be done, either directly or indirectly, by any means, method or device, whether presently known or hereafter to be devised, any and all of the following acts or practices:

A.    Manufacturing or vending any items which bear the name "Nina Simone", without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

B.    Manufacturing or vending any items which bear the likeness of Nina Simone, without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

C.    Manufacturing or vending any items which bear the voice or any musical performance by Nina Simone, without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

D.   Soliciting or authorizing any person, firm or entity to perform any of the acts prohibited in subsections "A" through "C" above, without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

5.   Within 14 days hereof, Sehorn shall deliver to Nina Simone, in care of her attorney, Steven Ames Brown:

A.   Each "master recording" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone; each "outtake" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone; all artwork, packages, boxes, wrappers, board labels, track sheets, packing slips and each and every other item which identifies the contents of each box or container pertaining to each "master recording" or "outtake" which are in Sehorn's possession or control.

B.   All originals of licenses ever made which pertain to any recordings embodying a vocal or musical performance by Nina Simone, or references the name Nina Simone, unredacted, which are in Sehorn's possession or control.

C. All originals of royalty statements ever created concerning any items embodying a vocal or musical performance by Nina Simone or references the name Nina Simone, that were generated for any one and for any purpose, unredacted, which are in Sehorn's possession or control.

10.  Nina Simone has reserved all her rights against all others.

Dated:  7/10/48

IT IS SO ORDERED:

Charles A. Legge

Exhibit 2

Sep-27-05   12:57pm   From-Sloss Law Offices                212 827 9498    T-460  P 003/005  F-179
                                                            TO 91X108883594           P.02/03
JUN-21-2005   10:27   FROM  KRAMER

MICHAEL B. KRAMER & ASSOCIATES
ATTORNEYS AT LAW
150 EAST 58TH STREET
NEW YORK, NEW YORK 10155

MICHAEL B. KRAMER*                TELEPHONE (212) 619-0004        NEW JERSEY OFFICE
                                 FAX (212) 319-0648
RUBIN JAY GINSBERG*                                              61 HICKGATE TERRACE
LAURIE A. STANZIALE*                                            BRIDGEWATER, NJ 07081
                                                                  (908) 501-0099
*ADMITTED N.Y. & N.J.
                                                            KINDLY REFER ALL CORRESPONDENCE
                                                               TO NEW YORK CITY OFFICE

                        RECEIVED                                 SENDER'S E-MAIL:
                                                            mkramer@mbkramerlaw.com
                       JUN 2 1 2005

                       JESSICA/TOOBY            June 16, 2005

**BY CERTIFIED MAIL**

Castle Rock Entertainment, Inc.
335 N. Maple Drive, Suite 135
Beverly Hills, CA 90210-3879

Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Burbank, CA 91522

Warner Independent Pictures Co.
4000 Warner Blvd.
Burbank, CA 91522

*fax*
*To Paul Brennan*
*212 627 9498*
*B discussed*

## Re: "Just In Time"/Nina Simone (the "Work")

To Whom It May Concern:

    This office represents the interests of Stroud Productions and Enterprises, Inc. ("Stroud"), the owner of the sound recording including the copyright therein, embodying the performance by Nina Simone of the composition entitled "Just In Time"(the "Work"), such performance being recorded at the Montreux Jazz Festival in or about June 1968.

    It has come to Stroud's attention that without a license or other agreement from Stroud, you and/or your agents and licensees synchronized the Work in time relation with a motion picture known as "Before Sunset" (the "Film") and that you have, and continue to commercially exploit the Film theatrically and through audio-video configurations to the public. Said acts constitute the conversion of Stroud's property and an infringement upon Stroud's copyright in the Work. You are hereby directed to immediately cease and desist all unauthorized distribution,

O:\MBK\LIT\Stroud\Before Sunset\CRE.let.wpd

Exhibit 3

Sep-22-05   12:56pm   From-Stoss Law Offices              212 627 8400      T-460  P.004/005  F-170
JUN-22-2005 18:25  FROM:
JUN-21-2005  18:28   FROM  KRAMER                          TO  91710888888594            P.03/03

# MICHAEL B. KRAMER & ASSOCIATES

copying and/or public or digital performances of the Film containing the Work.  You are further
directed to provide this office with an accounting of all copies, distributions and public and/or
digital performances of the Film from its inception to the present.

In the event you fail to comply promptly with these requests, we will be
compelled to pursue court intervention for an order enjoining the infringing activities and related
relief.  Our clients reserve any and all rights they may have under Federal or State law.

Very truly yours,

Michael B. Kramer

cc:    Stroud Productions and Enterprises, Inc.

