1  **STEVEN AMES BROWN**
Entertainment Law 83363
2  69 Grand View Avenue
San Francisco, California 94114-2741
3  415/647-7700 Tele
415/285-3048 Fax
4
**THERESE Y. CANNATA** SBN 88032
5  Cannata, Ching & O'Toole, LLP
100 Pine Street
6  San Francisco, California 94111
415/409-8900 Tele
7  415/409-8904 Fax
8  Attorneys for plaintiff
9
10              UNITED STATES DISTRICT COURT
11           NORTHERN DISTRICT OF CALIFORNIA
12               SAN FRANCISCO DIVISION
13
14  STEVEN AMES BROWN,
                                   CIVIL NO. Cv. 08-02348 VRW
15          Plaintiff,
16      v.                         PLAINTIFF'S MEMORANDUM IN
                                   OPPOSITION TO DEFENDANTS'
17  ANDREW B. STROUD, an individual and   MOTION TO DISMISS
STROUD PRODUCTIONS AND
18  ENTERPRISES, INC.
19          Defendants.
_____/
20
21
22                                 Date:  August 21, 2008
23                                 Time:  2:30 p.m.
24                                 Judge:  Hon. Vaughn R. Walker
25
26

## TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………..1

ARGUMENT ...………………………………………………………………………...1

    1.    Specific Jurisdiction Lies Where A Defendant Harms A Plaintiff He Knows To Live Within the Forum..………………………………………………………....1

        A.    Defendants Slandered Plaintiff's Title…………………………………….2

    2.    Defendant Andrew Stroud Committed Infringement in California………………6

    3.    The Stroud Defendants Are Subject To Specific Jurisdiction Because They Violated This Court's Injunctions Which Pertain To The Sound Recordings At Issue Here………………………………………………………………………7

CONCLUSION………………………………………………………………………..10

DECLARATION OF STEVEN AMES BROWN …………………………………………11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bancroft & Masters v. Augusta National Inc.*, 223 F.2d 1082 (9th Cir. 2000) ...............1, 2

*Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989) .......3, 5

*Calder v. Jones*, 465 U.S. 783 (1984)..................................................................................2

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997)...........................................6

*IO Group, Inc. v. Pivotal, Inc.*, 2004 U.S.Dist. LEXIS 6673,
   70 U.S.P.Q.2d 1458 (ND CA, 2004) ................................................................................7

*Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) ...............2, 3, 5

*Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ........................2

*Rebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995)..............................7, 8, 10

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) ....................................7

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) ...................................................7

## STATE STATUTES

Civ. Code § 410.10 ..............................................................................................................2

## SECONDARY SOURCES

5 Witkin, *Summary of California Law (10th ed.), Torts* § 642...........................................3

5 Witkin, *Summary of California Law (10th ed.), Torts* § 646...........................................3

5 Witkin, *Summary of California Law (10th ed.), Torts* § 649...........................................3

INTRODUCTION

Defendants are subject to specific jurisdiction in the Northern District on multiple grounds.

Defendants intentionally harmed Plaintiff by slandering to third parties his title to a Nina Simone recording owned by Plaintiff that is the subject of this suit.

Defendants purposefully availed themselves of the privilege of doing business in California by demanding from California residents payment for their use of a Nina Simone recording that was in fact owned by Plaintiff and is the subject of this suit.

Defendant Andrew Stroud harmed Plaintiff by operating an interactive website accessible in California on which Stroud sold infringing downloads of a sound recording owned by Plaintiff that is the subject of this suit.

Defendants were among those persons who were bound by permanent injunctions issued in *Nina Simone v. San Juan Music Group,* Cv 94-1288-TEH and *Nina Simone v. Sehorn, et al.*, Cv 95-3590-CAL ("Prior Actions").  With full knowledge of the existence of the injunctions and their applicability to Defendants, Defendants nevertheless violated the injunctions by (1) attempting to license a Nina Simone recording owned by Plaintiff that was the subject of the injunctions and this suit, and (2), by offering for sale to the public copies of a Nina Simone recording that was the subject of the injunctions and this suit.

On a motion to dismiss, the plaintiff's pleadings and declarations are presumed true and capable of being proven.  *Bancroft & Masters v. Augusta Nat. Inc.,* 223 F.2d 1082, 1085 (9th Cir. 2000).

ARGUMENT

1.      **Specific Jurisdiction Lies Where A Defendant Harms A Plaintiff He Knows To Live Within the Forum.**

Rather thin is Defendants' analysis of the various bases of specific jurisdiction.

///

Defendant correctly states that California permits the exercise of personal jurisdiction to the full extent permitted by due process.  See, Civ. Code § 410.10.

Defendant concedes that even in the absence of general jurisdiction, California courts may still exercise personal jurisdiction if the case arises out of certain forum-related acts, such as purposefully availing oneself of the privilege of conducting activities in the forum.  Missing from Defendants' memorandum is any detailed discussion of what constitutes "purposeful availment."

In *Calder v. Jones,* 465 U.S. 783 (1984) the Supreme Court held that foreign acts that are both aimed at and have the effect in the forum state satisfied the purposeful availment prong of the specific jurisdiction analysis.  The defendant must have (1) committed an intentional act, (2) which was expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state.  See, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

The concept of "express aiming" was further clarified in *Bancroft & Masters, Inc. v. Augusta National Inc.*, *supra* at 223 F.3d 1082, 1087  (9th Cir. 2000).  The requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Ibid.*

As discussed below, Defendants have engaged in wrongful conduct that was targeted at Plaintiff who they knew to be a resident of California.

