UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| STEVEN AMES BROWN, | No. C-08-02348-VRW (DMR) |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION AND MOTION TO COMPEL FURTHER INTERROGATORY RESPONSES, AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS** |
| v. | |
| ANDREW B. STROUD, et al., | |
| Defendants. | |

Before this Court are three discovery motions filed by Plaintiff and Counter-Defendant Steven Ames Brown ("Brown") against Defendant and Counter-Claimant Andrew Stroud ("Stroud"), pursuant to Federal Rules of Civil Procedure 33, 34, and 37: Brown's Motion to Compel Document Production (Docket No. 159); Brown's Motion to Compel Further Interrogatory Responses (Docket No. 158); and Brown's Motion for Sanctions (Docket No. 160). These discovery disputes were referred to this Court for resolution. The Court conducted a hearing on August 12, 2010 at which all parties, including Counter-Claimant and Counter-Defendant Estate of Nina Simone ("Estate") and Counter-Defendant Sony Music Holdings, Inc. ("Sony"), appeared.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS in part and DENIES in part Brown's Motions to Compel Document Production and Further Interrogatory Responses to the extent set forth in this order, and DENIES Brown's Motion for Sanctions. This order memorializes the Court's

rulings made at the hearing.

## I. DISCUSSION

The motions raise two overarching issues which relate to most of the discovery requests in question: (1) whether Stroud waived all objections by failing to make timely written responses; and (2) the scope or universe of song titles that properly may be the subject of discovery. Before considering the specific discovery requests, the Court will first address these two matters.

### A.     Waiver of Objections.

The party to whom an interrogatory or request for production is directed must respond in writing within 30 days after being served. Fed.R.Civ.P. 33(b)(2) and 34(b)(2)(A). Failure to object to discovery requests within the time required constitutes a waiver of any objection. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). Although Rule 34 does not expressly provide for any relief from a waiver of objections as does Rule 33, courts have granted such relief upon a showing of good cause. *See, e.g., E.E.O.C. v. Kovacevich "5" Farms*, No. 1:06-cv-0165-OWW-TAG, 2007 WL 1599772, at *11 (E.D. Cal. June 4, 2007); *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999) (applying to Rule 34(b) requests for production the principle set forth in Rule 33(b)(4) that a court may excuse a failure to timely object for good cause).

Brown served the bulk of the instant discovery requests on September 3, 2008.[1] Stroud did not serve written discovery responses until February 25, 2009. Brown argues that Stroud's responses are untimely and therefore any objections should be deemed waived. Stroud counters that his responses were not untimely because "service of the requests was premature,"[2] since

---

[1] Brown's waiver argument does not apply to Stroud's responses to Interrogatory Nos. 5, 7, and 8. These requests were served in March 2009, and Stroud responded to them in a timely manner.

[2] Stroud also appears to argue that the requests were premature because Brown served them prior to the parties' exchange of initial disclosures. Stroud incorrectly asserts that Brown has represented initial disclosures were exchanged on September 2, 2008. Brown actually states that the Rule 26(f) early meeting, not the exchange of initial disclosures, occurred on

2

there was no operative complaint due to Stroud's June 5, 2008 and October 29, 2008 motions to dismiss for lack of jurisdiction, until Judge Walker issued his order denying Stroud's second motion to dismiss on January 26, 2009. Stroud contends that January 26, 2009 should thus be considered the date of service for the discovery requests, and that his February 25, 2009 responses were therefore timely.

Stroud is technically correct that there was no operative complaint for a brief period of time, from the dismissal of Brown's original complaint on September 25, 2008 until Brown filed his first amended complaint on October 9, 2008. However, there is no dispute that Brown served Stroud with the relevant discovery requests on September 3, 2008, prior to the dismissal of Brown's original complaint, which was therefore still operative at the time of service of the discovery requests. After Judge Walker granted Stroud's motion to dismiss Brown's original complaint on jurisdictional grounds, Stroud's counsel requested a protective order staying discovery, (*see* Docket No. 33), but the Court did not rule on that request. Without an order granting a stay of discovery, Stroud's responses were late, even taking into consideration the brief period of time during which the original complaint was not operative.[3]

By failing to serve timely discovery responses without a discovery stay in place, Stroud

---

September 2. Under Rule 26(d), parties are only prohibited from engaging in discovery prior to the Rule 26(f) early meeting of counsel. As such, Brown was well within his right to propound discovery immediately after the Rule 26(f) meeting on September 2, 2008.

