**United States District Court**
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN AMES BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW B. STROUD, and STROUD PRODUCTIONS AND ENTERPRISES, INC.,<br><br>    Defendants/Counterclaimants<br><br>    v.<br><br>STEVEN AMES BROWN and ESTATE OF NINA SIMONE,<br><br>    Counterdefendants.<br>_____/ | No. C 08-02348 JSW<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COUNTERCLAIMS** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the motion to dismiss, filed by Plaintiff, Steven Ames Brown ("Brown"), in which Brown moves to dismiss the fifth claim for relief in the Third Amended Counterclaims asserted by Andrew B. Stroud and Stroud Productions and Enterprises, Inc. (collectively "Stroud") against Brown and the Estate of Nina Simone ("Estate"). (Docket No. 268.) The Estate has joined in this motion. (Docket No. 270). The Court has considered the parties' papers, relevant legal authority, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The hearing set for July 1, 2011 is VACATED, and the Court the Court GRANTS Brown's and the Estate's motion

1  to dismiss. However, the Court also grants Stroud a final opportunity to amend the facts
2  supporting the fifth claim for relief.

## BACKGROUND

The facts underlying this dispute have been set forth in previous Orders, and the Court shall not repeat them in detail. (*See*, *e.g.,* Docket Nos. 48, 80, 154.) In brief, this case involves competing claims between Brown, Stroud and the Estate over the rights to Nina Simone recordings, which Stroud refers to as the "Disputed Materials." On January 28, 2011, the Court issued its most recent ruling on the sufficiency of the parties' pleadings. (*See* Docket No. 251.) In that Order, the Court granted the Estate's motion to dismiss Stroud's Second Amended Counterclaim, and it dismissed all of Stroud's copyright based claims against the Estate, including Stroud's claim for relief under the Digital Millenium Copyright Act ("DMCA"), on the basis that Stroud failed to sufficiently allege an agency relationship between Brown and the Estate. However, the Court did not address the merits of the Estate's argument that the conduct supporting the claim did not fall within the scope of the DMCA. (1/28/11 Order at 5:17-22, 6 n.2).) The Court granted Stroud "one final opportunity to amend [the] claims with respect to the Estate." (*Id.*)

In that same Order, the granted Brown's motion to strike, but it also granted Stroud leave to amend his claims against Brown to allege facts showing an agency relationship between Brown and the Estate. In reaching this decision, the Court noted that it previously determined that Stroud's DMCA claim, asserted in his First Amended Counterclaim survived against Brown, and that it had allowed Stroud to amend his claims "with respect to the Estate only." (*Id.* at 7:22-24 (citing Docket No. 154 at 11), 8:20-24, 10:7-9.) Brown, however, had not moved to dismiss the DMCA claim on the basis that the conduct in which he allegedly engaged did not fall within the DMCA's scope.[1]

---

[1] Stroud and Brown disagree about whether Brown should be permitted to raise this argument in the current motion. However, as noted, the Estate previously moved to dismiss the DMCA claim on this basis, but the Court did not reach the merits of the Estate's argument. (1/28/11 Order at 6 n.1.) Because the Estate join's Brown's motion, and because the Court's ruling will apply equally to Brown and the Estate, the Court shall consider the merits of this argument.

2

The Court shall address specific additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.  Applicable Legal Standards.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.  The Court Dismisses the Fifth Claim for Relief, With Leave to Amend.**

In his fifth claim for relief, Stroud alleges that Brown and the Estate provided or distributed false copyright management information or removed or altered copyright management information ("CMI") in connection with the Disputed Materials, in violation of 17

1 U.S.C. §§ 1202(a) and 1202(b).[2] Brown and the Estate argue that Stroud's claim fails because
2 CMI, as defined in Section 1202(c), must be limited to CMI that operates as part of automated
3 systems or technological processes, and, under this construction, the TACC fails to allege
4 sufficient facts to state a claim. (*See* Mot. at 6:6-8; Reply at 3:21-4:4, 4:20-28.) Thus, in order
5 to resolve the motion to dismiss, the Court must interpret Section 1202(c).

### 1. Principles of Statutory Construction.

The purpose of statutory construction is to determine Congressional intent, and a court begins by examining the text of the statute at issue. *See MDY Indus. v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942 (9th Cir. 2010). "[S]tatutory language must always be read in its proper context. 'In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). In general, "'[t]he plain meaning of the statute controls, and courts will look no further, unless its applications leads to unreasonable or impracticable results. If the statute is ambiguous[,] ... courts may look to its legislative history for evidence of congressional intent.'" *Textile Secrets, Inc. v. Ya-Ya Brand, Inc.*, 524 F. Supp. 2d 1184, 1194 (quoting *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999)).

