UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN AMES BROWN, | No. C-08-02348 JSW (DMR) |
| Plaintiff, | **ORDER REGARDING OCTOBER 20, 2011 JOINT LETTER; ORDER TO SHOW CAUSE** |
| v. | |
| ANDREW B. STROUD, | |
| Defendant. | |

Before the court are the parties' letters [Docket Nos. 340, 341 and 342] regarding a recent sale by Defendant Andrew Stroud ("Stroud") of Nina Simone recordings and other works which are the subject of this lawsuit. The Nina Simone works in Stroud's possession have been the subject of various discovery orders. On August 24, 2010, this court ordered Stroud to produce certain Nina Simone recordings for inspection [Docket No. 204]. On January 28, 2011, the Hon. Vaughn Walker ordered Stroud to produce the recordings and permit Plaintiff Steven Ames Brown ("Brown") to copy them [Document No. 251].

On September 22, 2011, this court held a discovery hearing in which, among other things, the court directed the parties (Brown, Stroud, Sony Music Holdings ("Sony") and the Estate of Nina Simone ("the Estate")) to meet and confer in person in the courthouse on October 6, 2011 in order to create an annotated stipulated inventory of disputed recordings with the current location of each recording, an indication of whether each particular recording has been produced for inspection, and

1  the date of such production.  The Estate and Stroud were also ordered to meet and confer regarding
2  any issues pertaining to discovery propounded by the Estate on Stroud.  The court's September 26,
3  2011 order [Docket No. 335] went on to specify that the parties were to complete the creation of a
4  fully annotated stipulated inventory notwithstanding disputes regarding whether certain recordings
5  fall within the scope of outstanding discovery requests.  Any remaining disputes regarding the scope
6  of discovery were to be submitted to the court by joint letter no later than October 20, 2011.  Finally,
7  the court ordered that in the event Stroud produced any additional recordings, his counsel Melissa
8  Newel was to assist Stroud in person in New York in identifying and producing additional
9  recordings in his possession.

10     According to the parties' current submissions, the parties met and conferred in the
11  courthouse on October 6, 2011 as ordered.  However, it later came to light that on October 1, 2011,
12  Andy Stroud, Inc. (ASI) apparently had entered into a contract to sell the Nina Simone works in
13  Stroud's possession to ICU ENT DIST, a California corporation.  The contract is signed by Stroud
14  and by Wally Roker, President of ICU ENT DIST.  Ms. Newel represents that she did not know that
15  her client had already sold the works when she met and conferred with other counsel on October 6,
16  2011.  [Docket No. 340 at 10].  She does not state whether she knew that Stroud had been
17  contemplating a sale.

18     Brown, Sony and the Estate all argue that Stroud's October 1, 2011 sale is an attempt to
19  circumvent his discovery obligations, and amounts to deliberate spoliation of evidence.  Brown,
20  Sony and the Estate move for various remedies, including sanctions for spoliation and an order that
21  Stroud deliver the disputed recordings to the court for safekeeping, at Stroud's expense.  [Docket
22  No. 340 at 3, 5 and 9].

23     The moving parties do not provide any evidence of spoliation.  Nor do they point to any
24  authority, such as a preliminary injunction, that prevents Stroud or ASI from selling the Nina
25  Simone works in Stroud's possession.  Finally, they do not they explain why a Rule 45 subpoena
26  would be ineffectual in gaining access to the disputed works.  Nevertheless, the sale raises a number
27  of red flags.  Given the suspicious timing of the sale, the fact that the sale was not disclosed at the
28  October 6, 2011 court-ordered meet and confer session, and Stroud's general behavior in discovery

to date[1], the court is concerned that the sale amounts to inappropriate gamesmanship designed to delay the proceedings and impede other parties' litigation efforts.

For this reason, the court now issues an order to show cause to Stroud to explain why Stroud and/or his counsel should not be sanctioned for violation of court orders to produce Nina Simone works and to meet and confer in good faith. Furthermore, Stroud shall submit a sworn declaration setting forth **in detail** a fully annotated inventory of disputed recordings and other Nina Simone works, with the current location of each recording or work, and an indication of whether each particular recording or work has been produced for inspection and the date of such production. During the course of this litigation, the parties have also expressed concern about the fragility of recordings and other works. For this reason, the declaration shall also set forth a **detailed** description of the location(s) so that the parties and the court can understand whether the conditions under which the Nine Simone works are being stored may result in damage to those works (for example, in an office, warehouse, studio, whether temperature controlled, etc.). Based upon the parties' submissions, it appears that the works are located in New York, Los Angeles, and Berkeley, California. In order to obtain information for the declaration, counsel for Stroud is ordered to assist Stroud by examining the works in person wherever they are located. This shall occur at Stroud's expense.

The declaration shall also explain Wally Roker's relationship with Andrew Stroud, including how long they have known each other, and in what capacities. The declaration shall describe all agreements regarding payment arrangements, including any payments that have been made pursuant to the sale contract (when, how much, and to whom.)

If the declaration is not sufficiently detailed, Stroud and/or his counsel may be subject to sanctions for failing to follow a court order. Counsel for Stroud notes that "[Stroud has] a long-standing relationship with the purchaser, [so that] a subpoena [for production of the transferred works] may not even be required." [Docket 340 at 11]. Given the representation that Stroud and

---

[1] For example, there have been numerous motions to compel responses to discovery filed in this case, all against Stroud, and the court has found in favor of the moving parties in virtually all instances. Further, the positions taken by Stroud in discovery have often been less than forthcoming.

3

1 Wally Roker have a long-standing and apparently cooperative relationship, the court notes that it will be highly skeptical of any claim by Stroud or his counsel that he could not provide the detailed information now ordered because it is in the possession of a third party.

Stroud's response to the Order to Show Cause, as well as the declaration ordered by the court, shall be filed **no later than November 23, 2011.**

IT IS SO ORDERED.

Dated: November 3, 2011



DONNA M. RYU
United States Magistrate Judge

4