UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN AMES BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW B. STROUD,<br><br>    Defendant.<br>_____/ | No. C-08-02348 JSW (DMR)<br><br>**ORDER REGARDING MOTIONS FOR SANCTIONS [DOCKET NOS. 367, 369, 372]** |

This is a declaratory relief and copyright infringement action regarding the works of the musical artist Nina Simone. The parties assert competing claims to particular Simone recordings. Plaintiff Steven Ames Brown ("Brown") contends that he successfully represented Ms. Simone in two prior actions and acquired a 40% interest in sound recordings that Ms. Simone recovered through those actions. Defendant Andrew B. Stroud was married to Ms. Simone and also acted as her business manager. Stroud and Defendant Stroud Productions and Enterprises, Inc. (together, "Stroud") claim rights to Simone recordings flowing from a 1972 marital settlement agreement with Ms. Simone. Stroud counterclaims against Brown and the Estate of Nina Simone ("the Estate"), seeking, among other things, declaratory relief that Stroud is the exclusive owner of the disputed recordings. The Estate counterclaims against Stroud, seeking rights in the recordings and the return of the Estate's alleged property. Brown filed a reply counterclaim against Sony Music Entertainment ("Sony") to obtain a declaration that Sony, and not Stroud, owns various Simone recordings that are

the subject of Stroud's counterclaims. Sony is the successor to RCA, one of the companies with which Ms. Simone had a recording contract.

The court now considers the motions for sanctions filed by Brown, Sony, and the Estate against Stroud and his counsel for violation of the court's August 24, 2010 order requiring Stroud to produce additional documents, including certain sound recordings. [Docket Nos. 367, 369, 372.] Having considered the relevant legal authority and the parties' submissions and arguments, the motions are granted in part and denied in part.

## I. Background

The court previously determined that the scope of discovery in this case "shall include all Nina Simone recordings listed with a date of fixation in the June 11, 2010 Order [by then-presiding Chief Judge Vaughn R. Walker], as well as all Nina Simone recordings of any song title in the June 11, 2010 Order where the date of fixation is not listed." [Docket No. 204 ("Aug. 24, 2010 Order") at 8.] Accordingly, in ruling on Plaintiff's motion to compel further responses to certain requests for production, the court ordered Stroud to produce materials consistent with the defined scope of the relevant song titles and recordings, and further clarified that this definition applied to any song or recording in which Stroud or his business had "claimed any interest at any point in time," even if he no longer claimed such an interest:

> Stroud shall produce all responsive documents, masters (or best copies where the master is unavailable), and tangible items indicated in Request for Production No. 9 in his possession, custody, or control that pertain to any recording listed with a date of fixation on the June 11, 2010 Order, or that pertain to any recording of a song title listed on the June 11, 2010 Order without a date of fixation, *in which Stroud and/or Stroud Productions & Enterprises has claimed any interest at any point in time. This includes any such recordings in which Stroud and/or Stroud Productions & Enterprises has claimed an interest that was subsequently transferred to a third party.*

[Docket No. 204 at 9 (footnote omitted) (emphasis added).]

In March 2011, Stroud produced some of the responsive recordings subject to the court's August 24, 2010 Order. Counsel for the parties subsequently met and conferred regarding Stroud's refusal to produce other recordings. (Sony's Mot. 2.) In August 2011, certain recordings were duplicated at a recording studio with copies provided to the parties. (Sony Mot. 2.)

2

On September 22, 2011, the court held a hearing regarding another discovery dispute, [*see* Docket No. 301], as well as the parties' request for a continuance of case management deadlines, which had been referred to the undersigned by Judge Jeffrey S. White, [*see* Docket No. 303]. During the hearing, the court questioned the parties regarding the status of the inspection and copying of the recordings subject to the August 24, 2010 Order. Because it became clear that the parties were still struggling to identify the universe and location of responsive recordings, the court ordered the parties to meet and confer in person in the courthouse to create an annotated stipulated inventory of disputed recordings, including their current location, an indication of whether each particular recording had been produced for inspection, and the date of such production. On October 6, 2011, counsel for the parties met and conferred at the courthouse as ordered. (Sony's Mot. 3.)