G:\MBKA\LIT\Stroud\Bailoe.Stroud\CLE.let.wpd

Exhibit 3

1  **STEVEN AMES BROWN**
   Entertainment Law 83363
2  69 Grand View Avenue
   San Francisco, California 94114-2741
3  415/647-7700 Tele
   415/285-3048 Fax
4
   **THERESE Y. CANNATA** SBN 88032
5  Cannata, Ching & O'Toole, LLP
   100 Pine Street
6  San Francisco, California 94111    E-filing
   415/409-8900 Tele
7  415409-8904 Fax
8  Attorneys for plaintiff
9
10                 UNITED STATES DISTRICT COURT
11              NORTHERN DISTRICT OF CALIFORNIA
12                   SAN FRANCISCO DIVISION
13                     CV 08      2348
14  STEVEN AMES BROWN,
                                    CIVIL NO.                VRW
15            Plaintiff,
                                    COMPLAINT
16      v.
17  ANDREW B. STROUD, an individual and
    STROUD PRODUCTIONS AND
18  ENTERPRISES, INC.
19            Defendants.
                                    /
20  ────────────────────────────────
21  Plaintiff alleges as follows:

22      1.  Jurisdiction.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §

23  1332.  This action also arises under the Federal Declaratory Judgment Act 28 U.S.C. §§

24  2201, 2202.  Venue is proper pursuant to 28 U.S.C. § 1391(A)(2)&(3).  Plaintiff is a citizen

25  of California and defendants are citizens of New York.  The property in controversy

26  exceeds $75,000.00 in value, exclusive of interest and costs.

Exhibit 4

2. Intradistrict Assignment. This action arose in San Francisco County.

3. At all times herein mentioned plaintiff was an attorney licensed to practice law in California and was counsel to Eunice K. Stroud who was professionally known as Nina Simone ("Dr. Simone"). Plaintiff represented Dr. Simone in two actions before this Court, *Nina Simone v. San Juan Music Group, et al.* 94-CV-1288-TEH and *Nina Simone v. Marshall Sehorn, et a.,* 95-Cv-3590-CAL (the "Prior Actions"). The Prior Actions resulted in five separate final judgments and permanent injunctions against the various defendants pertaining to the same approximately 104 sound recordings authored by Nina Simone (collectively the "Masters"). Pursuant to the written conveyances executed by the various defendants to Dr. Simone and the five final judgments and permanent injunctions in the Prior Actions, Dr. Simone acquired all rights to the Masters that she did not already own.

4. By virtue of a written contract made on or about July 30, 1990 between Dr. Simone and Plaintiff, Plaintiff obtained a 40% ownership interest in all the Master Recordings that were the subject of the Prior Actions.

5. The various defendants in the Prior Actions claimed interests in 52 of the Masters based on chains of title that purportedly began with Andrew B. Stroud and/or Stroud Productions, Inc. (collectively "Stroud.")

6. No later than approximately 2000 Stroud had actual notice of the permanent injunctions entered in the Prior Actions and their application to Stroud as persons acting in concert and/or participation with said prior defendants.

7. Notwithstanding Stroud's actual notice of the final judgments and permanent injunctions entered in the Prior Actions, Stroud contends that they are the exclusive owners of one or more the Masters (collectively the "Disputed Masters") and that Plaintiff owns no interest in the Disputed Masters.

8. The parties require a judicial declaration so they know their rights and responsibilities in relation to the Disputed Masters and with respect to the final judgments

Exhibit 4

1 │ and permanent injunctions issued in the Prior Actions.

2 │     WHEREFORE, plaintiff prays judgment as follows:

3 │     1. For declaratory judgment that Stroud has no right, title, nor interest in any of the

4 │ Disputed Masters and that they are bound by the final judgments and permanent

5 │ injunctions entered in the Prior Actions;

6 │     2. For costs of suit.

7 │     3. For such other relief as the Court may deem just.

8 │ Dated: May 7, 2008

9 │                           Respectfully submitted,

12 │                           STEVEN AMES BROWN,
   │                           Plaintiff in *pro se*

Page 3
Complaint

Exhibit 4



# CANNATA, CHING & O'TOOLE LLP

Attorneys at Law

Maria C. Weydemuller
mweydemuller@ccolaw.com

June 12, 2008

**By Email and U.S. Mail**
Francis J. Torrence
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
525 Market Street, 17th Floor
San Francisco, CA 94105

Re:    *Brown v. Stroud et al* (U.S. District Court, Northern District of California, Case No. CV 08-2348)

Dear Mr. Torrence:

Local Rule 3-12(b) requires that a party file an administrative motion to consider whether a case may be related under Local Rule 7-11. I am writing to inquire if your clients are willing to stipulate to an order relating the action *Nina Simone v. San Juan Music Group, et al.* CV-94-1288-TEH to the current action pursuant to Local Rules 7-11 and 3-12(b).

If you agree to the order we will prepare and forward a stipulation for your comments and ultimate signature. If you decline to so stipulate, we will attach your responsive letter to an administrative motion to explain why we were unable to provide a stipulation, as required by Local Rule 7-11(a).

Best regards,

CANNATA, CHING & O'TOOLE LLP

MARIA C. WEYDEMULLER

TYC:mcw
CC:    Steven Brown (via email and U.S Mail)
       Dorothy Weber (via facsimile and U.S. Mail)
800045.ltr.Torrence.6.12.08.mcw.wpd

100 Pine Street, Suite 1775 San Francisco, CA 94111
Tel: 415.409.8900 ◼ Fax: 415.409.8904 ◼ www.ccolaw.com

San Francisco ◼ Walnut Creek

Exhibit 5