**A.**   **Defendants Slandered Plaintiff's Title.**

Twice, the Ninth Circuit has held that a non-resident defendant who communicates with a non-resident third party about a forum resident in a tortious manner can be hailed into the plaintiff's forum.  In *Metropolitan Life Insurance Co. v. Neaves,* 912 F.2d 1062 (9th Cir. 1990), an Alabama resident who sent a letter to an insurance company outside of California, but which sought to defraud a California resident, was subjected to specific

jurisdiction in California.  In *Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257 (9th Cir. 1989), a Canadian resident who in talking to a non-Arizona resident by telephone made defamatory statements about an Arizona resident, was subjected to specific jurisdiction in Arizona.

In California, the elements of the tort of slander of title are a false and unprivileged disparagement of title to personal property resulting in actual pecuniary damage.  5 Witkin, *Summary of California Law (10th ed.), Torts* § 642.  Pecuniary damage includes, but is not limited to, impairment of the vendibility of title and the expense of suing to remove the doubt caused by the disparagement.  5 Witkin, *Summary of California Law (10th ed.), Torts* § 646.  The "privilege" is qualified and is defeated by a showing of lack of good faith.  5 Witkin, *Summary of California Law (10th ed), Torts* § 649.

No later than 2000, Andrew Stroud admitted to Plaintiff that he and his company, Stroud Productions & Enterprises, Inc. had sold any interest it had in 52 recordings that were the subject of the injunctions issued by this Court in the Prior Actions and is the subject of this lawsuit.  Included within those 52 recordings was Nina Simone's live version of *Just in Time.  Brown Dec.,* ¶¶ 3 – 4.

In approximately 2004, the Estate of Nina Simone and Plaintiff licensed the same version of *Just in Time* for inclusion in the soundtrack of the motion picture *Before Sunset. Brown Dec.,* ¶ 6.

In June 2005, Stroud Productions & Enterprises, Inc., through its counsel, sent a demand letter to Castle Rock Entertainment, Inc. Warner Bros. Entertainment Inc. and Warner Independent Pictures Co, all in California.  *Brown Dec., Exhibit 3.*  In that letter Stroud claimed that it was "the owner of the sound recording".  Stroud further contended that the inclusion of *Just in Time* into the film *Before Sunset* without Stroud's permission was a wrongful act.  Stroud further demanded an "accounting" of the film's exploitation.

///

That Stroud's 2005 letter can be imputed to Andrew Stroud, the individual, as well as Stroud Productions & Enterprises, Inc. is obvious from examining the *Answer* filed by the Defendants.  Defendants admit that the corporation "was dissolved in 1981."  *Answer,* ¶ 1.  A letter sent in the name of Mr. Stroud's corporation twenty four years after it was dissolved gives rise to the inference that Andrew Stroud was simply doing business under a fictitious name, *i.e.,* "Stroud Productions & Enterprises, Inc."

Defendants had to have known that the title to *Just in Time* they were challenging was claimed by Plaintiff for two reasons.  First, Andrew Stroud had previously discussed with Plaintiff the fact that Nina Simone (a California resident) had prevailed in the Prior Actions and had obtained title from Stroud's successors for the entire catalog that included *Just in Time* and that Brown had acquired co-ownership from Simone.  *Brown Dec.,* ¶¶ 3 – 4.  Second, the only way to do the "due diligence" necessary to make a claim against the film's distributors was to review the film's copyright credits.   Without reviewing the copyright credits on the actual film, one would never know precisely who is responsible for the soundtrack.  The copyright credits for motion pictures are at the end of the closing credits.  Appearing on screen <u>before</u> the film's copyright credits are the music credits.  The agreement between Plaintiff and the film's producers required a music credit for *Just in Time* as being licensed from "The Estate of Nina Simone and Steven Ames Brown." *Brown Dec.,* ¶ 6.  Simply put, anyone who wanted to learn who claimed the copyright in *Before Sunset* would first have to sit through the music credits, which listed Plaintiff as one of *Just in Time's* owners and one of the parties that licensed the recording for use in the film.  Thus, Defendants must have known they were challenging Plaintiff's ownership of *Just in Time* when they served their demand letter on the film's distributors.

The letter disparaged Plaintiff's title to the sound recording *Just in Time* because it claimed that Stroud was the owner and not Plaintiff.  The letter was unprivileged because it lacked good faith as a matter of law since Andrew Stroud admitted at least five years

earlier that he and his company had previously sold any interest it had ever had in that recording and 51 other titles that are the subject of this lawsuit and he was aware that Nina Simone and Plaintiff had obtained title from Stroud's successors in the Prior Actions. *Brown Dec.,* ¶¶ 3 – 4.

Plaintiff has suffered two types of pecuniary injury.  First, as a result of Defendants' adverse claim to ownership of *Just in Time* Plaintiff cannot vend his title because in the music industry a vendor must warrant that there are no known adverse claims and as a result of Defendants' disparagement, there are in fact competing ownership claims.  *Brown Dec.,* ¶ 10.  Second, Plaintiff has incurred and will continue to incur the costs of this lawsuit to clear the cloud to Plaintiff's title caused by Defendants' disparagement.  *Brown Dec.,* ¶ 10.