[3] Stroud cites to Ninth Circuit case law for the general proposition that discovery at the pleadings stage is only appropriate when factual issues are raised by a motion to dismiss, which Stroud argues was not the case here since his motion to dismiss was based on lack of jurisdiction. *See, e.g.*, *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987). Some courts have found that a denial or stay of discovery is appropriate where a motion to dismiss for lack of jurisdiction is pending. *See, e.g., Wyatt v. Kaplan*, 686 F.2d 276, 283-84 (5th Cir. 1982) (upholding court's decision not to permit depositions on motion to dismiss for lack of personal jurisdiction); *Twin Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) (noting "common" example of early discovery stay is where jurisdiction is a preliminary issue). However, where a dispute arises regarding the appropriateness of discovery pending a motion to dismiss, a party must still obtain a stay of discovery and it remains within the trial court's discretion to determine if a stay is appropriate. *See generally, Jarvis*, 833 F.2d at 155 (court did not abuse its discretion in ordering a stay of discovery pending motion to dismiss).

3

engaged in extremely risky behavior which could well have resulted in a waiver.  However, the Court finds good cause for relief from waiver for the following reasons: (1) Stroud did in fact seek a protective order to stay discovery before Judge Walker; and (2) Stroud had articulable, non-frivolous grounds to seek a stay due to the fact that there was no operative complaint when he sought the stay and jurisdiction arguably was in question until Judge Walker denied Stroud's second motion to dismiss on January 26, 2009.  The Court therefore finds good cause in this instance to relieve Stroud from application of the waiver doctrine.

**B.     Scope of Discovery.**

Parties may obtain discovery regarding "any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b).  For discovery purposes, relevance "has a very broad meaning." *Heathman v. U.S.D.C. for the Central Dist. of Cal.*, 503 F.2d 1032, 1035 (9th Cir. 1974).  District courts have wide discretion in determining relevancy in the context of discovery. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (citation omitted).

All discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which limits the extent of discovery otherwise allowed by the Federal Rules or by local rule if a court determines that, *inter alia*, the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery in resolving the issues.

The party resisting relevant, non-privileged discovery has the burden of showing why discovery should not go forward. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Balarezo v. Nth Connect Telecom, Inc.*, No. C 07-5243 JF (PVT), 2008 WL 2705095, at *2 (N.D. Cal. July 8, 2008).

   1.   Judge Walker's June 11, 2010 Order defines the universe of recordings and song titles at issue in this case.

The bulk of the parties' discovery dispute hinges on the question of which Nina Simone recordings and song titles are at issue in this case, and are therefore subject to discovery.  The answer is found for the most part in Judge Walker's June 11, 2010 Order, which lists particular

4

song titles and recordings. As noted in that Order, the list of "disputed recordings at issue in this litigation...[was] identified by the parties at [the June 10, 2010] oral argument as the following":

- **Docket No. 17, Exhibits 1 and 2** [4] (Brown's Memorandum in Opposition to Defendants' Motion to Dismiss, which attached as exhibits two previous court injunctions listing Simone recordings). Brown stated on the record at the June 10 hearing that the exhibits to Docket No. 17 indicate all the Simone recordings in which he claims an interest.[5]

- **Docket No. 72, Exhibit A** (Stroud's First Amended Counterclaims, which included a list of "disputed recordings"). Stroud's counsel stated on the record at the June 10 hearing that this list comprised all the Simone recordings in which Stroud claims an interest.[6]

*See* Docket No. 154 (June 11, 2010 Order at 12).

Nevertheless, through the instant motions, Brown has newly attempted to broaden the list of recordings subject to discovery beyond those indicated in the June 11, 2010 Order. In both his reply brief and at oral argument, Brown asserted that Judge Walker only intended the June 11, 2010 Order to define the universe of "ownership claims" and therefore "cannot be read to

---

[4] The June 11, 2010 Order inadvertently refers to the Exhibits as "A" and "B" although they were filed as Exhibits "1"and "2."

[5] Following is the relevant excerpt from the hearing:
   **"The Court**: But as far as this action was concerned, the entirety of the recordings in which you are claiming an interest here in this action are those that are specifically mentioned in the two exhibits that I've just referred to [Exhibits 1 and 2 to Docket No. 17].

   **Mr. Brown**: Yes."
   *See* Docket No. 163 (June 10, 2010 Hearing Transcript at 22:3-7).

[6] Following is the relevant excerpt from the hearing:
   **"The Court:** ...Now, how do we pin down those [recordings] in which Stroud is claiming an interest?