"However, even where the plain language appears to settle the question, we may nonetheless look to the legislative history to determine whether there is clearly expressed legislative intention contrary to that language that overcomes the strong presumption that Congress has expressed its intent in the language it chose." *Amalgamated Transit Union Local 1309 AFL-CIO v. Laidlaw Transit Services, Inc.*, 435 F.3d 1140, 1146 (9th Cir. 2006). In addition, the Ninth Circuit has stated that the "plain meaning rule: does not require a court to operate under an artificially induced sense of amnesia about the purpose of legislation, or to turn a blind eye towards significant evidence of Congressional intent in the legislative

---

[2] "Section 1202(a) prohibits falsification of copyright management information with the intent to aid copyright infringement. Section 1202(b) prohibits, unless authorized, several forms of knowing removal or alteration of copyright management information." *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1121 (C.D. Cal. 1999), *aff'd in part and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003).

4

history..." *Amalgamated Transit Union Local 1309 AFL-CIO v. Laidlaw Transit Services, Inc.*, 448 F.3d 1192, 1093 (9th Cir. 2006) (quoting *Heppner v. Aleyeska Pipeline Serv. Co.*, 665 F.2d 868, 871 (9th Cir. 1981)).

**2. Discussion.**

The Court begins, as it must, with the text of the statute. The DMCA provides protection for a person's knowing and intentional misuse of CMI to induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a), (b). The term CMI means "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, ... (1) [t]he title and other information identifying the work, including the information set forth on a notice of copyright, ... [and] (3) [t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." *Id.* § 1202(c)(1), (3).

As set forth above, Brown and the Estate urge the Court to import a further limitation on the term CMI, namely that it operate as part of an automated system or a technological process. To support their argument, Brown and the Estate rely on *IQ Group Ltd v. Wiesner Publishing LLC*, 409 F. Supp. 2d 857 (D.N.J. 2006).[3] In that case, the plaintiffs were companies that provided advertising via email. They argued that the defendants had distributed their ads without a logo and without a hyperlink that directed a user to the plaintiffs' website where the plaintiffs' copyright notices were located. *Id.* at 589. The court granted the defendants' motion for summary judgment and concluded that the alleged conduct did not fall within the scope of the DMCA, because neither the plaintiffs' logo nor the hyperlink "function[ed] as a component of an automated copyright protection management system." *Id.* at 597-98. In reaching its conclusion, the court reviewed the legislative history of the DMCA and "other extrinsic sources," to conclude that Section 1202 "should be construed to protect copyright management

---

[3] Brown and the Estate also rely on this Court's decision in *Jacobsen v. Katzer*, 2009 WL 4823021 (N.D. Cal. Dec. 10, 2009), which cited the *IQ Group* decision, and they argue this Court has already determined that the term CMI requires use of a technological process or the use of automated systems. At the time the Court decided the *Jacobsen* case, the authority on this issue still was relatively sparse. Moreover, the *Jacobsen* case clearly involved the use of technological processes as well as the Internet and, as will be discussed below, is not inconsistent with the conclusion the Court reaches in this Order.

5

performed by the technological measures of automated systems." *Id.* at 597; *see also id.* at 594-95 (discussing Report of the Working Group on Intellectual Property Rights ("White Paper"), which contained draft version of § 1202, and noting that White Paper "understood 'copyright management information' to be information ... that is included in digital versions of the work, so as to implement 'rights management functions' or 'rights management systems," and that "[s]uch systems are conceived of electronic and automated within the environment of computer network").

Brown and the Estate also rely on the *Textile Secrets* case, *supra*, in which the plaintiff alleged that the defendants had violated Section 1202(b) when they removed plaintiff's name and a copyright symbol from the border of sample yardage of a copyrighted fabric design and a tag that stated the design was plaintiff's registered work. 524 F. Supp. 2d at 1192-93. On summary judgment, the court concluded that a "literal interpretation of 'copyright management information,' ... would in effect give § 1202 limitless scope in that it would be applicable to all works bearing copyright information as listed in § 1202(c)(1)-(8)." *Id.* at 1195. Thus, "to avoid applying the statute in such a way that would lead to 'impracticable results,'" the court conducted an extensive review of the legislative history of the DMCA, as well as other extrinsic sources, in an effort to discern congressional intent. *See id.* at 1196-99.