It later came to light that on October 1, 2011, unbeknownst to the other parties in this lawsuit, Andy Stroud, Inc. ("ASI") entered into a contract to sell the Simone works in Stroud's possession to third party ICU Ent. Dist. ("ICU"). Although the sale to ICU had already occurred by the October 6, 2011 courthouse meet and confer session, Stroud's counsel did not inform the other parties. She later represented that she did not know about the sale and that her client did not tell her about it until after the October 6, 2011 conference. [Docket No. 340 at 10.] On October 14, 2011, Stroud's attorney informed the parties of the sale to ICU. [Docket No. 340 at 10.]

Following the ICU sale, counsel for Stroud took the position that her client could not produce additional responsive recordings because they were no longer in Stroud's ownership, possession, or control as a result of the sale. The other parties cried foul, claiming that the sale was the equivalent of evidence spoliation. The court issued an order noting its concern that Stroud was engaging in "inappropriate gamesmanship:"

> Brown, Sony and the Estate all argue that Stroud's October 1, 2011 sale is an attempt to circumvent his discovery obligations, and amounts to deliberate spoliation of evidence. Brown, Sony and the Estate move for various remedies, including sanctions for spoliation and an order that Stroud deliver the disputed recordings to the court for safekeeping, at Stroud's expense. [Docket No. 340 at 3, 5 and 9].
>
> The moving parties do not provide any evidence of spoliation. Nor do they point to any authority, such as a preliminary injunction, that prevents Stroud or ASI from selling the Nina Simone works in Stroud's possession. Finally, they do not they explain why a Rule 45 subpoena would be ineffectual in gaining access to the disputed works. Nevertheless, the sale raises a number of red flags. Given the

3

> suspicious timing of the sale, the fact that the sale was not disclosed at the October 6, 2011 court-ordered meet and confer session, and Stroud's general behavior in discovery to date, the court is concerned that the sale amounts to inappropriate gamesmanship designed to delay the proceedings and impede other parties' litigation efforts.

[Docket No. 344 at 2-3 (footnote omitted).] The court issued an Order to Show Cause to Stroud to explain why the court should not sanction Stroud and/or his counsel for violation of court orders to produce Simone works and to meet and confer in good faith. [Docket No. 344.]

On November 23, 2011, Stroud responded to the Order to Show Cause and cryptically argued that certain recordings in his possession -- "whether it is a tape of a Nina Simone home rehearsal that Stroud has never marketed or any other non-commercial recording that Stroud has never copyrighted or claimed an interest"-- did not fall within the scope of the court's August 24, 2010 Order and thus were not produced for inspection and copying, and may have been part of the sale to ICU. [Docket No. 347 at 4.] This tortured wording suggested that Stroud believed he could own or possess a Nina Simone recording, yet somehow not "claim an interest" in it, and therefore need not produce it in discovery.

Upon receipt of Stroud's response to the Order to Show Cause, the court ordered Stroud to submit a letter brief explaining his position and setting forth which recordings he contended the court's August 24, 2010 Order did not cover and he thus had not produced, and to clarify which, if any, of those recordings he had sold to ICU. The court also set a hearing on January 19, 2012 and directed the parties to come prepared to spend the entire day meeting and conferring to create two updated annotated stipulated inventories of disputed recordings, including all versions of titles listed on the parties' September 2, 2010 stipulated Joint List of Disputed Recordings that did not have a specific fixation date. [Docket No. 360.]

On January 13, 2012, Stroud submitted a letter brief in which he clearly asserted for the first time that he interpreted "claimed an interest" as excluding any recording that he "never released for distribution or commercial purposes." [Docket No. 362 at 2.] For example, according to Stroud, he had no obligation to produce Simone recordings that he had "sweetened" with additional instrumental tracks, but never released. Similarly, he took the position that he did not have to produce tapes of song compilations he had made for "marketing purposes" or Simone studio

4

recordings he had never "distributed." Stroud argued that because he had never "claimed an interest" in these recordings -- under his own interpretation of that phrase -- such recordings fell outside the scope of the August 24, 2010 Order. [Docket No. 362 at 2-3.] Stroud further clarified that he had sold to ICU nearly all of the recordings which he had not produced for inspection and copying and that they were no longer in his possession, custody, or control. [Docket 362 at 2-3.]