Further, at the time they made their demand against the film's distributors, Defendants knew that Plaintiff was a resident of California.  Stroud telephoned Plaintiff at Plaintiff's listed commercial telephone number in the 415 Area Code.  *Brown Dec.,* ¶ 4. Also, Stroud admitted having received and read the injunctions from the Prior Actions, all of which listed Plaintiff's San Francisco address and telephone number on the top of each front page.  *Brown, Dec.,* ¶ 4, *Exhibits 1* and *2.*

In *Metropolitan Life, supra,* and *Brainerd, supra,* the Ninth Circuit found specific jurisdiction even though the tortious communications were uttered outside of the forum. The case for specific jurisdiction is even stronger here because the tortious communications were delivered in writing to the offices of three California residents. *Brown Dec., Ex. 3.*  The *actus reus* of slander of title is the publication of the disparagement.  Here the publication took place wholly inside California, on three separate occasions.

Finally, this lawsuit arises directly out of Defendants' forum related activities in that the whole purpose of the suit is to clear the cloud Defendants' disparagement placed on

Plaintiff's title to the recordings at issue in this lawsuit.  Put another way, had Defendants not disparaged Plaintiff's ownership of *Just in Time*, Plaintiff would not have had to sue to clear his title.  *Brown Dec.,* ¶ 10.

**2.    Defendant Andrew Stroud Committed Infringement in California.**

At all times herein relevant defendant Andrew Stroud was the registrant of the domain ninasimone.biz.  *Brown Dec.,* ¶ 8.

Within the past three years, Plaintiff visited Mr. Stroud's domain.  The site was interactive, *i.e.,* it was not merely a listing of information but permitted visitors to select various Nina Simone recordings for listening.  It also permitted viewers to purchase a download of various Nina Simone recordings.  One of the recordings on the website available for listening or purchase was the version of *Just in Time* that is the subject of this lawsuit.  There cannot be any doubt that it was the same version because the website specifically stated it was the one in the soundtrack of *Before Sunset*.  "'Just In Time' is a BONUS TRACK of the Nina Simone performance used in the soundtrack of the film 'Before Sunset'".  *Brown Dec.,* ¶ 8.

An interactive website that is commercial in nature (rather than merely passively posting information) and which permits online commercial transactions, accessible to residents of California, is purposeful availment here.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997).  (A website owner did not avail himself of doing business in the forum state by an entirely <u>passive</u> web page on which <u>no</u> commercial activity could take place that only advertised <u>local</u> performances <u>where the defendant resided</u>.)  Previously this Court found the fact that a website was interactive and offered infringing commercial transactions of "particular" importance in finding specific jurisdiction.  *IO Group, Inc. v. Pivotal, Inc.,* 2004 U.S. Dist. LEXIS 6673 * 13, 70 U.S.P.Q. 2d 1458 (ND CA 2004).

Here, there is purposeful availment and the recording offered for sale is the very subject of this lawsuit.  Moreover, Stroud knew that a California resident was the owner of

the subject recording.  The right that Stroud was invading, Plaintiff's right to reproduce the sound recording, is intangible personal property, which by its very nature resides with him in California.  See, *Sinatra v. National Enquirer, Inc.* 854 F.2d 1191, 1197 (9th Cir. 1988) (Injury from infringement of singer's intangible right of publicity sustained where he lived and conducted his business.)

### 3. The Stroud Defendants Are Subject To Specific Jurisdiction Because They Violated This Court's Injunctions Which Pertain To The Sound Recordings At Issue Here.

The mandate of an injunction issued by a federal district court runs nationwide and violation of an injunctive order is cognizable in the court which issued the injunction regardless of where the violation occurred.   Enforcement proceedings, direct or collateral, must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order.  *Waffenschmidt v. MacKay*, 763 F.2d 711, 716-717 (5th Cir. 1985).  (Non-party held subject to specific jurisdiction based solely on his knowingly aiding a named party in violating an injunction.)  The *Waffenschmidt* rationale was adopted in the Ninth Circuit. *Rebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391-1392 (9th Cir. 1995).  Of particular importance was this passage the Ninth Circuit chose to quote: "[t]he nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders."  *Rebok* at 49 F.3d 1391.

In both cases, the non-parties were not in privity with the named parties until after the entry of the injunctions.  Thus, non-parties who were virtual strangers to the proceedings and the forum were held subject to specific jurisdiction for knowingly aiding a named party in violating the injunctions.  Here, the argument in favor of the exercise of specific jurisdiction is stronger because the Defendants, although not named parties in the prior actions, were covered by the injunctions from inception because they had a contractual right to share the proceeds with the named defendants <u>at the time the</u>

injunctions were entered, *i.e.,* the injunctions prohibited Stroud's contractual scheme to exploit the recordings and share the income because at the time they were entered the Defendants herein were joint actors with the prior named defendants.

Two of the injunctions issued by this Court in the Prior Actions are of particular relevance.   Attached as *Exhibit 1* and *Exhibit 2*, are injunctions issued in those proceedings.

All injunctions issued in the two cases have the same phrase, that they are binding "upon all persons acting in concert" with the named parties.  From the inception of the prior lawsuits, these Defendants were acting in concert with the named parties.  Defendants claimed ownership of a catalog of 52 Nina Simone sound recordings.   According to Andrew Stroud, he sold the entire catalog retaining onto himself and his company a royalty based on the retail selling price of every copy of the recordings manufactured and sold. The named defendants in the prior actions were Defendants' successors in interest, the persons who were manufacturing and selling the copies and from whom these Stroud Defendants had a right to an ongoing royalty from such activities.  *Brown Dec.,* ¶¶  4, 11.