   **Ms. Desoer [Stroud's counsel]:** They're attached to his [counterclaims] and referenced in the [counterclaims]. Exhibit A...[¶¶] except for a couple of derivative works... [which] all derive from the recordings in Exhibit A."
   *See* Docket No. 163 (June 10, 2010 Hearing Transcript at 24:18-25:9).

1  prohibit discovery on the unfair competition claims...that Stroud owns no rights in *any* Nina

2  Simone recordings." *See* Docket No. 189 (Reply at 9:6-8) (emphasis in original).  By so arguing,

3  Brown seeks discovery as to every Nina Simone title or recording in which Stroud or his

4  company has ever claimed an interest, which Brown asserts would include recordings that are

5  not listed in the June 11, 2010 Order.  According to Brown, expanding discovery in this manner

6  is appropriate because of his unfair competition claims, which are rooted at least in part in his

7  beneficial interests in various Simone recordings.[7]

8  However, Brown unequivocally affirmed before Judge Walker at the June 10, 2010

9  hearing that the only recordings in which he was claiming a legal interest in this litigation are

10 listed in Exhibits 1 and 2 of Docket No. 17, and that any other beneficial, or equitable, interests

11 are not relevant to this case:

> **"The Court:** Now, are these [the recordings listed in Docket No. 17] the entirety of the recordings that you are claiming?  Yes or no?
>
> **Mr Brown:** For – for legal ownership, yes.  *Equitable is a separate issue*.  It's a distinction which I can explain, but *it's not relevant to this case*....[¶] When you create a recording and transfer in exchange for royalties, you're an equitable owner....[¶] *None of those recordings are at issue here*...."

16 *See* Docket No. 163 (June 10, 2010 Hearing Transcript at 21:13-22) (emphasis added).

17 Accordingly, based on the representations of both Brown and Stroud at the June 10, 2010

18 hearing, Judge Walker's June 11, 2010 Order expressly states that "*[a]ny recording that is not

19 listed... [in the order] is not part of this litigation*." *See* Docket No. 154 (Order at 14) (emphasis

20 in original).  At the hearing, Judge Walker underscored for the parties that the Court's Order

21 "will establish exactly the recordings that are at issue, *both on the complaint, the main action,*

22 *and in the counterclaims.* [¶] *And there will be no additional claims with respect to any other*

23 *recordings that will be permitted to be asserted in the case*." *See* Docket No. 163 (June 10, 2010

24 Hearing Transcript at 25:12-17) (emphasis added).

---

[7] Specifically, Brown claims he is the "beneficial owner of various recordings the legal title to which are owned by different major record companies" and that Stroud "not only unfairly competes by infringing recordings the legal title to which...Plaintiff own[s], but he infringes on recordings for which Plaintiff...[is the] beneficial owner[]...."  *See* Docket No. 189 (Reply at 10:15-11:2).  Brown states that a "beneficial owner" is an individual who has, for example, parted with legal title in exchange for royalties.  *See* Docket No. 189 (Reply at 10:4-11).

6

      2.    <u>The scope of discovery shall include all recordings of any song title in the June 11, 2010 Order where the date of fixation is not listed, but the scope may be narrowed if the parties agree that certain songs or recordings should not remain on the list.</u>

Per Judge Walker's June 11, 2010 Order, the parties were ordered to meet and confer by August 12, 2010 in order to further narrow the list of disputed recordings, as well as to provide specific details about the recordings. Judge Walker noted that the list in the Order "may contain recordings that, although previously referenced by the parties, are no longer in dispute." *See* Docket No. 154 (Order at 14). Thus, by September 2, 2010, the parties must submit their jointly narrowed list, which "shall govern the disputed recordings in this case going forward." *See id.*

At oral argument on the present motions, the parties stated that they had not yet complied with Judge Walker's "meet and confer" order, due to an illness in defense counsel's family. However, the parties represented that they intended to meet the September 2, 2010 deadline for determining the narrowed and definitive joint list of disputed recordings in this case, in compliance with Judge Walker's Order.

Additionally, at oral argument, the parties requested clarification regarding the discovery that would be permitted as to the song titles listed on the June 11, 2010 Order *for which no date of fixation has been indicated*.[8] According to all parties present at oral argument, for any given song title on the June 11, 2010 Order, *multiple recordings* of that song title could be at issue and discovery should thus encompass all recordings of that song title. Sony's counsel noted that such discovery was essential to enable the parties to determine the dates of fixation of the recordings at issue and distinguish the parties' respective ownership interests.