The *Textile Secrets* court did not adopt the *I.Q. Group* court's conclusion that CMI must function as a component of an automated copyright protection or management system, and it stated that it was not attempting "to define the precise contours of the applicability of" Section 1202. Nonetheless, like the *I.Q. Group* court, it concluded that Section 1202 should be interpreted more narrowly than the text suggests. *Id.* at 1201, 1203 & n.18. Thus, the court found that Section 1202 was not "intended to apply to circumstances that have no relation to the Internet, electronic commerce, automated copyright protections or management systems, public registers, or other technological measures or processes as contemplated in the DMCA as a whole." *Id.* at 1201 & n.17 (noting that Section 1202 "*does* apply to copyright management information set forth on certain non-digital works," but declining to decide what types of non-digital works would be covered). Because there was no evidence in the record that showed that

any "technological process" was utilized by the plaintiff in placing the copyright information on the fabric, or that defendants employed any technological process to remove the copyright information from the fabric or to distribute the design, the facts of the case did not trigger Section 1202. *Id.* at 1201-02.

Recently, the Third Circuit rejected the *I.Q. Group* court's interpretation of Section 1202 and the term CMI. *Murphy v. Millenium Radio Group, LLC*, __ F.3d __, 2011 WL 2315128 (3rd Cir. June 14, 2011). The *Murphy* court held that "a cause of action under § 1202 of the DMCA potentially lies whenever the types of information listed in § 1202(c)(1)-(8) and 'conveyed in connection with copies ... of a work ... including in digital form' is falsified or removed, regardless of the form in which that information is conveyed." *Id.,* 2011 WL 2315128, at *5-*6. In that case, the plaintiff owned the copyright to a photograph of two radio personalities, which was published in a magazine with a "gutter credit" identifying plaintiff as the author of the photograph. An employee of the radio station scanned the photograph and posted it on two websites, without the gutter credit. *Id.*, at *1. The plaintiff alleged that the defendants' conduct violated Section 1202(b). *Id.*, at *3.

Although the *Murphy* court considered the legislative history, it concluded that at best the legislative history was consistent with the defendants' interpretation of the statute and did not contradict plaintiff's proposed interpretation.[4] Because the legislative history did not provide an "'extraordinary showing of contrary intentions," the *Murphy* court relied on the plain language of the statute to conclude that "the mere fact that [plaintiff's] name appeared in a printed gutter credit near the [copyrighted work] rather than as data in an 'automated copyright protection or management system,' does not prevent it from qualifying as CMI or remove it from the protection of Section § 1202." *Id.* at *6.

A growing number of district courts have concluded that CMI should be construed more broadly. *See Agence France Press v. Morel*, __ F. Supp. 2d __, 2011 WL 147718, at *9-10 (S.D.N.Y. Jan. 14, 2011) ("*Morel*"); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp.

---

[4] The *Murphy* court read the *Textile Secrets* court to have concluded that "'copyright management information' must be electronic.'" *Murphy*, 2011 WL 2315128, at *5 (citing *Textile Secrets*, 524 F. Supp. 2d at 1198).

7

2d 1352, 1359 (N.D. Fla. 2010) (plain language did not limit definition of CMI to "notices that are placed on works through technological processes," but finding no violation of DMCA); *Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 980-81 (N.D. Ill. 2010); *Interplan Architect, Inc. v. C.L. Thomas, Inc.*, 2009 WL 6443117, at *3-5 (S.D. Tex. Nov. 13, 2009); *Fox v. Hildebrand*, 2009 WL 1977996, at *3 (C.D. Cal. July 1, 2009) (declining to look to legislative history where "[t]he plain language of the DMCA provision at issue is not limited to copyright notices that are digitally placed on a work")[5]; *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 461-62 (S.D.N.Y. 2009) (denying motion to dismiss and finding that there is "no textual support for limiting the DMCA's application to 'the technological processes of automated systems'").

In essence, Brown and the Estate ask the Court to import a limitation of Section 1202(c) that does not appear in its text. The Court agrees with those courts who have rejected the narrow construction of the *I.Q. Group* court and it to limit the term CMI to information that functions as part of an automated copyright management or protection system. Although the *Textile Secrets* court recognized that CMI can be placed on non-digital works and that CMI can occur in non-digital form, that court also suggests that to state a claim under the DMCA, CMI must be placed on, removed from, or altered by means of a technological process. *Textile Secrets*, 524 F. Supp. 2d at 1201-02. While allegations to that effect would deserve protection under the DMCA, the Court does not believe that it would be appropriate to limit the DMCA's application solely to CMI that has been altered, removed, or placed on a work by way of a technological process."

However, the Court cannot turn a blind eye to the purposes for which the DMCA was enacted, namely "to mitigate the problems presented by copyright enforcement in the digital age." *MDY Industries*, 629 F.3d at 942 (citing *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440 (2d Cir. 2001)); *see also Textile Secrets*, 524 F. Supp. 2d at 1196. In that respect, the Court does find the *Textile Secrets* case persuasive, in part, and concludes it would be

---

[5] The *Fox* court discounted the defendant's reliance on the *Textile Secrets* opinion on the basis that it was "simply inapposite," because *Textile Secrets* involved a copyright notice on fabric. *Fox*, 2009 WL 1977996, at *3 n.3.