At the January 19, 2012 hearing, the court heard argument from Stroud's counsel regarding his interpretation of the August 24, 2010 Order. Counsel for Stroud asserted that the phrase "claimed any interest" did not include "ownership"; rather, Stroud and his counsel interpreted "claimed an interest" to mean "claimed an interest *in this litigation*." (Def.'s Opp'n 4 (emphasis added).) Counsel conceded that she had unilaterally imposed this interpretation, had never informed the other parties of her interpretation, and had never sought clarification from the court. The court held that this overly narrow interpretation defied the plain meaning of the August 24, 2010 Order. The court further held that if Stroud's unilateral narrowing of the August 24, 2010 Order had resulted in his failure to produce titles listed on the June 11, 2010 order, he was in violation of that order and subject to sanctions. [Docket No. 386 (Hr'g Tr., Jan. 19, 2012) at 24:9-10.]

The court ordered the parties to meet and confer to determine whether Stroud's interpretation had resulted in his withholding of recordings of titles included in the June 11, 2010 order. If it had, the court directed Brown, Sony, and the Estate to file briefs setting forth the titles of discoverable recordings that Stroud should have but did not produce, along with a request for attorneys' fees as a sanction for Stroud's violation of the August 24, 2010 Order if the party could show that it incurred attorneys' fees due to the violation.

**II. Legal Standards**

Brown, Sony, and the Estate have each moved for sanctions against Stroud pursuant to Federal Rule of Civil Procedure 37, as well as under the court's inherent powers. Rule 37 authorizes the imposition of sanctions for discovery violations, including a party's failure to obey a court order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A). Such sanctions may include ordering a "disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with the order, "unless the failure was

substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707-09 (1982)).

Courts also possess inherent powers arising out of "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991)). In *Chambers*, the Supreme Court reinforced the longstanding principle that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." 501 U.S. at 43 (citations and quotation marks omitted); *accord B.K.B. v. Maui Police Dep't*., 276 F.3d 1091, 1108 (9th Cir. 2002).

Courts possess the inherent power to impose attorneys' fees against counsel for "bad faith litigation or willful disobedience of court rules or orders." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1482 (9th Cir. 1989); *see also In re Lehtinen,* 564 F.3d 1052, 1058 (9th Cir. 2009) (holding that court must make explicit finding of bad faith or willful misconduct before imposing sanctions under its inherent sanctioning authority). The Ninth Circuit has explained that the term "bad faith . . . includes a broad range of willful improper conduct," *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001), and that sanctions may be imposed under a court's inherent powers "if the court specifically finds bad faith or conduct tantamount to bad faith," *id.* at 994. Sanctions thus "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*. Whether termed "'willful misconduct'" or conduct "'tantamount to bad faith,'" such sanctionable conduct is "'something more egregious than mere negligence or recklessness.'" *In re Lehtinen*, 564 F.3d at 1058 (quoting *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003) (citing *Fink*, 239 F.3d at 993-94)).

However, such sanctions should be reserved for "serious breaches." *Zambrano*, 885 F.2d at 1485. And, as noted by the Supreme Court, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

### III.  Analysis

#### A.  Rule 37 Sanctions for Violation of a Court Order

Stroud and his attorney violated the August 24, 2010 Order without substantial justification. The court explicitly ordered Stroud to produce "all responsive documents, masters (or best copies where the master is unavailable), and tangible items indicated in Request for Production 9 in his possession, custody, or control" that pertained to all titles listed on the parties' September 2, 2010 stipulated Joint List of Disputed Recordings with a fixation date, and all versions of titles listed on the stipulated Joint List of Disputed Recordings that did not have a specific fixation date, "in which Stroud and/or Stroud Productions & Enterprises has *claimed any interest at any point in time*." At the January 19, 2012 hearing, Stroud's counsel conceded that Stroud had unilaterally interpreted the phrase "claimed any interest" to mean only those recordings for which he had asserted a copyright or other business or commercial interest. [Docket No. 386 at 10-11]. Thus, Stroud's counsel did not interpret "claimed an interest" as encompassing something as fundamental as the claim of an ownership interest. [Docket No. 386 at 12-13.] Stroud's counsel also conceded that she had never sought clarification of the August 24, 2010 Order, nor articulated her unilateral interpretation to the other parties. [Docket No. 386 at 16-17.]