More particularly, the "Marshall Sehorn" defendants in *Nina Simone v. Sehorn* were Defendants' successors, and the other defendants in that action and *Nina Simone v. San Juan Music Group* were Sehorn's licensees.  The Sehorn defendants, the ones who ended up with Stroud's (disputed) "title" were contractually obligated to pay ongoing royalties to the Stroud Defendants herein, whether those Sehorn defendants exploited the recordings or licensed others to do so.  The non-Sehorn defendants (who were Sehorn's licensees) were obligated to pay royalties to Sehorn, who in turn was contractually obligated to account to the Defendants herein.  *Brown Dec.,* ¶ 11.

The Stroud defendants in this action were at the top of a contractual pyramid and entitled to royalties from the manufacture and sale of copies of the 52 Nina Simone recordings which were the subject of the sales contract by which Stroud's (disputed) "title"

ultimately passed to Sehorn.  The commercial exploitation of those 52 recordings (from which Stroud directly profited by contract) was the subject of the injunctions in the prior Nina Simone actions.

Thus, the Stroud defendants herein were acting in concert **with** the named defendants in the Prior Actions at the time the injunctions were entered.  The prior injunctions had as their dominant purpose the immediate and permanent cessation of any further exploitation of those recordings by the named parties who were all in privity with the Stroud Defendants herein.  By the express terms of the injunctions the Stroud Defendants were bound by them, because at all times the Stroud Defendants were acting in concert with the prior named defendants.  The moment the Stroud Defendants received actual notice of the injunctions they were obliged to cease any exploitation of those recordings. The injunctions did not instruct third parties to merely desist from assisting named parties from violating their terms.  The full force of the injunctions applied to all persons who were acting in concert with the named defendants, whether their future conduct was joint or separate.  The Ninth Circuit has made it clear that once bound by an injunction, the forum has the power to enforce its orders, even as against non-resident non-parties.  "The nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders."  *Rebok* at 49 F.3d 1391.

It matters not whether the injunction is enforced in direct contempt proceedings, or, as here, by a collateral action in declaratory relief; for jurisdictional purposes this Court has specific jurisdiction over these defendants to enforce its orders.

CONCLUSION

Defendants' slandering of Plaintiff's title to *Just in Time* in three publications physically delivered in California, pertaining to someone Defendants knew to be a California resident, gives rise to specific jurisdiction in a suit to clear the title Defendants clouded by their disparaging letters.

Defendants' demands that three California companies account to Defendants for profits from a film attributable to a recording licensed to those California companies by Plaintiff, a California resident, gives rise to specific jurisdiction in a California suit to clear the title Defendants disparaged.

Defendant Andrew Stroud's operation of an interactive commercial website which allowed viewers to both listen to and purchase copies of Plaintiff's recording of *Just in Time*, is an infringement of Plaintiff's rights in intangible property, a tort against Plaintiff where he lives, and gives rise to specific jurisdiction in a suit to clear Plaintiff's title to the recording.

Finally, Defendants were at all times bound by the injunctions issued in the Prior Actions and their violation of those injunctions gives rise to specific jurisdiction in a suit to declare them bound by those injunctions.

Dated: July 28, 2008

Respectfully submitted,

/x/

STEVEN AMES BROWN,
Plaintiff in *pro se*

DECLARATION OF STEVEN AMES BROWN

I, STEVEN AMES BROWN, declare:

1.   I am the plaintiff in this action.

2.   At all times herein mentioned I was an active member of the State Bar of California and the bar of this Court.

3.   I was Nina Simone's attorney in *Nina Simone v. San Juan Music Group,* Cv 94-1288-TEH and *Nina Simone v. Sehorn, et al.*, Cv 95-3590-CAL.   Pursuant to my written contract with Nina Simone, I received from her a 40% ownership interest in all sound recordings the title to which was cleared in those lawsuits.   I attach as *Exhibit 1* a true copy of one of the injunctions issued in *Nina Simone v. San Juan Music Group* and as *Exhibit 2*, a true copy of one of the injunctions issued in *Nina Simone v. Sehorn.*

4.   In no later than 2000, I received an unsolicited telephone call from Andrew Stroud.   He called me on my listed commercial number, 415/647-7700.   He told me the purpose of his call was to discuss a possible joint-venture to exploit Nina Simone sound recordings.   During that call Mr. Stroud admitted that he had sold any interest he ever had in 52 of the recordings he claimed to have received from Nina Simone and retained a royalty interest.   He admitted that the recordings were ultimately sold to companies owned by Marshall Sehorn and that he had been entitled to receive royalties on all exploitation by Sehorn's licensees.   He also told me he had received copies of the injunctions, had read them, understood he had no right to exploit recordings listed in those injunctions and assured me he was proposing the exploitation of different recordings.   I pointed out to him that he could not receive any royalties on the 52 recordings because they were all covered by the injunctions.   I also pointed out to him that the injunctions not only prohibited his exploitation of those recordings, but prohibited him from attempting to license *any* recordings embodying Nina Simone's voice.   I concluded the call by summarizing for Mr. Stroud that he was essentially out of the Nina Simone business and that if we found out he

was in any manner participating in the exploitation of any Nina Simone recordings, I was certain that Nina would sue him.

5.  Nina Simone passed away on April 21, 2003 and as of her death, I had no knowledge of Mr. Stroud exploiting or attempting to exploit any Nina Simone recordings.