In fact, at the June 10, 2010 hearing, Stroud's counsel had indicated before Judge Walker that discovery aimed at sorting out specific recordings of particular song titles was necessary in order to establish who owns which disputed recordings:

---

[8] This is the case for numerous song titles listed in the Order. For example, the song titles "How Long Must I Wander" and "Mississippi Goddam" are listed without a date of recording. The listing of "Four Women, 10/17/69 Berkeley, CA Live Performance," on the other hand, appears to indicate a specific recording of that song title.

7

> "So, some of ...[the song titles identified by Brown and Stroud] may have the same name, but not necessarily be the same recording, if they were performed at different times. That's part of the problem here. [¶] So, *in discovery,* we need to figure out where those Venn diagrams, where the two circles overlap and we get the shaded area [of recordings] that [Brown and Stroud are] both claiming."

*See* Docket No. 163 (June 10, 2010 Hearing Transcript at 23:5-11) (emphasis added).

That some items listed in the June 11, 2010 Order are particular recordings while others are song titles stems from the fact that the Court generated the list directly from the parties' prior pleadings. Moreover, in their underlying briefs and at oral argument, the parties often used the terms "title" and "recording" interchangeably, which has in large part contributed to the apparent confusion regarding the distinction between these terms and highlights the necessity of defining the scope of discovery with this precise distinction in mind.

Thus, the scope of discovery shall include all Nina Simone recordings listed with a date of fixation in the June 11, 2010 Order, as well as all Nina Simone recordings of any song title in the June 11, 2010 Order where the date of fixation is not listed. To the extent Brown seeks discovery beyond this scope, his motions are denied.

Finally, the universe of song titles and recordings subject to discovery in this matter may be narrowed only if the parties, pursuant to their meet and confer process, agree that a particular song title or recording listed in the June 11, 2010 Order should be dropped because it is not part of this lawsuit. If the parties are unable to agree upon whether a particular recording or song title should remain on the parties' joint list of disputed recordings, it shall remain within the scope of discovery as ordered herein.

**C.  Rulings re Requests for Production.**

Request for Production Nos. 1, 2, and 4.

Stroud shall produce all responsive documents in his possession, custody, or control that pertain to any recording listed with a date of fixation on the June 11, 2010 Order, or that pertain to any recording of a song title listed on the June 11, 2010 Order without a date of fixation.

Request for Production Nos. 7 and 9.

Stroud shall produce all responsive documents, masters (or best copies where the master is unavailable), and tangible items indicated in Request for Production No. 9 in his possession, custody, or control that pertain to any recording listed with a date of fixation on the June 11, 2010 Order, or that pertain to any recording of a song title listed on the June 11, 2010 Order without a date of fixation, in which Stroud and/or Stroud Productions & Enterprises has claimed any interest at any point in time. This includes any such recordings in which Stroud and/or Stroud Productions & Enterprises has claimed an interest that was subsequently transferred to a third party.[9]

Request Nos. 7 and 9 call for production of some physical materials. As described by Brown, since Ms. Simone could play the same song the same way each time she performed the song, it is necessary to conduct a careful examination of original tapes, packing and storage materials and associated production materials to distinguish which performance is embodied in which recording, the dates of fixation, and therefore ownership. *See* Docket No. 159 (Mot. at 8:20- 9:1). Stroud did not disagree.

The parties did, however, disagree about the location for production of the physical items. Brown sought production in California, suggesting that it would also serve the purpose of

---

[9] The Court notes that Stroud appears to have claimed inconsistent interests in various Simone recordings outside of the instant proceedings. As one example, Brown points out that "Nobody Wants You (When You're Down & Out)" was listed as a song in which Stroud claimed an interest in parallel litigation against Brown that Stroud initiated in the Southern District of New York (Case No. 08-cv-8246, hereinafter "SDNY action"), but does not appear on Stroud's list of recordings in which he has claimed an interest in this suit. *Compare* Docket No. 185-1 (Complaint in SDNY action, attached as Exh. C to Declaration of Desoer) *with* Docket No. 72, Exhibit A. Furthermore, Stroud has stated that prior to the onset of the instant litigation, he donated "numerous [m]asters" to the Nina Simone Foundation and "accordingly, they are not within his custody and control." *See* Docket No. 133 (Defendants' Response to Order to Show Cause at 2:19-21). Though he asserts such donated masters are not within his custody and control, Stroud does not disclaim an interest in the donated masters. Particularly given this context, discovery as to all recordings and song titles in the June 11, 2010 Order in which Stroud has claimed any interest *at any point in time*, including those he may have "donated," is relevant to the claims and defenses in this action.