8

appropriate to review the legislative history to avoid impracticable results. *Id.* at 1195. This Court shall not repeat the *Textile Secrets* court's discussion of the legislative history or the various treaties and White Papers that preceded the enactment of the DMCA. *See generally id.* at 1196-99. It is clear from that discussion that Congress was concerned, in part, about copyright protection in an digital age and in an electronic marketplace. *Id.* at 1199. Therefore, the Court concludes that in order to state a claim for a violation of Section 1202(a) or (b), a plaintiff must allege facts showing that the alleged falsification or removal of CMI has some relation to the Internet, electronic commerce, or the purposes for which the DMCA was enacted. *Cf. Textile Secrets*, 524 F. Supp. 2d at 1201.[6]

Stroud alleges that Brown and the Estate have represented that they are the owners of copyrights to the Disputed Materials, including *Just In Time*, when, in fact, Stroud is the owner of the copyrights to these materials. Stroud also alleges that Brown and the Estate have distributed copies of those works with inaccurate ownership notes. Finally, Stroud alleges that Brown and the Estate acted with the requisite knowledge and intent. However, apart from recitation of the statutory elements, Stroud does not allege any facts linking this conduct to the Internet, electronic commerce, or any other purpose for which the DMCA was enacted. Accordingly, Stroud has not alleged facts sufficient to state a claim for for a violation of either Section 1202(a) or 1202(b).

Brown and the Estate raise several arguments suggesting that it would be futile to amend the DMCA claim. (*See* Mot. at 7:14-9:18, Reply at 5:3-7:12.) This is the first time the Court

---

[6] In addition, in the *Murphy, Morel, Cable* and *Fox* cases, the underlying facts have some connection to the Internet or electronic commerce, which reinforces the Court's conclusion in this case. *See, e.g., Murphy*, 2011 WL 2315128, at *1; *Morel*, 2011 WL 147718, at *1-4 (photographer attached information regarding his copyright interests next to images, posted them on website and Twitpic page, and defendants allegedly downloaded photographs, without attributions, and then distributed them to various news agencies and organizations); *Cable*, 728 F. Supp. 2d at 978-79 (plaintiff's photographs were posted on website with copyright information, defendants allegedly distributed copies via Internet and other digital means and deliberately removed plaintiff's copyright notice); *Fox*, 2009 WL 1977996, at *1 (defendant posted plaintiff's copyrighted architectural drawings to website without plaintiff's copyright notice); *but see BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609-11 (S.D.N.Y. 2010) (plaintiffs alleged that defendants distributed, with misleading or altered copyright management information, copyrighted work via, *inter alia*, websites; on motion to dismiss, court declined to hold that, as a matter of law, that CMI must be placed on the actual information on a website in order to state a claim under the DMCA).

9

squarely addressed this issue, and as such, the Court rejects their argument that, procedurally, Stroud should not be permitted to amend the claim.  In addition, the Court finds that the allegations about the alleged false CMI are sufficiently specific, and their arguments regarding knowledge and intent are better addressed by way of a motion for summary judgment.  The only argument they raise that has any force is that, legally, Stroud may not be able to state a claim based on the *Just In Time* track or its inclusion in the *Before Sunset* soundtrack.  *See* 17 U.S.C. §§ 301(c), 507.  Unless Stroud has a good faith basis to include this work in his DMCA claim, it should not be referenced in the amended counterclaim permitted by this Order.

Accordingly, because the Court cannot conclude that it would be futile to give Stroud one *final* opportunity to amend the DMCA claim, Stroud is permitted to amend that claim to cure the specific deficiencies identified in this Order.

## CONCLUSION

For the foregoing reasons, Brown and the Estate's motion to dismiss the DMCA claim is GRANTED, with leave to amend.  If Stroud chooses to file an amended counterclaim, it shall be due by no later than July 22, 2011.  The Court shall not grant him any extensions on this deadline.[7]

**IT IS SO ORDERED.**

Dated:  June 30, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[7] Brown and the Estate argue that Stroud Production and Enterprises, Inc. cannot state a claim under the DMCA because it dissolved in 1981.  Andrew Stroud appears to concede this point and offers to amend the claim to indicate that all rights of the corporate defendant reverted to him upon dissolution.  If, indeed, Stroud Enterprises, Inc., is not the proper party to assert this claim, Stroud should amend the DMCA claim to reflect that fact.

10