The plain meaning of the phrase "claimed any interest at any point in time" was not limited in any way to those recordings in which Stroud had asserted a copyright or other commercial interest; nothing indicated that the phrase *excluded* a claim of "ownership." Stroud's interpretation is patently unreasonable and ignores the nature of the claims in this case. Even if Stroud does not assert a copyright or commercial interest in a particular responsive recording in his possession, the other parties clearly may. To give one example, Sony contends that it holds an ownership interest in works created while Ms. Simone was under contract with Sony's predecessor, irrespective of whether Stroud has commercially exploited them. Consequently, recordings withheld by Stroud

7

based on his own narrow interpretation are relevant to this action, responsive to the discovery request, and therefore discoverable.

Stroud's violation of the court's discovery order resulted in the withholding of significant amounts of discovery. Sony submitted a spreadsheet indicating that Stroud should have produced 467 individual recordings of various disputed titles in accordance with the August 24, 2010 Order. (Greer Decl. Ex. G, Feb. 3, 2012.) However, it appears that Stroud produced only approximately 100 of these recordings in March 2011. The court finds that Stroud's failure to comply with the August 24, 2010 Order was not substantially justified and, accordingly, that Rule 37 sanctions for Stroud's failure to comply with the August 24, 2010 Order are appropriate. Stroud and his counsel shall share equal responsibility for payment of the Rule 37 sanctions.

## B. Sanctions Pursuant to the Court's Inherent Authority

Whether the court should issue sanctions through its inherent authority is a more difficult question, as such sanctions must rest upon a finding of bad faith or willful misconduct.[1] Stroud's counsel argues that her interpretation of the order may have been incorrect, but was not willful. She also notes that it has been difficult to communicate with her client due to his indisputably significant health problems. The record, however, supports the issuance of sanctions. As set forth above, Stroud applied an unjustified interpretation of a court order that defied its plain meaning, without first seeking clarification or even discussing the matter with opposing counsel. This interpretation resulted in Stroud's withholding of the vast majority of responsive recordings. By not revealing that he had applied his own strained reading of the court's order, Stroud effectively hid the existence of a large cache of responsive recordings for well over a year.

Furthermore, Stroud's interpretation of the order does not align with positions he took earlier in the case, or with other conduct. For example, in February 2011, Stroud's counsel confirmed by email that Stroud understood he "must produce all versions of the title to which Stroud has claimed an interest at any time which are within our custody and control." (Brown Decl. Ex. 1, Feb. 3, 2012.)

---

[1] The court reaches this question because, as discussed below, Brown is not entitled to attorneys' fees as a Rule 37 sanction because he is a *pro se* litigant who did not "incur" such fees. However, Brown would be entitled to an attorneys' fee award if the court sanctioned Stroud under its inherent authority. *See Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1377 (Fed. Cir. 2002).

8

This unequivocal statement makes no exception for recordings not commercially exploited by Stroud. Moreover, Stroud clearly has attempted to commercially exploit all of the recordings, making them discoverable even under his own interpretation of the order. In 2005, Stroud obtained an appraisal of his collection of Ms. Simone's recordings by Mr. Roker, who valued the collection at $155,625,000. [Docket No. 209 at 21.] Stroud later secretly sold the collection to ICU (a company owned by Mr. Roker) on October 6, 2011, in return for a percentage of all sums received from rights to the works for a period of twenty years, as well as a one-time payment of $100,000. (Brown Decl. Ex. 8, May 10, 2012.) This agreement specifically included the works at issue in this litigation, contingent upon a finding that Stroud owns them. This surely amounts to commercial exploitation of the recordings, even under Stroud's strained interpretation of the order.

The secret nature of this sale, as well as its timing, is highly suspicious, especially when coupled with the fact that Stroud later offered to rescind that sale in exchange for the parties' withdrawal of their sanctions motions. Adding to the questionable nature of the sale is the fact that Stroud had already rescinded the sale agreement on February 1, 2012, one week *before* he made the rescission offer to the parties on February 8, 2012. He did not disclose the rescission until later. (Weber Decl. Exs. A-B, Feb. 23, 2012.)