6.  One of the sound recordings which was the subject of all the injunctions is Nina Simone's live recording of *Just in Time*.  In 2004, a license was issued on behalf of the Estate of Nina Simone and me, authorizing the synchronization of *Just in Time* in the motion picture *Before Sunset*, which was to be distributed by Castle Rock and two Warner Bros., companies all of which I know to have their principal places of business in California.  The license required a music credit that the recording was licensed from "The Estate of Nina Simone and Steven Ames Brown."

7.  In 2005, Andrew Stroud, apparently doing business under the name of Stroud Productions & Enterprises, Inc., served a demand letter on Castle Rock and two Warner Bros. companies, all in California, concerning the version of *Just in Time* synchronized into *Before Sunset*.  Attached as *Exhibit 3* is a true copy of the demand letter that was forwarded to me by Warner Bros.

8.  Within the last three years I have personally seen a website, which I knew to have been registered to "Andy Stroud" at his home address of 5900 Arlington Avenue, Bronx, New York, which sold downloadable copies of the version of *Just in Time* that was the subject of the injunctions and was embodied in the motion picture *Before Sunset*.  I accessed the website, ninasimone.biz, from San Francisco.  I activated the "listen" button and heard an excerpt from the recording of which I am an owner and I added the selection to the purchase "cart" thereby verifying that it was in fact for sale on that website.  I also knew the version of *Just in Time* on that website was the same version that is the subject of this lawsuit because it was identified as being the same.  On ninasimone.biz I saw the following notation concerning *Just in Time*.  "'Just in Time' is a BONUS TRACK of the Nina

Simone performance used in the soundtrack of the film 'Before Sunset'".  On July 20, 2008, I ran another "who is" ownership check on the domain and Andy Stroud was still listed as the ninasimone.biz registrant, *i.e.,* registered owner.

9.  I believe that Defendants are claiming ownership of 52 of the recordings covered by the injunctions, and not just the track *Just in Time*, based on the following facts.  First, Mr. Stroud confirmed that he had transferred all his interest in those 52 recordings and since he is now claiming ownership of one of those recordings (apparently disputing that he ever sold the catalog), the other 51 recordings would appear to remain in the same catalog.  Second, Mr. Stroud's attorney, Adam R. Bialek (of the same firm that represents him here), told Dorothy Weber (the attorney I retained to defend Castle Rock and the Warner Bros. companies against Stroud's claims) that Mr. Stroud intended to commence a number of law suits concerning the 52 recordings because he claims he owns them.  Dorothy Weber repeated the statements to me.   [1]

10.  As a result of Defendants' demand upon Castle Rock and the two Warner Bros. companies, *Exhibit 3*, my ability to sell any of the subject 52 titles has been effectively foreclosed.  I have been involved in the negotiation of transfers of sound recordings for over 25 years.  It is the custom and practice in the industry for the seller to warrant there are no known adverse claims to ownership of any of the titles being sold.  As a result of Defendants having sent *Exhibit 3*, I cannot make any such warranty of clear title.  I have also agreed to compensate the law firm of Cannata, Ching & O'Toole, LLP for their services in connection with the prosecution of this action to clear my title.  Had Defendants not caused *Exhibit 3* to be published to third parties or otherwise pursued the film companies for money claiming they, and not I, owned *Just in Time,* I would not have had any reason to file this lawsuit.

---

[1] [These statements are not offered to prove the truth of the matter asserted, but merely to prove that Stroud's authorized representative is claiming that Mr. Stroud is the sole owner of the 52 recordings and intends to initiate lawsuits for infringement of his alleged rights.]

11.   The defendants joined in the actions which resulted in *Exhibits 1* and *2*, consisted of two groups.  One group consisted of companies owned by Marshall Sehorn.  They were the ultimate successors to Defendants' alleged "chain of title" to the 52 recordings at issue.  The second group of defendants consisted of Sehorn's licenses.  I knew this to be true because I personally inspected all the licensing files produced by the defendants in those actions during our settlement negotiations.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: July 28, 2008

/x/

_____

**STEVEN AMES BROWN**
Attorney
69 Grand View Avenue
San Francisco, California 94114-2741
415/647-7700

Attorney for plaintiff

ORIGINAL
FILED

MAR 6  1995

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NINA SIMONE,

        Plaintiff,

    v.

SAN JUAN MUSIC GROUP,
MUSICRENT, INC. THE LONG ISLAND
MUSIC COMPANY LTD., TRING
INTERNATIONAL PLC,
DOES I-XX, inclusive,

        Defendants.

_____/

CIVIL NO. CV-94--1288-TEH

JUDGMENT & PERMANENT
INJUNCTION

    Upon the agreement of the parties in their *Stipulation For Entry of Judgment*, it
is by this Court ordered and adjudged this day:

    1. The Court has jurisdiction of the subject matter hereof and the parties to the
*Stipulation For Entry of Judgment.*

    2. The provisions of this Judgment are applicable to and binding upon San
Juan Music Group and Musicrent, Inc. along with Jay Chernow and Michael Chernow
San Juan, and each of them, and upon all persons acting in concert with them, who

Page 1

Exhibit 1

1   have actual or constructive notice of same (collectively known as "San Juan").

2       3. San Juan, their officers, agents, servants, employees, and all persons acting
3   in concert or participation with them, and each of them, are perpetually enjoined from
4   doing, or attempting to do, or causing to be done, either directly or indirectly, by any
5   means, method or device, whether presently known or hereafter to be devised, any
6   and all of the following acts or practices:

7       A.   Manufacturing or vending any items which bear the name "Nina
8   Simone", without the written consent of Nina Simone, or her lawful representative,
9   first had and obtained.