9

1  keeping the materials safe and nearby for trial. Although Stroud resisted a California production
2  site in his opposition papers, at oral argument Stroud's counsel indicated that she would be open
3  to discussing the possibility of production and storage of the materials in California. The Court
4  ordered the parties to meet and confer to decide upon a reasonable location for production and
5  inspection of physical materials by Brown. Production shall occur at a location where the
6  original materials can be safely maintained and shall remain within the possession and control of
7  Stroud's counsel, unless Stroud consents to a different custodian. The parties shall also
8  determine a reasonable date of production and time for inspection by Brown, which shall occur
9  within 30 (thirty) days of the date of this order, unless the parties agree that inspection may occur
10 within a reasonable period beyond that time frame. Finally, the parties shall cooperate in
11 determining the apportionment of any associated costs of production and storage, which may be
12 shared by the parties.

13  Request for Production No. 8.

14 Through this request, Brown seeks all "listings" of recordings by Nina Simone in which
15 either Stroud and/or Stroud Productions & Enterprises claims any interest. At oral argument,
16 Brown explained that the word "listing" was meant to signify an "inventory" of Simone
17 recordings. Stroud contends that he has already produced a list of Simone recordings in which
18 he claims an interest and that he has objected to this request as vague and ambiguous. The Court
19 sustains Stroud's objection, and no further response is required.

20  Request for Production Nos. 12 and 13.

21 In these requests, Brown seeks all agreements between Stroud and Noodle Records
22 Corp., and between Stroud Productions & Enterprises and Noodle Records Corp., and any
23 amendments or modifications to these agreements.

24 Stroud asserted as part of his opposition to the motion to compel that he "has produced
25 the five...agreements between Stroud and Noodle Records regarding recordings by Nina Simone.
26 There is nothing left to produce *that is even remotely relevant to this action....*" *See* Docket No.
27 187 (Stroud's Separate Statement Re Documents at 18:24-26) (emphasis added). However, as an
28 exhibit to his reply brief, Brown appended a copy of a contract between Stroud and Noodle

Records purportedly listing six Simone master recordings at issue in this litigation which Stroud transferred to Noodle Records. The contract was not produced by Stroud; Brown obtained it from a third-party. *See* Docket No. 191 (Exh. 18 to Supplementary Declaration of Brown ¶ 4). When asked at oral argument about this contract, Stroud's counsel stated that she did not know why Stroud did not have the contract, and conceded that if Stroud possessed a copy, it should have been produced.

Accordingly, Stroud shall produce all agreements between Stroud and Noodle Records, and between Stroud Productions & Enterprises and Noodle Records, in his possession, custody, or control that pertain to any recording listed with a date of fixation on the June 11, 2010 Order, or that pertain to any recording of a song title listed on the June 11, 2010 Order without a date of fixation.

In addition, the Court is concerned about Stroud's apparent failure – without any explanation despite the opportunity to provide one at oral argument – to produce the Noodle Records contract that appears responsive to Brown's document requests. This concern is compounded by the fact that several of Stroud's discovery responses were hedged by his assertion that he has produced all "relevant" information. *See generally*, *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, No. 1:08CV00918, 2010 WL 1912245, at *24-25 (M.D. N.C. May 12, 2010) (noting that party's "calculated ambiguity" by responding that it "produced all *relevant*, non-privileged documents" based on party's "unilateral relevance determinations" impeded the discovery process) (internal citation and quotation omitted) (emphasis in original).

Consequently, in addition to producing all responsive documents, Stroud's counsel shall submit a sworn affidavit setting forth in detail all efforts made to locate responsive documents and attesting that all responsive documents in Stroud's possession, custody, or control have been produced. Furthermore, *Stroud himself* shall also submit a sworn affidavit attesting that he has produced all responsive documents that are in his possession, custody, or control.

**D.   Rulings re Interrogatories.**

Interrogatory Nos. 1 and 2.

Stroud shall answer these Interrogatories in full with respect to any recording listed with

11

a date of fixation on the June 11, 2010 Order, and any recording of a song title listed on the June 11, 2010 Order without a date of fixation, in which Stroud and/or Stroud Productions & Enterprises has claimed or transferred any interest at any point in time.

Interrogatory No. 5.