It is appropriate to distinguish Stroud's culpability from that of his counsel's. Counsel represents that she did not know about Stroud's sale to ICU until after it had happened. Therefore, on this record, it is not clear that counsel acted with the requisite willfulness when she violated the court's order. Because the court must act with restraint in exercising its inherent authority, and because such sanctions cannot issue upon mere negligence or recklessness, the court declines to sanction Stroud's counsel for bad faith or willful misconduct. However, it is clear that Stroud engaged in the secret sale to ICU, as well as the questionable offer to rescind it in exchange for the parties' forbearance from seeking sanctions. When viewed in the full context of this case, Stroud's violation of the August 24, 2010 order amounts to conduct designed to obfuscate, delay, and avoid responding to valid discovery requests. Thus, the court finds that Stroud engaged in bad faith or willful misconduct justifying the issuance of sanctions against him under its inherent authority.

The court now turns to the issue of fashioning an appropriate sanction. Sony, Brown, and the Estate have all requested sanctions in the form of attorneys' fees that they would not have incurred but for Stroud's violation of the August 24, 2010 Order.

### A. Brown's Request for Attorneys' Fees

Brown's request raises the threshold question of whether he is entitled to an award of Rule 37 sanctions because, although he is an attorney, he is also a plaintiff and is proceeding *pro se*. In *Pickholtz v. Rainbow Technologies, Inc.*, the Federal Circuit held that a *pro se* attorney litigant may not collect attorneys fees under the plain language of Rule 37, which states that "the court shall . . . require the party or deponent whose conduct necessitated the motion of the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney fees," Fed. R. Civ. P. 37(a)(5)(A), because the litigant has not "incurred" them. 284 F.3d 1365, 1375 (Fed. Cir. 2002). The court noted that Black's Law Dictionary defines the term to mean "[t]o have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively[; t]o become liable or subject to." *Id.* (brackets in original) (quotation marks omitted). The Webster's Dictionary provides the meaning as "to become liable or subject to; to bring down upon oneself." *Id.* (quotation marks omitted). Thus, the court concluded that "one cannot 'incur' fees payable to oneself, fees that one is not obliged to pay." *Id.* (citation omitted). In addition, *Pickholtz* found that the word "'attorney' connotes an agency relationship between two parties (client and attorney), such that fees a lawyer might charge himself are not 'attorney fees.'" *Id.* (citing *Massengale v. Ray*, 267 F.3d 1298, 1303 (11th Cir. 2001)). Finally, the court noted that attorneys' fees are not a payable "expense" because "there is no direct financial cost or charge associated with the expenditure of one's own time." *Id.* (citation omitted). The court distinguished other cases in which courts granted fees to a *pro se* attorney litigant, noting that the fee-shifting provisions at issue in those cases rested on purposes different from those that animate Rule 37. *Id.* at 1375-76.

Unlike *Pickholtz*, this case involves a different provision of Rule 37. Rule 37(b)(2)(C) authorizes the court to issue fee sanctions in response to the violation of a court order: "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified." Fed. R. Civ. P. 37(b)(2)(C). Unlike the Rule 37 provision examined by the *Pickholtz* court, the provision governing sanctions for violation of a court order does not include the verb "incurred." The court in *Tadayon v. Greyhound Lines, Inc*, No. 10-1326, 2012 WL 2048257 (D.D.C. June 6, 2012), examined the textual differences between Rule 37(b)(2)(C) and Rule 37(a)(5)(A). It concluded that even though Rule 37(b)(2)(C) does not include the word "incurred," "it would be incongruous and irrational" to interpret the rule such that a *pro se* litigant could recover fees for the opponent's violation of court order, but not if the opponent took an unjustified position in a discovery motion. *Id.* at *4; *see also Fosselman v. Gibbs*, No. 06-375 PJH (NJV), 2010 WL 1446661 (N.D. Cal. Apr. 7, 2010) (holding that *pro se* litigant not entitled to recover fees under Rule 37(b), but may recover actual costs incurred as a result of opponent's violation of discovery order). The reasoning in *Tadayon* is persuasive. Therefore, Brown may not recover attorneys' fees under Rule 37(b)(2)(C).