10       B.   Manufacturing or vending any items which bear the likeness of Nina
11   Simone, without the written consent of Nina Simone, or her lawful representative,
12   first had and obtained.

13       C.   Manufacturing or vending any items which bear the voice or any
14   musical performance by Nina Simone, without the written consent of Nina Simone, or
15   her lawful representative, first had and obtained.

16       D.   Soliciting or authorizing any person, firm or entity to perform any of
17   the acts prohibited in subsections "A" through "C" above, without the written
18   consent of Nina Simone, or her lawful representative, first had and obtained.

19       4. Nina Simone shall recover the sum of fifteen thousand dollars ($15,000.00),
20   which such sum shall include all costs awarded to her and paid and delivered to
21   "Steven Ames Brown Client Trust."

22       5. All licenses heretofore made by San Juan, or anyone acting in concert with
23   them, or any of them, which authorizes any form of exploitation of any sound
24   recordings bearing the name, voice and/or musical performances of Nina Simone
25   ("Licenses"), are hereby modified as follows:

26   ///

Exhibit 1

1             A. The Licenses in effect on June 1, 1994 shall terminate on December

2  1, 1995, unless earlier terminated by the terms thereof;

3             B. The authority to manufacture sound recordings pursuant to any

4  Licenses in effect on June 1, 1994 expires on May 31, 1995, unless earlier

5  terminated by the terms thereof;

6             C. The authority pursuant to any Licenses in effect on June 1, 1994 to

7  sell off inventory expires on December 1, 1995, unless earlier terminated by the terms

8  thereof;

9             D. All statements and royalties due under any Licenses shall be delivered

10 to Steven Ames Brown at 69 Grand View Avenue, San Francisco, California 94114-

11 2741. All royalty payments shall be payable to Steven Ames Brown & Jon S. Heim

12 until December 1, 1995 which such royalties shall be shared equally by Nina Simone

13 and San Juan. No portion of any royalties accruing under any Licenses after

14 December 1, 1995 inures to the benefit of San Juan.

15            E. San Juan shall use their best efforts to ensure that all royalties owing

16 under any Licenses are timely and accurately paid as directed in subparagraph D

17 above. San Juan shall for diligently and thoroughly pursue any acts of underpayment

18 of royalties or untimely delivery of accountings, at their own cost. Without limiting

19 the foregoing duty, if after 30 days written notice of default to San Juan and/or any

20 of the Licensees that a default by any Licensee in the performance of any obligation

21 imposed by any license has not been satisfactorily performed, Nina Simone may, in

22 her own name and without further notice or obligation to San Juan in respect thereto,

23 enforce the obligation.

24        6. San Juan has transferred, sold and assigned to Nina Simone, all their right,

25 title and interest in and to any and all sound recordings embodying any vocal and/or

26 musical performances by Nina Simone, including but not limited to: *Do Nothing Till*

Exhibit 1

*You Hear From Me, I Got It Bad & That Ain't Good, Hey Buddy Bolden, Something To Live For, You Better Know It, I Like The Sunrise, Solitude, The Gal From Joe's, Satin Doll, It Don't Mean A Thing If It Ain't Got That Swing, Black is The Color, Since My Love Is Gone, Blue Prelude, Spring Is Here, I Loves You Porgy, When I Was A Young Girl, Near To You, The Thrill Is Gone, Little Liza Jane, Here Comes The Sun, My Way, Fine And Mellow, Nina's Blues, Work Song, Angel of Morning, Ain't Got No/I Got Life, You Can Have Him (I Don't Want Him), Peace Of Mind, Don't Take All Night, Four Women, "No Opportunity Necessary, No Experience Needed," Summertime, How Long Must I Wander, Please Lead Me, Wild Is The Wind, Trouble In Mind, After You've Gone, Nobody, I Want A Little Sugar In My Bowl, Ne Me Quitte Pas, Don't Let Me Be Misunderstood, Just In Time, Sea Lion Woman, House of the Rising Sun, Remind Me, Gin House Blues, Backlash Blues, Assignment Song, "To Be Young, Gifted And Black," Ain't No Use, How Can I Make Him Love Me, I Am Blessed, Laziest Gal In Town, For All We Know, Night Song* (the "Masters.")

7.   Within 14 days hereof, San Juan shall deliver to Nina Simone, in care of her attorney, Steven Ames Brown:

A. Each "master recording" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone; each "outtake" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone;   all packages, boxes, wrappers, board labels, track sheets, packing slips and each and every other item which identifies the contents of each box or container pertaining to each "master recording" or "outtake."

B. All licenses ever made which pertain to any recordings embodying a vocal or musical performance by Nina Simone, or references the name Nina Simone,

Exhibit 1

1  unredacted.

2      C. All royalty statements ever created concerning any items embodying a

3  vocal or musical performance by Nina Simone or references the name Nina Simone,

4  that were generated for any one and for any purpose, unredacted.

5      8.   Within 14 days hereof, San Juan shall deliver a notice to each of its

6  licensees stating that effective September 30, 1994 all royalty statements and

7  payments are to be delivered to Steven Ames Brown at 69 Grand View Avenue, San

8  Francisco, California 94114-2741 and all royalties are to be payable to Steven Ames

9  Brown & Jon S. Heim.  A copy of each notice shall simultaneously be sent to Nina

10  Simone in care of her attorney, Steven Ames Brown, at his address above.

11      9. All parties hereto shall bear their own costs and attorney's fees.