The information sought by Brown regarding statements putatively made by Stroud challenging Brown's claims of ownership (and asserting Stroud's adverse ownership interests) is relevant to Brown's claims and defenses in this action.[10] Moreover, as the party resisting discovery, Stroud has failed to meet his burden of showing why discovery of information pertaining to a central dispute in this case – adverse ownership interests and allegations of unlawful exploitation of Simone recordings – should not be permitted. Thus, Stroud shall answer this Interrogatory in full subject to the following clarification: to the extent Interrogatory No. 5 asks Stroud to provide "sufficient detail" for Brown to "locate and identify any documents," Stroud shall respond only as to the location and identification of any documents that Stroud relied upon in making any of the statements that are indicated in this Interrogatory.

Interrogatory Nos. 7 and 8.

The Court finds Interrogatory Nos. 7 and 8 overbroad and unduly burdensome to the extent that Brown asks Stroud to provide detailed information about recordings that were identified in Stroud's SDNY action but that do not appear on the June 11, 2010 Order, and are therefore not part of this litigation. Thus, Stroud shall answer these Interrogatories in full, only with respect to any recording indicated in paragraphs 18 or 19 in the SDNY action that is also listed either as a recording with a date of fixation on the June 11, 2010 Order or has the same song title as any song listed on the June 11, 2010 Order without a date of fixation.[11]

---

[10] In paragraph 12 of his first amended complaint, Brown alleges that these putative false statements made by Stroud clouded his title to Simone recordings. Stroud's counterclaims also allege, *inter alia*, that Brown has unlawfully granted licenses to Simone recordings.

[11] Although it is overbroad and burdensome to require Stroud to provide detailed interrogatory responses about songs or recordings that are not part of this litigation, the Court notes that a different question is presented if Stroud were asked in a deposition *why* his claimed interests in Simone recordings may vary between the instant lawsuit and the SDNY action. Such a basic inquiry at a deposition would be permissible.

12

Verification of Responses.

As required by the Federal Rules, Stroud must verify his supplemental interrogatory responses. Based on the parties' submissions of the underlying discovery requests at issue, it does not appear that Stroud ever verified his supplemental response to Interrogatory No. 1, in which he was asked to identify the Simone recordings in which he claims an interest. The Court takes this opportunity to underscore that Stroud may have difficulty claiming an interest in any recording he has not so identified and verified in his subsequent supplemental response.

**E.   Sanctions.**

The Court denies Brown's motion for sanctions.

## II. CONCLUSION

For the foregoing reasons, Brown's Motion to Compel Document Production (Docket No. 159) is GRANTED in part and DENIED in part; Brown's Motion to Compel Further Interrogatory Responses (Docket No. 158) is GRANTED in part and DENIED in part; and Brown's Motion for Sanctions (Docket No. 160) is DENIED.

Accordingly, **within 20 (twenty) calendar days of the date of this order:**

(1) Stroud shall provide all further supplemental responses to **Interrogatory Nos. 1, 2, 5, 7, and 8**, as specified above, accompanied by a verification of all further responses.

(2) Stroud shall produce all documents responsive to **Request for Production Nos. 1, 2, 4, 12, and 13**, as specified above. With respect to the foregoing Requests for Production, Stroud's counsel shall submit a sworn affidavit setting forth in detail all efforts made to locate responsive documents and attesting that all responsive documents in Stroud's possession, custody, or control have been produced. Stroud himself shall also submit a sworn affidavit attesting that he has produced all documents responsive to these Requests for Production that are in his possession, custody, or control.

(3) Brown and Stroud shall meet and confer to determine a reasonable location for

production and inspection by Brown of tangible items responsive to **Request for Production Nos. 7 and 9.** Production shall occur at a location where the original materials will be safely maintained and remain within the possession and control of Stroud's counsel, unless Stroud consents to a different custodian. The parties shall also determine a reasonable date of production and time for inspection by Brown, **which in no event shall occur later than 30 (thirty) days from the date of this order, unless the parties agree that inspection may occur within a reasonable period beyond that time frame.** On the date agreed upon for the inspection, Stroud's counsel shall submit a sworn affidavit setting forth in detail all efforts made to locate materials responsive to Request for Production Nos. 7 and 9 and attesting that all responsive materials in Stroud's possession, custody, or control have been produced. Stroud himself shall also submit a sworn affidavit attesting that he has produced all materials responsive to Request for Production Nos. 7 and 9 that are in his possession, custody, or control. The parties shall cooperate in determining the apportionment of any associated costs of production and storage, which may be shared by the parties.

IT IS SO ORDERED.

DATED: August 24, 2010

_____
DONNA M. RYU
United States Magistrate Judge