A *pro se* litigant is, however, entitled to recover sanctions issued pursuant to the court's inherent authority. *Pickholtz*, 284 F.2d at 1377 (holding that failure to allow recovery of sanctions "would place a *pro se* litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct"); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1011 (D. Az. 2011) (holding fees to *pro se* litigants awardable under court's inherent power.) Therefore, Brown is entitled to a reasonable attorneys' fee award for work caused by Stroud's violation of the court's August 24, 2010 Order.

A review of Brown's fee records reveals that Brown has cast his net too wide. To begin with, it appears that Brown created the fee record for purposes of this motion, which resulted in numerous vague and self-serving entries. For example, nearly every time entry describes time spent on "withheld recordings" or "withheld production." (Brown Decl. Ex. 6.) The entries are so general that the court cannot readily discern whether the work was actually caused by Stroud's violation.

11

Other work appears to relate to the ICU sale, which the court finds insufficiently linked to the violation of the court order, and for which fees therefore shall not be awarded.[2]

The court finds that time spent meeting and conferring about, and otherwise working on the inventory of works is largely compensable. While Stroud's violation of the court order was not the sole factor leading the court to order the creation of the inventories, the violation likely played a large role in making the inventories necessary. The court shall compensate 75% of the time spent on those endeavors through the January 19, 2012 hearing. The subsequent time spent on the inventory, leading up to the briefing in this motion, shall be 100% compensable, as the court ordered that the parties work on the inventory expressly to identify which recordings, if any, Stroud had withheld due to his violation of the court's order. Time spent on papers leading to the January 19, 2012 hearing, as well as this motion for sanctions, is fully compensable.

Using these guidelines, the court finds that Brown is entitled to recover for 12.55 hours of work. He seeks a $500 hourly rate, citing his work as an expert and as a transactional attorney in the music industry for over thirty years. However, Brown seeks compensation in this motion for work performed as a litigator. This court has had significant opportunity to review Brown's written and oral legal work in this case. A reasonable rate for Brown's litigation work is $375 per hour, for a total of $4706.25. Brown did not submit a cost request in this motion. Brown may seek attorneys' fees for sanctions issued only under the court's inherent authority, and the court found that Stroud alone is culpable on that basis. Therefore, Stroud is responsible for $4706.25 in sanctions payable to Brown.

**B. Sony's Request for Attorneys' Fees and Costs**

The court applies the same scope of compensable fees to Sony as it set forth above for Brown. In addition, the court finds compensable the time spent by Sony in drafting follow-up discovery after it learned of Stroud's unilateral interpretation of the court's order. The court also awards the time

---

[2] Stroud's secret sale of Ms. Simone's recordings to ICU lent context to the court's finding that Stroud engaged in willful misconduct, and the court considered the sale for that purpose. However, the court confines its attorneys' fee award to time expenditures caused by Stroud's violation of the court order. The time spent responding to the sale goes beyond those confines.

spent by Sony counsel in January 2012 inspecting late produced tapes at Fantasy Records. Thus, Sony is entitled to recover 35.425 hours of work at the request rate of $440 and $460 for Ms. Greer, and two hours of work at $335 per hour for Ms. McConnell, for a total of $35,761.00 Sony also requests $432.30 in costs. The court awards $228.23 in costs, limited to those that Sony clearly demonstrated were caused by Stroud's violation of the court order. Stroud and his counsel are equally responsible for paying these sanctions to Sony.

### C. The Estate's Request for Attorneys' Fees and Costs

The vast majority of the Estate's fee request is related to Stroud's sale of Simone recordings to ICU. As previously stated, such work is too tangentially related to Stroud's violation of the August 24, 2010 Order. The court cannot determine how much of the time spent on November 29, 2011 is compensable based on the Estate's time records and, therefore, awards half of the requested sum (2 hours at $375 per hour). The court also awards the three hours spent on November 30, 2011 at $440 per hour, for a total of $2070.00 The costs requested by the Estate are insufficiently tied to Stroud's violation of the court order. Stroud and his counsel are equally responsible for paying these sanctions to the Estate.

## IV. CONCLUSION

The court awards $4706.25 to Brown, assessed solely against Stroud. Stroud and his counsel shall each pay half of the sanctions awarded to Sony ($35,989.23) and to the Estate ($2070.00).

IT IS SO ORDERED.

Dated: July 6, 2012



DONNA M. RYU
United States Magistrate Judge

13