12      10.   Nina Simone shall take no further action against any of defendant's

13  licensees, timely disclosed pursuant to paragraph 7.B., including but not limited to

14  Tring International PLC and/or The Long Island Music Company in respect of the

15  Masters, except as provided for herein.

16      11.   Except as provided for herein, Nina Simone shall not license any of the

17  Masters to any of San Juan's licensees timely disclosed to Simone by San Juan as

18  provided for in paragraphs 7.B. & C., for any period commencing before December 1,

19  1995.

20      Dated: March 6 , 1995

21                  It is so ordered:

22

23

24                  THELTON E. HENDERSON

25                  Hon. Thelton E. Henderson, C.J.
                    United States District Court Judge

26

Page 5

Exhibit 1

RECEIVED

JUL - 9 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL
FILED

JUL  9 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CAL.

1  **STEVEN AMES BROWN**
   Entertainment Law 83363
2  69 Grand View Avenue
   San Francisco, California 94114-2740
3  415/647-7700

4  Attorney for plaintiff

5

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  NINA SIMONE,

12          Plaintiff,                    CIVIL NO. C-95-3590-CAL

13      v.

14  MARSHALL SEHORN, an individual and
    *dba* RED DOG EXPRESS & WHITE DOG       **JUDGMENT & PERMANENT**
15  RECORDS; EXCELL MUSIC, INC.;            **INJUNCTION RE: SEHORN**
    WHITE DOG RECORDS, LTD.; RED DOG
16  EXPRESS, INC.; ANTHONY SANUCCI,
    an individual; JERRY WILLIAMS *dba*
17  SWAMP DOG ENTERTAINMENT GROUP;          JUL 2 1 1998
    THE MUSIC WORKS, LTD, *dba* TOMATO   ENTERED IN CIVIL DOCKET_____, RS
18  RECORDS

19          Defendants.
    _____/

20

21

22      Upon the agreement of the parties in their *Stipulation For Entry of Judgment*, and

23  taking into consideration the *Declaration of Steven Ames Brown*, the Court finds there is

24  no just reason for delaying the entry of judgment upon the *Stipulation* and the Court orders

25  that judgment be entered forthwith;

26      IT IS BY THIS COURT ORDERED AND ADJUDGED THIS DAY:

Exhibit 2

1      1.  The Court has jurisdiction of the subject matter hereof and the parties hereto,

2  including Barbara Darcy who has voluntarily submitted herself to the jurisdiction of this

3  Court.

4      2.  The provisions of judgment are applicable to and binding upon Marshall Sehorn,

5  Red Dog Express, Inc., White Dog Records, Ltd., Excel Music, Inc. and Barbara Darcy

6  (collectively "Sehorn") and upon all persons acting in concert with them who have actual

7  or constructive notice of hereof.

8      3.  Nina Simone is the sole and exclusive owner of the copyrights and all other

9  rights of reproduction of the sound recordings embodying her vocal land/or musical

10  performances of the compositions: *Do Nothing Till You Hear From Me, I Got It Bad & That*

11  *Ain't Good, Hey Buddy Bolden, Something To Live For, You Better Know It, I Like The*

12  *Sunrise, Solitude, The Gal From Joe's, Satin Doll, It Don't Mean A Thing If It Ain't Got That*

13  *Swing, Black is The Color, Since My Love Is Gone, Blue Prelude, Spring Is Here, I Loves*

14  *You Porgy, When I Was A Young Girl, Near To You, The Thrill Is Gone, Little Liza Jane,*

15  *Here Comes The Sun, My Way, Fine And Mellow, Nina's Blues, Work Song, Angel of*

16  *Morning, Ain't Got No/I Got Life, You Can Have Him (I Don't Want Him), Peace Of Mind,*

17  *Don't Take All Night, Four Women, "No Opportunity Necessary, No Experience Needed,"*

18  *Summertime, How Long Must I Wander, Please Lead Me, Wild Is The Wind, Trouble In*

19  *Mind, After You've Gone, Nobody, I Want A Little Sugar In My Bowl, Ne Me Quitte Pas,*

20  *Don't Let Me Be Misunderstood, Just In Time, Sea Lion Woman, House of the Rising Sun,*

21  *Remind Me, Gin House Blues, Backlash Blues, Assignment Song, "To Be Young, Gifted*

22  *And Black," Ain't No Use, How Can I Make Him Love Me, I Am Blessed, Laziest Gal In*

23  *Town, For All We Know, Night Song, That's All I Want From You; Cotton Eyed Joe; I Wish*

24  *I Knew How It Would Feel To Be Free; But Beautiful; Tell Me More & More & Then Some;*

25  *This Year's Kisses; Strange Fruit; Don't Explain; Pigfoot And A Bottle of Beer; Love Me Or*

26  *Leave Me, The Other Woman, Devil's Workshop, The Way I Love You, Life, One More*

*Sunday in Savannah, I'll Look Around, Blues, When I Was In My Prime, Zungo, Nobody Wants You, I Love To Love, Ding Song, I Love My Baby, Sinnerman, Pirate Jenny, For Awhile, You Took My Teeth, Do What You Gotta Do, Mississippi Goddamn, I Sing Just To Know That I'm Alive, My Baby Just Cares For Me, It's Cold Out Here, Fodder On Her Wings, Touching And Caring, Saratoga, You Must Have Another Lover, Flo Me La, I'm Blue, In The Evening By Moonlight, He Was Too Good To Me, Children Go Where I Send You, Buzzin, Ya Betcha, Lovin' Woman, "Baubles, Bangles and Beads," Bouncin' Back Pepper Pie, Rug Cutter, Black Swan, Twelfth of Never, Will I find My Love Today, Samson And Delilah, You'd Be So Nice To Come Home To, If He Changed My Name, Day And Night* and all alternate versions, excerpts, and outtakes thereof and all artwork pertaining thereto ("*Master Recordings*").

4. Sehorn, their officers, agents, servants, employees, heirs, successors and all persons acting in concert or participation with them, or any of them, are perpetually enjoined from doing, or attempting to do, or causing to be done, either directly or indirectly, by any means, method or device, whether presently known or hereafter to be devised, any and all of the following acts or practices:

A. Manufacturing or vending any items which bear the name "Nina Simone", without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

B. Manufacturing or vending any items which bear the likeness of Nina Simone, without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

C. Manufacturing or vending any items which bear the voice or any musical performance by Nina Simone, without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

D.   Soliciting or authorizing any person, firm or entity to perform any of the acts prohibited in subsections "A" through "C" above, without the written consent of Nina Simone, or her lawful representative, first had and obtained after this date.

5.   Within 14 days hereof, Sehorn shall deliver to Nina Simone, in care of her attorney, Steven Ames Brown:

A.   Each "master recording" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone; each "outtake" (as that phrase is utilized in the recorded music industry) which embodies a performance by Nina Simone, or bears the name Nina Simone or contains a likeness of Nina Simone; all artwork, packages, boxes, wrappers, board labels, track sheets, packing slips and each and every other item which identifies the contents of each box or container pertaining to each "master recording" or "outtake" which are in Sehorn's possession or control.

B.   All originals of licenses ever made which pertain to any recordings embodying a vocal or musical performance by Nina Simone, or references the name Nina Simone, unredacted, which are in Sehorn's possession or control.

C. All originals of royalty statements ever created concerning any items embodying a vocal or musical performance by Nina Simone or references the name Nina Simone, that were generated for any one and for any purpose, unredacted, which are in Sehorn's possession or control.

10.  Nina Simone has reserved all her rights against all others.

Dated:  7/10/08

IT IS SO ORDERED:

Charles A. Legge

Sun-27-05 12:57pm From-Sloss Law Offices 212 827 9498 T-460 P 803/005 F-179
JUN-21-2005 18:27 FROM KRAMER TO 913108883594 P.02/03

## MICHAEL B. KRAMER & ASSOCIATES
### ATTORNEYS AT LAW
### 150 EAST 58TH STREET
### NEW YORK, NEW YORK 10155
### TELEPHONE (212) 619-0004
### FAX (212) 319-0543

MICHAEL B. KRAMER*

RUBIN JAY GINSBERG*
LAURIE A. STANZIALE*

*ADMITTED N.B & N.J.

NEW JERSEY OFFICE

64 HIGHGATE TERRACE
BERGENFIELD, NJ 07621
(201) 501-0099

*PLEASE REFER ALL CORRESPONDENCE
TO NEW YORK CITY OFFICE

SENDER'S E-MAIL:
mkramer@mkramerlaw.com

RECEIVED

JUN 2 1 2005

BY TELECOPY

June 16, 2005

**BY CERTIFIED MAIL**

Castle Rock Entertainment, Inc.
335 N. Maple Drive, Suite 135
Beverly Hills, CA 90210-3879

Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Burbank, CA 91522

Warner Independent Pictures Co.
4000 Warner Blvd.
Burbank, CA 91522

*[handwritten]* fax
To Paul Brennan
212 627 9498

13 discussed

Jessica

Joanne
member

**Re: "Just In Time"/Nina Simone (the "Work")**

To Whom It May Concern:

This office represents the interests of Stroud Productions and Enterprises, Inc. ("Stroud"), the owner of the sound recording including the copyright therein, embodying the performance by Nina Simone of the composition entitled "Just In Time"(the "Work"), such performance being recorded at the Montreux Jazz Festival in or about June 1968.

It has come to Stroud's attention that without a license or other agreement from Stroud, you and/or your agents and licensees synchronized the Work in time relation with a motion picture known as "Before Sunset" (the "Film") and that you have, and continue to commercially exploit the Film theatrically and through audio-video configurations to the public. Said acts constitute the conversion of Stroud's property and an infringement upon Stroud's copyright in the Work. You are hereby directed to immediately cease and desist all unauthorized distribution,

C:\MBK\ALTronseABeforeSunsetCRE.let.wpd

Exhibit 3

Sep-22-05   12:56pm   From-Sloss Law Offices        212 627 8400        T-460  P.004/005  F-170
JUN-22-2005 10:25   FROM:
JUN-21-2005  10:20   FROM  KRAMER                    TO  91710303594                    P.03/03

## MICHAEL B. KRAMER & ASSOCIATES

copying and/or public or digital performances of the Film containing the Work. You are further
directed to provide this office with an accounting of all copies, distributions and public and/or
digital performances of the Film from its inception to the present.

In the event you fail to comply promptly with these requests, we will be
compelled to pursue court intervention for an order enjoining the infringing activities and related
relief. Our clients reserve any and all rights they may have under Federal or State law.

Very truly yours,

Michael B. Kramer

cc:    Stroud Productions and Enterprises, Inc.

GAMBKA\LIT\Stroud\Sedan-Foran\C&E.let.wpd

Exhibit 3