1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9           NORTHERN DISTRICT OF CALIFORNIA
10             SAN FRANCISCO DIVISION
11

| | |
|---|---|
| STEVEN AMES BROWN, | No. 08-cv-02348 JSW (NC) |
| Plaintiff, | **REPORT AND RECOMMENDATION ON MOTIONS FOR DEFAULT JUDGMENT** |
| v. | |
| ANDREW B. STROUD, an individual, and dba STROUD PRODUCTIONS AND ENTERPRISES, INC., | Re: Dkt. Nos. 522, 529, 530 |
| Defendants | |
| AND COUNTER AND REPLY CLAIMS | |

        This action is one of four cases pending before the Court involving disputes

regarding the ownership rights to recordings by the late jazz singer Nina Simone.  This

case was brought by Steven Ames Brown, who was Nina Simone's counsel, claiming an

ownership interest in some of her recordings, against Nina Simone's former husband and

manager, Andrew B. Stroud and Stroud Productions and Enterprises, Inc. ("SPE").  The

Simone Estate and Sony Music Entertainment ("Sony Music") were brought into the case

by way of counterclaims.  After the District Court sanctioned the Stroud parties by entering

default against them, Brown, the Simone Estate, and Sony Music filed motions for default

judgment that were referred for report and recommendation to the undersigned Magistrate

Judge.  The undersigned RECOMMENDS to the District Court to GRANT IN PART AND

Case No. 08-cv-02348 JSW (NC)
REPORT AND RECOMMENDATION ON
MOTIONS FOR DEFAULT JUDGMENT

1   DENY IN PART the motions for default judgment.

2                               **I. BACKGROUND**

3   **A.    The Parties and the Facts Alleged in the Underlying Dispute**

4          **1.    Brown's Amended Complaint**

5          In the operative complaint, Brown alleges that he was an attorney for Eunice K.

6   Stroud, who was professionally known as Nina Simone, in two prior actions before this

7   Court: *Simone v. San Juan Music Group*, No. 94-cv-1288 TEH and *Simone v. Sehorn*, No.

8   95-cv-3590 CAL (together the "prior actions").  Dkt. No. 35 at 2.[1]  The prior actions

9   resulted in final judgments and permanent injunctions against various defendants

10  pertaining to approximately 104 sound recordings authored by Simone (collectively the

11  "masters").  *Id.*  Brown alleges that, pursuant to those final judgments and permanent

12  injunctions, along with a series of written conveyances, Nina Simone acquired all rights to

13  the masters that she did not already own.  *Id.*  Brown further alleges that he obtained a 40%

14  ownership interest in the masters pursuant to a written contract with Nina Simone made on

15  July 30, 1990.  *Id.*  The various defendants in the prior actions claimed an interest in 52 of

16  the masters (the "disputed masters") based on chains of title that purportedly began with

17  Andrew B. Stroud and/or SPE.[2]  *Id.*  At the time the injunctions were entered, the various

18  defendants were selling copies of the disputed masters under agreements with Andrew B.

19  Stroud and/or SPE that entitled Andrew B. Stroud and/or SPE to a portion of the revenue.

20  *Id.*  Brown alleges that Andrew B. Stroud and SPE had notice no later than 2000 of the

21  permanent injunctions entered in the prior actions and the applicability of the injunctions to

22  them as persons conspiring  with defendants.  *Id.*

23         Brown alleges that the song "Just in Time," which was first fixed prior to February

24  15, 1972, was one of the disputed masters.  *Id.* at 3, 5.  In February 2004, Brown and the

25

26  _____
    [1] Unless otherwise indicated, all references to docket numbers in this order are to the docket in this
27  case (*Brown v. Stroud*).
    [2] According to the complaint, SPE was dissolved in 1981, and since that time, Andrew B. Stroud
28  has been doing business under the fictitious name SPE.  *Id.*

    Case No. 08-cv-02348 JSW (NC)                        2
    REPORT AND RECOMMENDATION ON
    MOTIONS FOR DEFAULT JUDGMENT

Simone Estate licensed "Just in Time" for use in the soundtrack of the motion picture "Before Sunset." *Id.* at 3. The closing credits of "Before Sunset" listed Brown and the Simone Estate as the licensors of "Just in Time." *Id.* On June 16, 2004, counsel for Andrew B. Stroud and SPE sent a letter to Castle Rock Entertainment, Inc., Warner Bros. Entertainment, Inc. and Warner Independent Pictures, Inc. claiming that Andrew B. Stroud and SPE owned "Just in Time" and that the inclusion of the recording in "Before Sunset" without permission from Andrew B. Stroud and SPE was wrongful. *Id.* Brown alleges that this "slander of title" damaged him by preventing him from licensing or selling the recording to others. *Id.*

The operative complaint asserts two claims for relief: (1) for declaratory judgment, seeking a declaration that "[Andrew B. Stroud and SPE] have no right, title, nor interest in any of the Disputed Masters and that they are bound by the final judgments and permanent injunctions entered in the Prior Actions"; and (2) for compensatory and exemplary damages for common law copyright infringement resulting from Andrew B. Stroud and SPE's sale to the public of digital copies of "Just in Time" without Brown's consent. *Id.* at 4-5.

## 2. Brown's Reply Counterclaims and Third-Party Claim

After Andrew B. Stroud and SPE counterclaimed against Brown and the Simone Estate, Brown filed reply counterclaims against Andrew B. Stroud and SPE for declaratory judgment, violation of California Business & Professions Code § 17200 *et seq.*, and relief under the All Writs Act, 28 U.S.C. § 1651. Dkt. Nos. 72, 82. The reply counterclaims allege that, at all times during her marriage with Andrew B. Stroud, Nina Simone was under exclusive recording artist contracts with such companies as Record Corporation of America ("RCA"). Dkt. No. 82 at 8. Sony Music is the successor in interest to RCA's rights under Nina Simone's contracts. *Id.* By contract effective May 1, 1968, SPE agreed to assist in the production of Nina Simone recordings ("Stroud Producer Contract.") *Id.* Brown alleges that, pursuant to the Stroud Producer Contract, all contributions by Andrew B. Stroud or SPE to any Nina Simone recordings became RCA's property, free of any

claims by Andrew B. Stroud or SPE. *Id.* The contract also provided that all rights to each such Nina Simone recording became RCA's property, free of any claims by Andrew B. Stroud, SPE or anyone deriving any rights from them. *Id.* During their marriage, Andrew B. Stroud acted as Nina Simone's manager and was responsible for advising her on her compliance with her obligations to RCA and other companies, as well as giving her guidance on her career and professional choices. *Id.* On September 21, 1972, Andrew B. Stroud and Nina Simone executed a property settlement agreement ("Stroud Property Settlement"). *Id.* Brown alleges that the only rights Andrew Stroud or SPE ever had in any Nina Simone recordings, if any, were derived from the Stroud Property Settlement. *Id.*

The Stroud Property Settlement purported to dispose of rights to two groupings of Nina Simone sound recordings. *Id.* at 8-9. The first grouping of Nina Simone recordings in the Stroud Property Settlement was contained in Schedule A. *Id.* at 9. Brown alleges that each of those recordings was produced during the terms of Nina Simone's exclusive recording contract with RCA records and the Stroud Producer Contract. *Id.* Knowing that the Schedule A recordings belonged to RCA, Andrew B. Stroud allegedly convinced Nina Simone to agree in the Stroud Property Settlement to pay him $2,300.00 for her to retain all rights in those recordings. *Id.* Brown alleges that, despite having collected the $2,300.00, Andrew Stroud claims he owns the rights in those recordings, under the pretext of Nina Simone not having paid the funds due him under the Stroud Property Settlement. *Id.*

The second grouping of Nina Simone recordings in the Stroud Property Settlement Agreement was contained in Schedule B. *Id.* The Stroud Property Settlement purported to transfer those recordings to SPE. *Id.* Most, if not all, of those recordings were produced during the terms of Nina Simone's exclusive recording contract with RCA records and the Stroud Producer Contract. *Id.* The Stroud Property Settlement provided that Andrew B. Stroud's "exclusive ownership of all artistic and other intangible rights" was contingent upon his use thereof not violating the exclusivity provisions of Nina Simone's artist agreement with RCA. *Id.* Brown alleges that any use by Andrew B. Stroud or SPE would violate those exclusivity provisions. *Id.* Brown further alleges that, to the extent Andrew

B. Stroud or SPE ever acquired any interest in any Schedule B recordings they sold them in 1977 to Noodle Records Corporation. *Id.* Noodle transferred them to companies controlled by Marshall Sehorn, who in turn licensed them to various entities. *Id.* Pursuant to the written conveyances executed by the various defendants to Nina Simone and the five final judgments and permanent injunctions in the prior actions, Nina Simone acquired all rights to the subject masters that she did not already own, including the Schedule B recordings transferred by Andrew B. Stroud and SPE to Noodle. *Id.* at 9-10.

Brown alleges that Andrew B. Stroud and SPE have possession, custody or control of various Nina Simone recordings first fixed prior to February 15, 1972, and certain unpublished audiovisual performances that are not the subject of any audiovisual copyright registrations. *Id.* at 10. Brown further alleges that, although Andrew B. Stroud and SPE have no rights of reproduction in any of those works, they have licensed some of them and "more recently" have offered to license those works to at least Bethlehem Records, Sony Music and Charly Records. *Id.* The reply counterclaims state that SPE's and Andrew B. Stroud's threatened licensing of Nina Simone recordings in which they have no rights of reproduction is an inherently unfair business practice, proscribed by California Business & Professions Code § 17200 *et seq.*, and California Civil Code § 980 and unless and until restrained, Andrew B. Stroud and SPE will continue to attempt to exploit such recordings which would injure Brown by diverting sales from lawfully manufactured copies of Nina Simone recordings for which he is entitled to a share of the revenue. *Id.* at 12. Brown alleges further that the only remedy which would bring an end to SPE's and Andrew B. Stroud's attempts to wrongly exploit Nina Simone recordings is injunctive relief. *Id.*

The reply counterclaims further assert that no other copies exist for the pre-February 15, 1972, Nina Simone sound recordings and unpublished audiovisual works that are in SPE's or Andrew B. Stroud's exclusive possession, custody or control. *Id.* Brown alleges that he owns legally or equitably the rights of reproduction for those works, and that without access to the fixations of those works neither Brown nor Sony Music will be able to exercise their rights under California Civil Code § 980 or otherwise to manufacture and

sell copies to the public. *Id.* at 12.  Those works are all fixed in deteriorating analog media and unless they are digitally copied the performances could become forever lost. *Id.* Brown seeks a judicial order under the All Writs Act, 28 U.S.C. § 1651, the law of implied easements and the Court's general equitable jurisdiction, requiring Andrew B. Stroud and SPE to make all such works available for digital copying and/or non-destructive restoration by Brown and Sony Music. *Id.*  Additionally, Brown asserts that the Court has jurisdiction to enforce the portions of the injunctions entered in the prior actions that require the enjoined parties (including Andrew B. Stroud and SPE) to deliver up to the Simone Estate each and every recording, and all physical elements thereof. *Id.* at 12-13.

Brown also asserted a reply counterclaim against Andrew B. Stroud and a third-party claim against Sony Music seeking judicial declaration (1) that Brown is the legal or beneficial owner of the disputed Nina Simone recordings and audiovisual works; (2) determining Sony Music's interests in the disputed Nina Simone recordings and audiovisual works; and (3) that Andrew B. Stroud and SPE have no rights of reproduction in any Nina Simone recordings or audiovisual works.  Dkt. No. 82 at 11, 13.

### 3.    The Simone Estate's Counterclaims

The Simone Estate, "by its duly appointed administrator Lisa Simone Kelly" ("Kelly") filed its operative amended counterclaims against Andrew B. Stroud and SPE. Dkt. No. 263.  The counterclaims seek a declaration of the Simone Estate's rights and the return of Nina Simone's diaries, letters, photographs, recordings, videotapes, or other depictions of Nina Simone, the property identified on Schedules A and B of the Stroud Property Settlement, and all other recorded Nina Simone performances that are in the possession, custody, or control of Andrew B. Stroud and SPE, or in which Andrew B. Stroud and SPE claim an ownership interest (the "Simone Materials"). *Id.* at 11, 13-14. Simone Estate alleges that the rights in the Simone Materials belonged solely and exclusively to Nina Simone, and, subsequent to her death, to the Simone Estate. *Id.* at 12. The Simone Estate further alleges that the only rights Andrew B. Stroud or SPE ever had in any Nina Simone recordings, if any, were derived from the Stroud Property Settlement, and

that Andrew B. Stroud and SPE have given up any such rights for the same reasons alleged in Brown's operative reply counterclaims. *Id.* at 9-11.

The administrator of the Simone Estate, Kelly, is the only child of Nina Simone and Andrew B. Stroud. *Id.* at 3. The counterclaims allege that, at all times during their marriage and at various times thereafter, Andrew B. Stroud acted as Nina Simone's manager, agent, and producer, and as a result of these relationships, had a fiduciary obligation to Nina Simone. *Id.* at 3, 5. The counterclaims further allege that the fiduciary relationship between Andrew B. Stroud and Nina Simone existed at the time they entered into the Stroud Property Settlement, which settled between them the "universe" of Nina Simone recordings. *Id.* at 5-6.

Kelly alleges that she trusted her father to help her personally and he also advised her in business matters involving the Simone Estate and the Nina Simone legacy, giving rise to a fiduciary relationship between Andrew B. Stroud and Kelly. *Id.* at 4-5. In August 2008, while a fiduciary relationship existed between Kelly and Andrew B. Stroud, he made fraudulent representations that he had two Nina Simone diaries in his possession. *Id.* at 6. At that time, Kelly on behalf of the Simone Estate, purchased for the amount of $50,000 what she believed and was told by Andrew B. Stroud was all of her mother's property. *Id.* at 6, 15.

On July 1, 2010, Kelly learned from an article that her father had fraudulently concealed from Nina Simone during her lifetime, and then had fraudulently and improperly concealed from Kelly, the fact that he had additional Nina Simone property. *Id.* at 6. The article identified that Andrew B. Stroud had in his possession at least one more of Nina Simone's intimate, personal, unpublished diaries, but also other personal property, such as CD's and DVD's he had packaged from "leftover recordings." *Id.* The Simone Estate alleges that these materials rightfully belonged to Nina Simone during her lifetime and should have passed to the Simone Estate subsequent to her death. *Id.* at 7. The Simone Estate further alleges that it was not until the publication of the article that the Simone Estate could have known (or have had reason to know or investigate) that there was a

"cache" of material Andrew B. Stroud had never previously disclosed. *Id.* at 6-7. The article specifically references Andrew B. Stroud's concealment in referring to "never before given access to his 'cache' of Simone's writings." *Id.* at 7.

The Simone Estate asserts four claims for relief:  (1) for declaratory judgment, seeking (a) a judicial declaration that the Estate is and always has been the rightful owner of the copyrights and other intellectual property rights to the Simone Materials, and that Andrew B. Stroud and SPE have no rights to the copyrights to the Simone Materials; (b) an injunction prohibiting Andrew B. Stroud and SPE from attempting to license, reproduce, manufacture, print, distribute, sell, market, promote, advertise and/or otherwise exploit the Simone materials; (c) a judicial order, under the All Writs Act, 28 U.S.C. § 1651, the law of implied easements and in the exercise of the Court's general equitable jurisdiction, requiring Andrew B. Stroud and SPE to identify and make all Simone Materials available for digital copying and/or non-destructive restoration by the Estate; and (d) enforcement of the portions of the injunctions entered in the prior actions that require the enjoined parties to deliver up to the Estate each and every recording, and all physical elements thereof;  (2) for conversion as a result of Andrew B. Stroud's and SPE's unlawful exercise of dominion and control over Simone Materials that are the Estate's property; (3) for replevin, seeking judgment of possession and restitution as to Simone Materials wrongfully detained by Andrew B. Stroud and SPE; (4) and for an order that Andrew B. Stroud and SPE account for all profits, gains and advantages derived from their acts of conversion, infringement and for its other violations of law as well as a full accounting of any and all assets ostensibly owned by them or in their possession, custody or control, including any transactions, acquisitions or transfers by them to Nina Simone. *Id.* at 12-23.

**B.    Procedural History**

**1.    The *Stroud v. Castle Rock* Action**

On October 5, 2007, Andrew B. Stroud and SPE commenced an action against defendants Castle Rock Entertainment, Inc., Warner Bros. Entertainment Inc., and Warner Independent Pictures, Inc. in the Southern District of New York, No. 07-cv-08638 ("*Stroud*

*v. Castle Rock*"). Dkt. No. 105 at 2, 4-12, No. 09-cv-03796 JSW. In that action, Andrew B. Stroud and SPE claim that they own the song recording, including the copyright therein, embodying the performance by Nina Simone of the composition titled "Just in Time." The complaint alleges that the copyright filed for by Andrew B. Stroud and SPE in connection with "Just in Time" is titled "Nina Simone Sings Billie Holiday" and was filed with the U.S. Copyright Office on or about January 22, 1973. *Id.* at 7. The complaint further alleges that Andrew B. Stroud was Nina Simone's producer at the time Nina Simone gave the subject performance of the song, "Just in Time," and that a recording of the performance was maintained by Andrew B. Stroud. *Id.* at 7-8. Andrew B. Stroud and SPE allege that several years before filing this action, they licensed "Just in Time" for a limited period, but that those licenses have expired and all rights are held by plaintiffs. *Id.* at 8.

Andrew B. Stroud and SPE claim that Castle Rock Entertainment, Inc., Warner Bros. Entertainment Inc., and Warner Independent Pictures, Inc. used "Just in Time" in the motion picture titled "Before Sunset" and the accompanying soundtrack without entering into any license agreement for the subject sound recording with Andrew B. Stroud and SPE and continue to commercially exploit the film. *Id.* at 8-9. The complaint asserts two causes of action: "for infringement of copyright arising under the copyright laws of the United States, Title 17 of the United States Code and for unfair competition under § 43 (a) of the Lanham Act (15 U.S.C. § 1125(a))." *Id.* at 6.

### 2.     The *Brown v. Stroud* Action

On May 7, 2008, plaintiff Steven Ames Brown brought this action against Andrew B. Stroud, an individual, and SPE. Dkt. No. 1. The proofs of service filed by Brown show that Andrew B. Stroud and SPE were served with process on May 9, 2008. Dkt. Nos. 18, 19. On June 5, 2008, Andrew B. Stroud and SPE filed an answer and a motion to dismiss based on lack of personal jurisdiction, which the Court granted with leave to amend. Dkt. Nos. 5, 32. On October 9, 2008, Brown filed his amended (and operative) complaint against Stroud and SPE. Dkt. No. 35. Andrew B. Stroud and SPE moved to dismiss the amended complaint for lack of personal jurisdiction and the Court denied the motion,

1  finding that the amended complaint alleged sufficient facts to establish a prima facie

2  showing of specific jurisdiction.  Dkt. Nos. 36, 48.

3       On February 9, 2009, Andrew B. Stroud and SPE filed a counterclaim against

4  Brown.  Dkt. No. 51.  On July 22, 2009, Andrew B. Stroud and SPE filed the first of

5  several amended counterclaims against Brown, also naming the Simone Estate.  Dkt. No.

6  72.  On October 1, 2009, Brown filed his operative reply counterclaims against Andrew B.

7  Stroud and SPE and a third-party claim for declaratory relief against Sony Music.  Dkt. No.

8  82.  On July 12, 2010, the Simone Estate filed counterclaims against Andrew B. Stroud and

9  SPE.  Dkt. No. 174.  The Estate filed its operative, amended counterclaims against Andrew

10  B. Stroud and SPE on February 18, 2011.  Dkt. No. 263.  On July 22, 2011, Andrew B.

11  Stroud and Andy Stroud, Inc. ("ASI") filed the operative Fourth Amended Counterclaims

12  against Brown and the Simone Estate.  Dkt. No. 297.

13       In their Fourth Amended Counterclaims, Andrew B. Stroud and ASI allege that

14  Andrew B. Stroud was married to Nina Simone from 1961 to 1973 and also acted as her

15  business manager.  Dkt. No. 297 at 2.  The counterclaims allege that Andrew B. Stroud and

16  Nina Simone executed a marital separation agreement in 1972 which settles their

17  respective property rights, including the rights to Nina Simone's recordings.  *Id.* at 2-3.

18  Based on the separation agreement, Andrew B. Stroud and ASI counterclaim against

19  Brown and the Estate of Nina Simone for (1) declaratory judgment that Andrew B. Stroud

20  and ASI are the exclusive owners of the disputed recordings; (2) copyright infringement;

21  (3) vicarious copyright infringement; (4) contributory copyright infringement; (5) violation

22  of the Digital Millennium Copyright Act; and (6) copyright infringement under California

23  law.  *Id.* at 6-14.

24       For the first time in the fifth iteration of their counterclaims, Andrew B. Stroud and

25  ASI allege that in 1981, when SPE dissolved, all its rights and ownership interests reverted

26  to ASI.  Dkt. No. 337 at 2.  On these facts, Brown and the Simone Estate moved to dismiss

27  the entirety of the counterclaims as against Andrew B. Stroud and SPE on the basis that

28  Andrew B. Stroud and SPE have no ownership interest in the disputed copyrights.  *Id.* at 4.

The Court granted Brown and the Simone Estate's motion on this ground, and held that, in light of the duration and scope of the litigation between the parties regarding the ownership rights over the disputed recordings and the number of times the counterclaims were amended and switched as to who is asserting ownership rights, dismissal with prejudice was warranted. *Id.* at 5.

The Court further dismissed all counterclaims brought in the name of ASI, holding that it was not properly joined as a party. *Id.* at 6. The Court noted that, on September 26, 2008, before Andrew B. Stroud and SPE filed their first counterclaim in this action, ASI and Andrew B. Stroud sued Brown and the Simone Estate in the United States District Court for the Southern District of New York, claiming that ASI and Stroud owned the disputed recordings. *Id.* at 3 (citing *Andy Stroud, Inc. v. Brown*, No. 08-cv-08246, 2009 WL 539863, *1, 2, 10 (S.D.N.Y. March 4, 2009)).[3] The Court concluded that, in light of Andrew B. Stroud's knowledge of his own companies, and the fact that he and his attorneys actually filed a lawsuit three years ago by ASI regarding the same disputed recordings, the failure to name ASI sooner in this action was not an "understandable mistake." *Id.* at 6. The Court held that, if SPE and Andrew B. Stroud seek to add ASI as a party, they must file a properly noticed motion setting forth extremely good cause to add ASI and to further amend their pleadings for a sixth time. *Id.* No such motion was filed.

### 3. The Transfer and Stay of *Stroud v. Castle Rock*

On July 2, 2009, Andrew B. Stroud and SPE moved to transfer venue of the *Stroud v. Castle Rock* action to the Northern District of California under 28 U.S.C. § 1404(a). Dkt. No. 20, No. 07-cv-08638. On August 4, 2009, the District Court for the Southern District of New York granted the motion, concluding that the outcome in the *Brown v. Stroud* action will be dispositive of the claims at issue in this case because the "Just in Time" sound recording is but one of numerous sound recordings whose copyright ownership is at

---

[3] The Southern District of New York granted Brown's motion to dismiss that case without prejudice under the prior pending action doctrine, to allow the salient issues to be resolved in the *Brown v. Stroud* action. *Andy Stroud*, 2009 WL 539863, *1.

issue in the *Brown v. Stroud* action.  Dkt. No. 105 at 2, 36-40, No. 09-cv-03796 JSW; Dkt.

No. 33 at 2-3, No. 07-cv-08638 (S.D.N.Y).  After the transfer, on November 13, 2009, this

Court related *Stroud v. Castle Rock* to *Brown v. Stroud*, No. 08-cv-02348.  Dkt. No. 91.

On December 7, 2009, counsel for Andrew B. Stroud and SPE moved to withdraw.

Dkt. No. 25, No. 09-cv-03796 JSW.  On March 25, 2010, the Court granted the motion to

withdraw on the condition that former counsel will continue to receive filings on behalf of

Andrew B. Stroud and SPE until they obtain a new lawyer.  Dkt. No. 46, No. 09-cv-03796

JSW.  On March 26, 2010, the Court ordered Andrew B. Stroud to show cause why this

action should not be stayed pending the outcome of *Brown v. Stroud*.  Dkt. No. 45, No. 09-

cv-03796 JSW.  On May 19, 2010, the Court issued an order staying the action upon

consent of the parties.  Dkt. No. 50, No. 09-cv-03796 JSW.

On March 18, 2011, Methven & Associates appeared as counsel for Andrew B.

Stroud and SPE.  Dkt. No. 53, No. 09-cv-03796 JSW.

### 4.    The Discovery Sanctions

On August 24, 2010, the Court issued a ruling on certain discovery disputes between

the parties in *Brown v. Stroud*, defining the scope of discovery in this case and ordering

Andrew B. Stroud to produce materials consistent with the defined scope of the relevant

song titles and recordings.  Dkt. Nos. 204, 445 at 2.  In March 2011, Andrew B. Stroud

produced some of the responsive recordings and counsel for the parties subsequently met

and conferred regarding Andrew B. Stroud's refusal to produce other recordings.  Dkt. No.

445 at 2.  On September 22, 2011, the Court held a hearing regarding another discovery

dispute, and on October 6, 2011, counsel for the parties met and conferred further at the

courthouse.  *Id.* at 3.

It later came to light that on October 1, 2011, unbeknownst to the other parties in this

lawsuit, ASI entered into a contract to sell the Nina Simone works in the possession of

Andrew B. Stroud and SPE to third party ICU Ent. Dist.  *Id.*  Following the ICU sale,

counsel for Andrew B. Stroud and SPE took the position that her client could not produce

additional responsive recordings because they were no longer in their ownership,

1   possession, or control as a result of the sale.  *Id.*  In an order issued July 6, 2012, by

2   Magistrate Judge Donna M. Ryu, the Court found that Andrew B. Stroud's and SPE's

3   violation of the August 24, 2010, discovery order resulted in the withholding of significant

4   amounts of discovery, and that Rule 37 sanctions for failure to comply with the discovery

5   order were therefore appropriate.  *Id.* at 8.  Additionally, the Court found that Andrew B.

6   Stroud and SPE engaged in bad faith or willful misconduct justifying the issuance of

7   sanctions against them under the Court's inherent authority.  *Id.* at 9.  The Court held that

8   (1) Andrew B. Stroud and SPE are responsible for $4,706.25 in sanctions, imposed under

9   the Court's inherent authority, payable to Brown; (2) Andrew B. Stroud and SPE and their

10   counsel are equally responsible for paying sanctions to Sony Music in the amount of

11   $35,989.23; and (3) Andrew B. Stroud and SPE and their counsel are equally responsible

12   for paying sanctions to the Simone Estate in the amount of $2,070.00.  *Id.* at 10-13.  The

13   Court subsequently amended that order to clarify the calculation of the amount owed to

14   Sony Music, but the total amount due to Sony Music did not change.  Dkt. No. 448.

15        **5.**    **The *Kelly v. Roker* Action**

16       On December 2, 2011, Kelly, as the duly appointed administrator of the of Simone

17   Estate, commenced a separate action in this Court against Andrew B. Stroud, Andy Stroud,

18   Inc. ("ASI"), Wally Roker, and two businesses allegedly owned and controlled by Roker,

19   ICU Ent. Dist. and Wally Roker Music.  Dkt. No. 1, No. 11-cv-05822 JSW ("*Kelly v.*

20   *Roker*").  The complaint alleges that, on October 17, 2011, Kelly was informed by Andrew

21   B. Stroud's counsel, Methven & Associates, that all of Nina Simone's recordings in

22   Andrew B. Stroud's possession, custody, or control had been "sold" to the Roker

23   defendants for no consideration pursuant to a "Music and Artifact Agreement" dated

24   October 1, 2011.  *Id.* at 4.  The complaint in the *Kelly v. Roker* action asserts several claims

25   arising from the alleged fraudulent conveyance, disposal, and/or spoliation of the Nina

26   Simone recordings subject to the pending *Brown v. Stroud* litigation.  *Id.* at 10-15.  On

27   December 20, 2011, the Court issued an order finding the *Kelly v. Roker* action related to

28   *Brown v. Stroud*.  Dkt. No. 6, No. 11-cv-05822 JSW.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6.    The Interpleader Action

On March 8, 2013, Methven & Associates filed an action for interpleader under 28 U.S.C. § 1335 against Scarlett Stroud[4] as administrator of the Stroud Estate, ASI, SPE, Lisa Simone Kelly as administrator of the Simone Estate, Wally Roker d/b/a ICU Ent Dist. and d/b/a Wally Roker Music, Brown, Castle Rock Entertainment, Warner Bros. Entertainment, Inc., Warner Bros. Independent Pictures, and Sony Music Entertainment, Inc. ("the interpleader action").  Dkt. No. 1, No. 13-cv-01079 JSW.  The interpleader action seeks to adjudicate the defendants' claims relating to ownership of property identified in an attachment to the complaint which includes original audio and video recordings of Nina Simone.  *Id.* ¶ 13.  The complaint alleges that, during the course of providing legal representation to Andrew B. Stroud, he shipped the property subject to the interpleader action to Methven & Associates so that it could produce the items as discovery.  *Id.* ¶¶ 16, 19.  The property was not reclaimed by Andrew B. Stroud and was left in the possession of Methven & Associates after Stroud passed away.  *Id.* ¶ 20.  On March 20, 2013, the Court issued an order relating the interpleader action to *Stroud v. Castle Rock*, *Brown v. Stroud*, and *Kelly v. Roker*.  Dkt. No. 6, No. 13-cv-01079 JSW.  On January 21, 2014, the Court granted the motion of Methven & Associates for leave to deposit the property with the Court.  Dkt. No. 95, No. 13-cv-01079 JSW.

On December 19, 2013, District Court Judge Jeffrey S. White issued an order revoking the pro hac vice status of W. Charles Robinson, counsel for Scarlett Stroud as the administrator of the Stroud Estate, ASI, and SPE, as a sanction for disregarding the Local Rules and orders of the Court. Dkt. No. 86, No. 13-cv-01079 JSW.  Because ASI and SPE are corporations and cannot represent themselves, the Court ordered them to obtain new counsel and have such new counsel file an appearance by January 17, 2014.  *Id.* at 2.   The Court ordered Scarlett Stroud to provide a written statement as to whether she intends to appear pro se or through new counsel by January 17, 2014.  *Id.* at 2-3.

---

[4] Scarlett Stroud is named in the interpleader action as "Scarlett Paradies-Stroud."  *Id.*

Scarlett Stroud, ASI, and SPE have not complied with the Court's order. Instead, on December 30, 2013, Robinson filed an appeal from the order granting leave to deposit the property on behalf of Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in her capacity as executrix of the Stroud Estate. Dkt. No. 88, No. 13-cv-01079 JSW. On February 3, 2014, Robinson filed an appeal from the order granting leave to deposit the property on behalf of Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in her capacity as executrix of the Stroud Estate. Dkt. No. 99, No. 13-cv-01079 JSW.

**7.    The Substitution of Scarlett Stroud and the Imposition of Sanctions**

On May 4, 2012, Methven & Associates moved to withdraw as counsel for Andrew B. Stroud, ASI, and SPE. Dkt. No. 413. On July 14, 2012, Andrew B. Stroud passed away. Dkt. Nos. 447; 550 at 30. On July 26, 2012, ASI was dissolved. Dkt. No. 550 at 17, 66-67. On August 24, 2012, Brown and the Simone Estate moved to substitute Andrew B. Stroud's surviving spouse designated as sole beneficiary and executrix in his will, Scarlett Stroud, in the decedent's place in both *Brown v. Stroud* and *Kelly v. Roker*. Dkt. No. 459 at 5. On October 4, 2012, the Court granted the motion as unopposed, substituting Scarlett Stroud for Andrew B. Stroud. Dkt. No. 470.

On October 12, 2012, Judge White ordered that the discovery sanctions be paid in full by October 26, 2012. Dkt. No. 477. On October 31, 2012, the Court granted Methven & Associates' motion to withdraw as counsel upon the condition that Methven & Associates continue to receive service of all documents for ASI and SPE until substitute counsel makes an appearance or until ASI and SPE are terminated as parties. Dkt. No. 483 at 2.

The Court further admonished the parties that ASI and SPE are corporations and, thus, cannot represent themselves. *Id.* The Court ordered ASI and SPE to show cause as to whether they intended to find alternate counsel and, if not, "why judgment should not be entered against them on the claims against them and why their affirmative claims should not be dismissed for failure to prosecute." *Id.* The Court informed ASI and SPE that if they needed more time to find an attorney to provide a response to the order to show cause,

the Court would consider such a request.  *Id.*  With respect to Scarlett Stroud as the representative of the Stroud Estate, the Court noted that it was not yet clear whether she could proceed pro se or needed to retain counsel in order to appear on behalf of the estate.  *Id.* at 3.  The Court informed Scarlett Stroud that an attorney must represent a personal representative of an estate where the estate has multiple beneficiaries and creditors.  *Id.*  The Court ordered Scarlett Stroud to show cause in writing whether she intended to appear pro se or through new counsel, and, if she intended to proceed pro se, to demonstrate that she was the sole beneficiary to the Stroud Estate and that there were no other beneficiaries or creditors.  *Id.*  Alternatively, if Scarlett Stroud intended to obtain new counsel, the Court ordered her to state by when such counsel will make an appearance on behalf of the Stroud Estate.  *Id.* at 4.  The Court admonished Scarlett Stroud that her failure to timely respond to the order to show cause, and obtain new counsel if necessary, "will result in dismissal of the estate's affirmative claims for failure to prosecute and judgment being entered against the estate on the claims against it."  *Id.*  The Court also noted that the Stroud Estate has not paid the sanctions imposed against it and ordered Scarlett Stroud to pay the remaining sanctions by no later than November 21, 2012.  *Id.*  The Court admonished her that failure to comply with that order could result in further sanctions being imposed, including an order of contempt.  *Id.*  The October 31 order was served on Scarlett Stroud, SPE, ASI, and Robinson on November 2, 2012.  Dkt. No. 484.

ASI, SPE, and Scarlett Stroud all failed to respond to the order to show cause within the deadline set by the Court.  Dkt. No. 497.  In an order issued January 17, 2013, the Court noted sanctions were warranted against ASI, SPE and Scarlett Stroud as the representative of the Stroud Estate, both due to their failure to respond and, based on their lack of representation by counsel, their inability to proceed in Court.  *Id.*  The Court observed that "[w]ith respect to the claims against ASI, SPE and the Estate of Andrew Stroud, the proper sanction is the striking of any answers that have been filed and the entry of default against them."  *Id.*  However, the Court found that its initial order to show cause had not provided sufficient notice of the precise sanction.  *Id.*  Therefore, the Court issued a further order to

1  show cause to ASI, SPE and Scarlett Stroud to demonstrate in writing by no later than

2  February 5, 2013, "why the answers filed by ASI, SPE, and Andrew Stroud should not be

3  stricken and default be entered against ASI, SPE, and the Estate of Andrew Stroud[.]"  *Id.*

4  The Court admonished ASI, SPE, and Scarlett Stroud that their failure to respond to the

5  further order to show cause "will result in the answers filed by ASI, SPE, and Andrew

6  Stroud being stricken and default entered against them" and that "the affirmative claims by

7  ASI, SPE, and the Estate of Andrew Stroud . . . will be dismissed for failure to prosecute

8  without further notice."  *Id.*

9    In the afternoon of the day the responses to the further order to show cause were due,

10  W. Charles Robinson, as counsel for Andrew B. Stroud, ASI, SPE, and Scarlett Stroud in

11  her capacity as executrix of the Stroud Estate, sought an extension of time to respond to the

12  order to show cause on the basis that he needed time to familiarize himself with the

13  litigation.  Dkt. No. 503 at 2-6.  On February 14, 2013, the Court issued an order denying

14  the request for extension and imposing terminating sanctions.  Dkt. No. 511 at 5-6.  The

15  Court found that, in light of Robinson's long-time representation and involvement with

16  Andrew B. Stroud, Scarlett Stroud, ASI, and SPE, there was no excuse for Scarlett

17  Stroud's, ASI's, and SPE's continued delay and failure to respond to the Court's orders.

18  *Id.*  The Court further noted that despite clear and explicit orders, the sanctions imposed

19  "due to Andrew Stroud's inappropriate gamesmanship and conduct designed to obfuscate,

20  delay, and avoid responding to valid discovery requests in bad faith or willful misconduct

21  still ha[d] not been paid."  *Id.*  Therefore, the Court found that terminating sanctions were

22  "warranted due to the bad faith of counsel and of the Stroud parties, their repeated

23  gamesmanship and misconduct, their blatant disregard of the Court's orders, the Court's

24  need to manage its docket, and the need to prevent prejudice to the other parties in this

25  litigation who have been diligently attempting to litigate these cases."  *Id.*  The Court

26  dismissed "all affirmative claims by the estate of Andrew Stroud, ASI and SPE[,]" struck

27  "any answers that have been filed by these parties" and entered default against them.  *Id.* at

28  6.  The Court ordered the parties who were defending claims by the Stroud Estate, ASI, and

Case No. 08-cv-02348 JSW (NC)
REPORT AND RECOMMENDATION ON
MOTIONS FOR DEFAULT JUDGMENT

17

1  SPE in the three related matters to file motions for default judgment by March 15, 2013.

2  *Id.*

3       On March 7, 2013, the Court granted Robinson's applications to appear pro hac vice

4  on behalf of Scarlett Stroud and the Stroud Estate.  Dkt. Nos. 515, 516.  On March 18,

5  2013, Robinson filed a motion for reconsideration of the Court's order imposing sanctions

6  and the related orders leading up to that order on behalf of the Stroud Estate, ASI, and SPE.

7  Dkt. Nos. 536, 537.[5]  The motion for reconsideration argued that there was no personal

8  jurisdiction over Scarlett Stroud on the basis that she was not properly served with the

9  motion to substitute and that she was not properly substituted in as the representative of the

10 Stroud Estate.  Dkt. No. 537.  The declaration by Robinson submitted in support of the

11 motion for reconsideration also argued that the motion for extension of time should have

12 been granted and that the default order should be vacated because there is no support for

13 the finding that Robinson has had a long-time representation and involvement with the

14 Stroud parties and there is no showing of bad faith by the Stroud parties.  Dkt. No. 536-1 at

15 7-10.  In an order issued May 8, 2013, the Court found that service on Scarlett Stroud was

16 sufficient and denied the motion for reconsideration on this ground.  Dkt. No. 563 at 2.

17 The Court further found that it should not have substituted in Scarlett Stroud as the

18 representative of the Stroud Estate until November 20, 2012, when the New York Probate

19 Court issued letters testamentary designating Scarlett Stroud as the executor of the Stroud

20 Estate.  *Id.* at 5.  Although the Court granted the motion for reconsideration to the extent

21 Scarlett Stroud was substituted in before November 20, 2012, the Court found no basis for

22 vacating the sanctions which were not imposed until after Scarlett Stroud was a proper

23 party to this action.  *Id.* at 5-6.

24

25 [5] In an order issued April 2, 2013, the Court noted that Robinson purported to file the motion for reconsideration on behalf of SPE and ASI, despite the fact that he has filed pro hac vice

26 applications only on behalf of Scarlett Stroud and the Stroud Estate.  Dkt. No. 553 at 2.  The Court stated that, unless and until Robinson properly files pro hac vice applications on behalf of SPE and

27 ASI, and the Court grants such applications, he cannot appear on behalf of SPE and ASI and, thus, does not have the authority to file motions on their behalf.  *Id.*

28

Case No. 08-cv-02348 JSW (NC)              18
REPORT AND RECOMMENDATION ON
MOTIONS FOR DEFAULT JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

### 8.    The Motions for Default Judgment

On March 15, 2013, Brown, the Simone Estate, and Sony Music filed separate motions for default judgment. Dkt. Nos. 522, 529, 530. Brown moves for default judgment against Andrew B. Stroud, SPE, and Scarlett Stroud, as an individual and administratrix of the Stroud Estate, on Brown's First Amended Complaint, Dkt. No. 35, Brown's Reply Counterclaims, Dkt. No. 82, and Stroud's Fourth Amended Counterclaims, Dkt. No. 297. Dkt. No. 522 at 2. The Simone Estate also moves for default judgment against these parties and ASI on the Estate's First Amended Counterclaims, Dkt. No. 263, and Stroud's Fourth Amended Counterclaims, Dkt. No. 297. Dkt. No. 530 at 2, 8. Sony Music moves for a default judgment against Andrew B. Stroud, SPE, ASI, and Scarlett Stroud as the representative of the Stroud Estate. Dkt. No. 529 at 2.[6]

12

13

14

15

16

17

18

The Simone Estate's motion and supporting documents were served by first class mail on Robinson on March 15, 2013. Dkt. No. 540. Notice of Sony Music's Application for Default was provided to Andrew B. Stroud, SPE, ASI, and Scarlett Stroud as the representative of the Stroud Estate on the date the Application was filed. Dkt. No. 529-1 ¶ 3. Additionally, on March 20, 2013, the default judgment motions and supporting documents filed by Brown, the Simone Estate, and Sony Music were served by first class mail on SPE, "Attn: SCARLETT PARADIES-STROUD." Dkt. No. 542.

19

On March 29, 2013, Robinson filed a single opposition to the motions for default

20

21

22

23

24

25

26

27

28

[6] The Simone Estate's motion seeks default judgment of declaratory relief against the "Stroud Defendants" which it defines as including ASI. *See, e.g.*, Dkt. No. 530 at 2:3-10, 2:21-22, 7:6, 8:4-7, 11:9-10. The First Amended Counterclaims based upon which the Simone Estate moves for default judgment, however, refer to "Stroud" which is defined as Andrew B. Stroud and SPE, not ASI. Dkt. Nos. 263 at 2:9-11, 13:15; 530 at 8:9-13; 531-1. Similarly, Brown's default judgment motion asserts that declaratory judgment is appropriate against "Defendants" which it defines as including ASI. Dkt. No. 522 at 4:2-5, 6:18-19. Brown moves for default judgment on his First Amended Complaint and his Reply Counterclaims, which are only against Andrew B. Stroud and SPE, not ASI. Dkt. Nos. 35, 82. ASI did not appear in this action until the Fourth Amended Counterclaims, which post-date the pleadings upon which Brown and the Simone Estate's claims are based, and which were dismissed by the Court, finding among other things that ASI was not properly joined as a party. *See* Dkt. Nos. 297, 337. Furthermore, the combined proposed judgment submitted in support of the pending default judgment motions in this case does not include ASI. Dkt. No. 524 at 2:4-6, 2:14-15.

judgment filed in the related cases, *Stroud v. Castle Rock*, *Brown v. Stroud*, and *Kelly v. Roker*, on behalf of all of the Stroud parties.  Dkt. No. 550.  On June 4, 2013, Judge White referred the motions for default judgment in the three related cases to the undersigned Magistrate Judge for a report and recommendation.  Dkt. No. 566.

The next day after the referral of the motions for default judgment, the Stroud parties filed an appeal to the Ninth Circuit in each of the three related cases.  Dkt. No. 123, No. 09-cv-03796; Dkt. No. 567, No. 08-cv-02348 JSW; Dkt. No. 171, No. 11-cv-05822 JSW. The notice of appeal states that it is appealing the order(s) of the District Court, entered in these cases on May 8, 2013, "denying Stroud's Motions for reconsideration of the District Court's order substituting the Executrix for the Estate of ABS along with any subsequent order(s) regarding motions for default judgment filed against Stroud" in these cases "as a consequence of the denial of Stroud's Motions for reconsideration."  *Id.*  As ordered by the undersigned, the parties moving for default judgment briefed the issue of whether Stroud's notices of appeal divested the District Court of jurisdiction and the Stroud parties responded in a brief filed by Robinson.  Dkt. Nos. 573, 576.

The undersigned held a hearing on the motions for default judgment on September 4, 2013.  Dkt. No. 580.  The Stroud parties did not appear at the hearing.

On September 10, 2013, the Ninth Circuit Court of Appeals issued its mandate dismissing the appeal in *Stroud v. Castle Rock* due to counsel's failure to perfect the appeal.  Dkt. Nos. 135-36, No. 09-cv-03796.  On November 5 and November 26, 2013, the Court of Appeals issued its mandate dismissing the appeals in *Kelly v. Roker* and *Brown v. Stroud*, respectively, for lack of jurisdiction, finding that they were not taken from a final or otherwise appealable order.  Dkt. Nos. 584, 585; Dkt. Nos. 187, 189, No. 11-cv-05822 JSW.

//

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case against a defendant against whom a default has been entered, unless the defendant is a minor or an incompetent person, or is in military service. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2).

## III. DISCUSSION

### A.    Jurisdiction

When presented with a motion for default judgment, the Court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Additionally, the Court must "assess the adequacy of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, No. 07-cv-06469 JSW (EMC), 2008 WL 2474650, *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process."

1    *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

2       Here, the Court has subject matter jurisdiction over Brown's complaint based on

3 diversity, 28 U.S.C. § 1332, as Brown is a citizen of California, Andrew B. Stroud and SPE

4 are citizens of New York, and the property in controversy exceeds $75,000 in value,

5 exclusive of interests and costs. Dkt. Nos. 7 at 1; 35 at 1. Brown's complaint, the

6 counterclaims and third-party claim filed by Andrew B. Stroud, SPE, and ASI, the

7 counterclaims filed by the Simone Estate, and the reply counterclaims filed by Brown all

8 "form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The Court has subject

9 matter jurisdiction over Brown's reply counterclaims against Andrew B. Stroud, SPE, and

10 Sony Music based on supplemental jurisdiction, 28 U.S.C. § 1367, and also based on

11 diversity, as Sony Music is alleged to be a citizen of Delaware. Dkt. No. 82 at 7. The Court

12 has subject matter jurisdiction over the counterclaims filed by Andrew B. Stroud, SPE, and

13 ASI based on supplemental jurisdiction and federal question jurisdiction based on 28 U.S.

14 C. § 1331 and 28 U.S.C. § 1338 (as a "civil action arising under any Act of Congress

15 relating to . . . copyrights"). Dkt. No. 297 at 2. There is also diversity jurisdiction with

16 respect to the counterclaims brought by Andrew B. Stroud, SPE, and ASI against Brown as

17 ASI is alleged to be a citizen of New York. Dkt. No. 297 at 2. Finally, the Court has

18 supplemental jurisdiction over the Simone Estate's counterclaims. *See* Dkt. No. 588 at 7-8.

19       The District Court was not divested of jurisdiction as a result of plaintiffs' notice of

20 appeal. While, as a general rule, a proper notice of appeal transfers jurisdiction of a case

21 from the district court to a court of appeals, the filing of an appeal from a non-appealable

22 order does not divest the district court of jurisdiction. *Ruby v. Sec'y of U. S. Navy*, 365 F.2d

23 385, 388-89 (9th Cir. 1966). An order that simply enters a party's default is not a final

24 appealable order. *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir.

25 2009); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981). Therefore, the Stroud parties'

26 notice of appeal from the May 8, 2013, order did not divest this Court of jurisdiction.

27 Furthermore, the Ninth Circuit Court of Appeals has now issued its mandate dismissing

28 plaintiffs' appeal on November 26, 2013. Dkt. Nos. 584, 585.

Additionally, the Court has personal jurisdiction over the Stroud parties in default. Personal jurisdiction, "simply stated, is the power of a court to enter judgment against a person." *S.E.C.*, 504 F.3d at 1138. Here, the Court has already determined that it has specific jurisdiction over Andrew B. Stroud and SPE in denying their motion to dismiss Brown's amended complaint for lack of personal jurisdiction. Dkt. No. 48. Andrew B. Stroud and SPE also initiated the *Stroud v. Castle Rock* action, and moved to transfer venue to this Court taking the position that the outcome in the *Brown v. Stroud* action will be dispositive of the claims at issue. The Stroud Estate, ASI, and SPE further moved for reconsideration of the Court's orders leading to the entry of default, and opposed the pending default judgment motion without raising an objection based on personal jurisdiction (aside from the argument that the Court had no personal jurisdiction over Scarlett Stroud because she was not properly served with the motion to substitute, which Judge White rejected). *See* Dkt. Nos. 536, 537, 550, 563. Accordingly, the Court finds that any such objections have been waived.

Additionally, although not sued as a defendant by Brown, ASI filed "counterclaims" against Brown and the Simone Estate, and has thus consented to this Court's exercise of personal jurisdiction. Dkt. No. 297. *See S.E.C.*, 504 F.3d at 1149 ("[A] party has consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties."); *see also Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff."); *see also Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) *amended by*, 807 F.2d 1514 (9th Cir. 1987) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction. . . 'An appearance ordinarily is an overt act by which the party comes into

1   court and submits to the jurisdiction of the court. This is an affirmative act involving

2   knowledge of the suit and an intention to appear.'" (citations omitted)).  The jurisdictional

3   prerequisites are thus satisfied.

4          Additionally, none of the plaintiffs are a minor or incompetent person or in military

5   service.  *See* Fed. R. Civ. P. 55(b); 50 U.S.C. app. § 521(b)(1); Dkt. Nos. 529-1 ¶ 2; 550 at

6   17, 30-35, 39, 66-68.

7          Finally, the Stroud parties in default were adequately served with a notice of the

8   motions for default judgment in accordance with Federal Rule of Civil Procedure 55(b)(2),

9   and filed an opposition to the motion.  *See* Dkt. Nos. 529-1 ¶ 3, 540, 542, 550.

10  **C.    Default Judgment**

11         In their consolidated opposition to the motions for default judgment in the three

12  related cases, the Stroud parties make three primary arguments for why the default motions

13  should be denied and the default order vacated: (1) that the default order should be vacated

14  pursuant to Federal Rule of Civil Procedure 60(b) because the Court's findings in that

15  order that Robinson has had a long-time representation and involvement with the Stroud

16  parties, and that the Stroud parties and their counsel have acted in bad faith, are contrary to

17  the facts; (2) that the default order is void under Federal Rule of Civil Procedure 60(b)(4)

18  because the substitute motion was not properly served on Scarlett Stroud and, therefore, the

19  Court did not have personal jurisdiction over her; and (3) that the default order should be

20  vacated under Federal Rule of Civil Procedure 55 on the basis that "the default was not

21  willful" because Scarlett Stroud had not been appointed as a representative of the Estate

22  and thus was not a proper party to be substituted at the time of the substitution motion.

23  Dkt. No. 550.

24         These arguments were made by the Stroud parties in support of their motion for

25  reconsideration of the Court's order imposing terminating sanctions.  Dkt. Nos. 536, 536-1,

26  537.  In its May 8, 2013, order on the motion for reconsideration, the Court expressly

27  found that service on Scarlett Stroud was sufficient and, while the Court granted the motion

28  for reconsideration to the extent Scarlett Stroud was substituted in before November 20,

2012, the Court found no basis for vacating the sanctions as the further OSC and the order imposing sanctions were not issued until *after* Scarlett Stroud was a proper party to this action. Dkt. Nos. 497, 511, 563. The declaration Robinson submitted in support of the motion for reconsideration also argued that the default order should be vacated because there is no support for the finding that Robinson has had a long-time representation and involvement with the Stroud parties and there is no showing of bad faith by the Stroud parties. Dkt. No. 536-1. By denying the request to vacate the sanctions, the Court implicitly rejected this argument. In their opposition to the motion for default judgment the Stroud parties do not provide any new reasons for vacating the default order.

Furthermore, the *Eitel* factors here support a finding of default judgment.

### 1.   Default Judgment on Brown and the Simone Estate's Affirmative Claims

#### a.   Merits and Sufficiency of the Claims

As an initial matter, the undersigned addresses the moving parties' request for entry of default judgment as to Scarlett Stroud as an individual, in addition to her capacity as administratrix of the Stroud Estate. *See e.g.*, Dkt. No. 524 at 4-5. The moving parties do not explain why default judgment would be appropriate against Scarlett Stroud as an individual. The pleadings do not name Scarlett Stroud as an individual defendant. Moreover, Scarlett Stroud was substituted in as a representative of the Stroud Estate, not in her individual capacity. Dkt. No. 563 at 2. Thus, to the extent the pending motions for default judgment request relief against Scarlett Stroud as an individual, the undersigned Magistrate Judge recommends that the District Court deny that request.

##### i.   Declaratory Relief Claim

###### 1.   The Nina Simone Recordings and Audiovisual Works (Brown, the Simone Estate, and Sony)

Brown and the Simone Estate move for a declaratory judgment that SPE, Andrew B. Stroud, and Scarlett Stroud, as an individual and administratrix of the Stroud Estate, have no rights of reproduction in any Nina Simone recordings or audiovisual works. Dkt. Nos.

522 at 6; 530 at 2; 524 at 2.[7]

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy" within their jurisdiction, district courts may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For declaratory relief, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Ordinarily the question of whether a district court shall exercise jurisdiction in a declaratory judgment action rests in the sound discretion of that court." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation omitted). *See also Round Hill Cellars v. Lolonis Winery*, No. 11-cv-00757 JSW (EDL), 2011 WL 6961333, at *2-5 (N.D. Cal. Dec. 9, 2011) (granting default judgment for declaratory relief that plaintiff did not infringe defendant's trademarks); *Junker v. HDC Corp.*, No. 07-cv-05094 JCS, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) (where defendant to patent infringement claim failed to respond and did not present any defense, meritorious or otherwise, "entry of default judgment is justified without further proof of [the] claim of infringement").

Here, Brown and the Simone Estate have alleged an actual, substantial controversy between each of them and Andrew B. Stroud and SPE concerning the rights of reproduction of the Nina Simone recordings and audiovisual works. Dkt. Nos. 82 at 13:4-5; 263 at 11, 13:12-15, 21:4-13. By virtue of their default, Andrew B. Stroud, Scarlett Stroud as admninistratrix of the Stroud Estate, and SPE have admitted that (1) Andrew B. Stroud and

7

SPE have possession, custody or control of various Nina Simone recordings first fixed prior to February 15, 1972, and certain unpublished audiovisual performances that are not the subject of any audiovisual copyright registrations, Dkt. Nos. 82 ¶ 14; 263 ¶ 38; (2) the Stroud parties' sole source of rights in Nina Simone recordings, if any, was the Stroud Property Settlement, Dkt. Nos. 82 at 8:23-4:3; 263 ¶¶ 31-32; (3) to the extent Nina Simone had rights in the Schedule A recordings, she retained them and thus the Stroud parties own no interest in them, Dkt. Nos. 82 at 9:2-11; 263 ¶¶ 33-34; (4) to the extent the Stroud parties had any interest in the Schedule B recordings, they sold them to Noodle Records Corporation and thus they own no interest in them, Dkt. Nos. 82 at 9:12-10:9; 263 ¶¶ 35-37; and (5) although Andrew B. Stroud and SPE have no rights of reproduction in the recordings and unpublished audiovisual performances in question, they have attempted to exploit intellectual property rights to those works as their own, Dkt. Nos. 82 at 10:19-24; Dkt. Nos. 82 ¶ 14; 263 ¶¶ 42-44. Additionally, by virtue of their default, Andrew B. Stroud, Scarlett Stroud as admninistratrix of the Stroud Estate, and SPE have admitted that Andrew B. Stroud and SPE caused to be published false statements that Brown "fraudulently" and "illegally" obtained the disputed masters to be published on the website www.high-pristess.com.  Dkt. No. 35 ¶ 12.

Brown's motion for default judgment asserts that, while some of his prayers involve Sony Music, in order to conclude this litigation, he seeks judgment only as between Brown and the Simone Estate on the one hand and the Stroud parties on the other, and not as to Sony Music.  Dkt. No. 522 at 4-5 n.1.  The default judgment motion filed by the Simone Estate explains that the joint proposed judgment treats the recorded Nina Simone performances and audiovisual works separately from the rest of the Simone Materials.  Dkt. No. 530 at 8 n.3.  As the declaratory relief claims concerning ownership of those recorded performances between the Simone Estate, Brown and Sony Music remain outstanding, the requested judgment as to those items is limited to a declaration that the Stroud parties do not own them; the issue of which of the remaining parties owns them is reserved.  *Id.* Similarly, Sony Music asserts that a judgment should hold that the Stroud parties have no

1  ownership rights with respect to any recordings of musical performances by Nina Simone,

2  but should not decide the ownership rights of the recordings as between Sony Music,

3  Brown, the Estate, or any other party excepting the Stroud parties.  Dkt. No. 529 at 3.

4      Entry of default judgment as requested will not fully resolve this matter because Sony

5  Music, Brown, and the Simone Estate each assert ownership interests in the Simone

6  Recordings.[8]  *See e.g.*, Dkt. Nos. 82 at 10:10-18, 11:5-10; 263 ¶¶ 42-47.  The moving

7  parties, however, contend that judgment is proper under Federal Rule of Civil Procedure

8  54(b) which provides that, where there are multiple claims or multiple parties involved in an

9  action, a court may enter final judgment as to fewer than all of the claims or parties if the

10 court "determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

11     The undersigned agrees that there is no impediment to the immediate entry of default

12 judgment for declaratory relief as requested by the parties.  A judgment stating that SPE,

13 Andrew B. Stroud, and Scarlett Stroud, as an administratrix of the Stroud Estate, have no

14 rights to the Nina Simone recordings or audiovisual works, without deciding the ownership

15 interests among the other parties does not create a risk of inconsistent judgments, and there

16 is no just reason to delay entry of judgment.  At the same time, the requested judgment will

17 clarify the legal relations between the parties and will afford the moving parties relief from

18 the controversy giving rise to this action by clarifying that SPE, Andrew B. Stroud, and

19 Scarlett Stroud, as administratrix of the Stroud Estate, have no rights to any Nina Simone

20 recordings or audiovisual works.

21     Accordingly, the undersigned finds that Brown and the Simone Estate have stated a

22 sufficient claim for declaratory relief and recommends that the District Court enter default

23 judgment declaring that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of

24 the Stroud Estate, have no rights of reproduction in any Nina Simone recordings or

25

26 _____

27 [8]  Brown prayed for a declaratory judgment that he "is the legal or beneficial owner of the disputed Nina Simone recordings and audiovisual works," Dkt. No. 82 at 13:6-7.  Additionally, there is a declaratory relief claim by Brown against Sony Music.  Brown does not request adjudication of those claimed ownership interests here.

28

audiovisual works.[9]  That being so, the undersigned recommends that the District Court also enter default judgment declaring that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, own no interest in any Nina Simone performance embodied in the works bearing the following U.S. Copyright Office registrations:

| Title | Registration number |
|---|---|
| Nina Simone Sings Billie Holiday | N-4087 |
| Revolution: College Concerts (Amherst/Morehouse) | PAu-296-1390 |
| Nina Simone Protest Anthology | SRu-613-162 |
| Nina Simone Recordings: Vol. 2 | SRu-618-625 |
| Nina Simone Recordings: Vol. 5 | SRu-591-966 |
| Nina Simone Recordings: Vol. 6 | SRu-590-905 |
| Nina Simone – Montreux Jazz Festival | SRu-606-013 |
| Nina Simone Great Performances | PAu-335-5670 |
| Nina Simone Assorted Photographs | PAu-688-185 |
| Nina Simone Home Movie | PAu-293-401 |

The undersigned further recommends that the District Court hold that the default judgment does not adjudicate as between Brown, the Simone Estate, and Sony Music, "the ownership rights to any Nina Simone recordings or audiovisual works or the right to possession of any objects in which they are embodied, or the right to keep copies thereof, or the right to any of Stroud's profits thereon." Dkt. No. 524 ¶ 10.

### 2.  The Remaining Simone Materials (the Simone Estate)

Additionally, the Simone Estate seeks declaratory relief as to the ownership of Nina

---

[9]  In addition to his reply counterclaims, Brown also alleges a declaratory relief claim in his First Amended Complaint.  In that claim, Brown seeks a declaratory judgment "that defendants have no right, title, nor interest in any of the Disputed Masters." Dkt. No. 35 at 5:18-20.  In his motion for default judgment Brown explains that the "Disputed Masters" is a subset of the recordings resolved by Brown's reply counterclaims and should not be separately considered unless the Court declines to award the declaratory relief Brown prayed for in the reply counterclaims. Dkt. No. 522 at 10 n.8.

REPORT AND RECOMMENDATION ON
MOTIONS FOR DEFAULT JUDGMENT

Simone's diaries, letters, photographs, recordings, videotapes or other depictions of Nina Simone, other than any recordings and audiovisual works which have been addressed separately in section III(C)(1)(a)(i)(1) above (the "Remaining Simone Materials"). Dkt. Nos. 263 at 11:12-21; 524 ¶ 12.

By virtue of their default SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate have conceded that (1) the rights in the Remaining Simone Materials belonged solely to Nina Simone, and subsequent to her death, to the Estate, Dkt. No. 263 ¶ 42; (2) that, nevertheless, Andrew Stroud and SPE have publicly disseminated the Remaining Simone Materials, and have usurped the copyright and other intellectual property rights to the Remaining Simone Materials as their own, Dkt. No. 263 ¶ 43; and (3) that it is likely that Andrew Stroud and SPE are in possession of Remaining Simone Materials, and there is an imminent threat that they will attempt to publish and claim the copyright to those items, which properly belongs to the Simone Estate, Dkt. No. 263 ¶ 44.

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter a default judgment declaring that the Simone Estate is the rightful owner of the Remaining Simone Materials and that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, have no rights of reproduction in any Remaining Simone Materials.

### 3. The Request for Injunction as to the Remaining Simone Materials (the Simone Estate)

Based on its claim for declaratory relief, the Simone Estate also seeks a permanent injunction. Dkt. Nos. 263 at 21:4-13; 524 ¶ 14. Under 28 U.S.C. § 2202, district courts are empowered to grant an injunction as "(f)urther necessary or proper relief" to effectuate a declaratory judgment. *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981); *see also Round Hill Cellars*, 2011 WL 6961333, at *5 (recommending that the District Court grant injunctive relief against defaulting defendant after entering declaratory judgment that plaintiff did not infringe defendant's trademarks). A plaintiff seeking a permanent

injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Because the Simone Estate's claim for a declaration of ownership here is limited to the Remaining Simone Materials, the requested injunction should similarly be limited. According to the Simone Estate's counterclaims, Andrew B. Stroud and SPE are in possession of Remaining Simone Materials, allegedly obtained through fraudulent concealment, have sought to exploit those materials, and have failed to provide an accounting of the materials in their possession. Additionally, the history of the Stroud parties' unexcused delay, bad faith, and failure to respond to the Court's orders suggests that these activities will not cease absent judicial intervention.

Therefore, the undersigned Magistrate Judge finds that the Simone Estate will be irreparably harmed if an injunction is not issued and recommends that the District Court enter a permanent injunction providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and each of them, and each of their respective officers, agents and employees, and all persons acting in concert with them, their agents, assigns, affiliates and representatives, are permanently enjoined, restrained and prohibited from licensing, reproducing, manufacturing, printing, distributing, selling, marketing, promoting, advertising, broadcasting, publishing and/or otherwise exploiting the Remaining Simone Materials, or causing the foregoing activities to take place.

### 4. The Request to Be Bound by the Injunctions from the Prior Actions (Brown and the Simone Estate)

In his First Amended Complaint, Brown also seeks a declaration that SPE, Andrew Stroud, and Scarlett Stroud, as an individual and administratrix of the Stroud Estate are bound by the final judgments and permanent injunctions in *Nina Simone v. San Juan Music Group*, No. 94-cv-01288 TEH and *Nina Simone v. Marshall Sehorn*, No. 95-cv-03590

CAL, 1998 WL 410894 (N.D. Cal. July 10, 1998).  Dkt. Nos. 35 at 5:18-20; 522 at 10:10-12; *see also* Dkt. No. 82 at 9:21-10:9.  The Simone Estate also requests enforcement of the portions of the injunctions entered in the prior actions that require the enjoined parties to deliver up to the Simone Estate each and every recording, and all physical elements thereof. Dkt. Nos. 263 at 13:23-14:2, 21:18-22; 530 at 10:23-27.

Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds not only the parties, their officers, agents, servants, employees, and attorneys, but also "other persons who are in active concert or participation" with them if they have received actual notice of the injunction by personal service or otherwise.  *See also Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) ("The nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders." (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985)).

Here, Brown alleges that the defendants in the prior actions claimed interests in the disputed masters based on chains of title that purportedly began with Andrew B. Stroud and SPE.  Dkt. No. 35 ¶ 5.  Brown further alleges that, pursuant to the final judgments and permanent injunctions, along with a series of written conveyances, Nina Simone acquired all rights to the masters that she did not already own, and that "[n]o later than approximately 2000, [Andrew B. Stroud and SPE] had actual notice of the permanent injunctions entered in the Prior Actions and their application to [Andrew B. Stroud and SPE] as persons acting in concert and/or participation with said prior defendants at the time the injunctions were entered."  *Id.* ¶¶ 3, 7.  Brown and the Simone Estate allege that Andrew B. Stroud and SPE were allegedly among the persons who acted in concert with the Sehorn defendants at the time the injunctions were entered and therefore, are bound by the prior actions' injunctions. Dkt. Nos. 82 ¶ 12; 263 ¶ 37.

Notwithstanding their actual notice of the final judgments and permanent injunctions entered in the prior actions, Andrew B. Stroud and SPE contend that they are the exclusive owners of one or more of the disputed masters.  Dkt. No. 35 ¶ 14.  Brown further alleges that on August 29, 2006, one of the persons enjoined in the prior actions from licensing or

attempting to license any Simone recordings, Jerry Williams dba Swamp Dog, and Andrew B. Stroud and SPE, conspired to violate the injunction issued in the prior actions. *Id.* ¶ 10. The complaint specifies that Andrew B. Stroud and SPE engaged Williams to act as their agent for the licensing of the disputed masters and that Williams offered to license the disputed masters to third parties. *Id.*  The complaint further alleges that in December 2006, Andrew B. Stroud owned www.ninasimone.biz, which allowed visitors to listen to and purchase downloads of Nina Simone recordings, including the version of "Just in Time" from the film "Before Sunset." *Id.* ¶ 11.  The entry of default against Andrew B. Stroud and SPE establishes these allegations.

Furthermore, Brown has submitted evidence that the harm Brown is facing from Andrew B. Stroud and SPE's conduct is ongoing.  Although Andrew B. Stroud passed away on July 14, 2012, Dkt. No. 482 at 5, and ASI was dissolved on July 26, 2012, Dkt. No. 452 at 2, as of March 1, 2013, several of the Stroud parties' releases were still available for online purchase.  Dkt. No. 523 ¶¶ 8-9, at 82-93.

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter a declaratory judgment providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are bound by the permanent injunctions issued in the prior actions.

### 5.  The Request to Allow Copying (Brown, the Simone Estate, and Sony)

Based on their counterclaims, Brown and the Estate also seek a writ compelling Andrew B. Stroud and SPE to make available all Nina Simone recordings and audiovisual works in their possession, custody or control for digital copying and, if appropriate, non-destructive preservation by Brown, the Simone Estate and Sony Music.  Dkt. No. 82 at 12-13; 263 ¶ 49; 522 at 8-9; 524 ¶¶ 10-11.  In its motion for default judgment, Sony Music also joins this request.  Dkt. No. 529 at 9-10.

As the Court already determined, Brown and the Simone Estate have stated a sufficient claim for declaratory relief and a declaratory judgment is proper, finding that

SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, have no rights of reproduction in any Nina Simone recordings or audiovisual works.  As a result of the Andrew Stroud and SPE's default, it is further established that Andrew B. Stroud and SPE have exclusive possession, custody or control over pre-February 15, 1972, Nina Simone sound recordings and unpublished audiovisual works which are not the subject of any audiovisual copyright registrations, and for which no other copies exist.  Dkt. Nos. 82 ¶ 24; 263 ¶ 38.  Andrew B. Stroud and SPE have publicly disseminated Simone Materials, and have usurped the copyright and other intellectual property rights to the Nina Simone Materials as their own.  Dkt. No. 263 ¶¶ 39, 43.  The Nina Simone works in Andrew B. Stroud and SPE's possession, custody, or control are all fixed in deteriorating analog media and unless they are digitally copied the performances could be lost forever.  Dkt. No. 82 ¶ 26.  In support of his motion for default judgment, Brown also refers to evidence that there are at minimum 51 boxes of Nina Simone recordings that have yet to be produced for inspection and copying.  Dkt. No. 392-1 ¶ 11.  Brown and Sony Music need studio quality copies of the recordings in which they respectively hold ownership interests so that they might commercially exploit them.  Dkt. No. 82 ¶¶ 25, 27.  Sony Music, Brown, and the Simone Estate each assert ownership interests in Nina Simone recordings.  *See e.g.*, Dkt. Nos. 82 ¶¶ 13, 16, 24; 263 ¶¶ 42-47.

Based on the facts alleged by them, the Court finds that Brown and the Simone Estate will be irreparably harmed if Andrew B. Stroud and SPE are not compelled to make available for copying and/or non-destructive preservation the Nina Simone recordings and audiovisual works, and that an injunction is appropriate under 28 U.S.C. § 2202 (empowering courts to grant an injunction as "[f]urther necessary or proper relief" to effectuate a declaratory judgment).[10]

---

[10]   Brown's Reply Counterclaims include a separate cause of action seeking an order allowing copying of Nina Simone recordings and audiovisual works under the All Writs Act.  Dkt. No. 82 at 12-13.  In an order dated January 8, 2011, the Court granted Andrew Stroud and SPE's motion to dismiss the Estate's claim under the All Writs Act, 28 U.S.C. § 1651 on the basis that it is not a separate claim for relief.  Dkt. No. 251 at 18-19.  *See Lights of America, Inc. v United States District Court*, 130 F. 3d 1369, 1370 (9th Cir 1997) ("[C]ourts must possess an independent source

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter default judgment providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are ordered to forthwith make available to Brown, the Simone Estate, and Sony Music all Nina Simone recordings and audiovisual works in their possession, custody, or control for digital copying and, if appropriate, non-destructive preservation.  The undersigned Magistrate Judge further recommends that the District Court enter default judgment ordering that all recordings and audiovisual works that were or may have been recorded during the term of Nina Simone's contracts with RCA must be delivered to Sony Music, 550 Madison Avenue, New York, New York 10022 within thirty (30) days of entry of the default judgment and must be held in escrow pending determination of the ownership rights in those works, with reasonable access to Brown, the Simone Estate, and Sony Music to inspect and copy as they deem fit.

### ii.  The Unfair Competition Claim (Brown)

Brown also moves for default judgment on his reply counterclaim under California Business & Professions Code § 17200 *et seq.*, seeking an injunction prohibiting Andrew B. Stroud and SPE from attempting to license or otherwise exploiting any Nina Simone recordings or audiovisual works in which they have no rights of reproduction.  Dkt. No. 82 ¶¶ 17-22, at 13:13-15.

Section 17200 prohibits unfair competition which means "any unlawful, unfair or fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.  "This tripartite test is disjunctive and the plaintiff need only allege one of the three theories to properly plead a claim under section 17200."  *Med. Instrument Dev. Labs. v. Alcon Labs.*, No. 05-cv-01138 MJJ, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10, 2005).  "By proscribing any unlawful

of jurisdiction before entertaining a request for a writ").  The Simone Estate's First Amended Counterclaims removed the independent claim under the All Writs Act but continued seeking relief under that Act.  Dkt. No. 263 at 13, 21.

  While the Court agrees that it also has the authority to provide such injunctive relief under the All Writs Act, 28 U.S.C. § 1651 as "necessary or appropriate" in aid of the court's jurisdiction, it need not invoke that authority in light of its finding that relief is appropriate under 28 U.S.C. § 2202. *See Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 41-43 (1985).

business practice, section 17200 borrows violations of other laws and treats them as

unlawful practices that the unfair competition law makes independently actionable." *Cel-*

*Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citations and

internal quotation marks omitted). The broad scope of the unfair competition law also

permits courts "to enjoin on-going wrongful business conduct in whatever context such

activity might occur." *Id.* at 181 (citation omitted). "When a plaintiff who claims to have

suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the

word 'unfair' in that section means conduct that threatens an incipient violation of an

antitrust law, or violates the policy or spirit of one of those laws because its effects are

comparable to or the same as a violation of the law, or otherwise significantly threatens or

harms competition." *Id.* at 187. Further, § 17204 permits an injunction to be sought by any

"person who has suffered injury in fact and has lost money or property as a result of the

unfair competition." Cal. Bus. & Prof. Code § 17204. However, "a plaintiff cannot receive

an injunction for past conduct unless he shows that the conduct will probably recur." *Sun*

*Microsystems v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (citation omitted).

Brown alleges that he is a legal owner of some Nina Simone recordings and an

equitable owner of recordings the title to which she transferred to other companies,

including RCA (now Sony Music). Dkt. No. 82 at 10. Brown further alleges that Andrew

B. Stroud and SPE have possession, custody, or control of various Nina Simone recordings

first fixed prior to February 15, 1972, and certain unpublished audiovisual performances

that are not the subject of any audiovisual copyright registrations. *Id.* Brown alleges that,

although Andrew B. Stroud and SPE have no rights of reproduction in any of those works,

they have licensed some of them and "more recently" have offered to license those works

to at least Bethlehem Records, Sony Music, and Charly Records. *Id.* Brown claims that

this wrongful exploitation of the Nina Simone recordings has injured him by diverting sales

from lawfully manufactured copies of Nina Simone recordings for which he is entitled to a

share of the revenue. *Id.* at 11-12. By virtue of the default, Andrew B. Stroud and SPE

have admitted these facts which state a claim for an unfair business practice proscribed by

Business & Professions Code § 17200.  *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1206 (C.D. Cal. 2010) (holding that owner of internet website was liable to record companies for unfair competition under § 17200 when it reproduced, sold, and publicly performed without authorization pre-1972 recordings owned by the record companies).[11]

Furthermore, the reply counterclaims have sufficiently alleged a probability that, unless they are enjoined, Andrew B. Stroud and SPE will continue to attempt to wrongfully exploit Nina Simone's recordings.  Dkt. No. 82 at 12.  In addition, Brown has submitted evidence in support of his motion for default judgment showing that, although Andrew B. Stroud passed away on July 14, 2012, Dkt. No. 482 at 5, and ASI was dissolved on July 26, 2012, Dkt. No. 452 at 2, as of March 1, 2013, several of the Stroud parties' releases were still available for online purchase.  Dkt. No. 523 ¶ 8, 82-93.  For instance, ASI is selling Nina Simone albums for $8.99 which Brown declares is a dollar less than what he would charge and a dollar less than Sony Music charges for authorized copies.  *Id.*  Additionally, Brown asserts that, as a result of the refusal of the Stroud parties and their distributor to produce royalty statements in discovery, Brown is unable to obtain the information necessary to determine his actual losses which renders the harm suffered by him as a result of the Stroud parties' conduct irreparable.  *Id.* ¶ 9.

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter a default judgment providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are permanently enjoined from exploiting or attempting to license or exploit any Nina Simone recordings or audiovisual works.

### iii.  The Conversion and Replevin Claims (the Simone Estate)

Based on its counterclaims of conversion and replevin against Andrew B. Stroud and

---

[11] Brown also asserts that Andrew Stroud and SPE's licensing of Nina Simone recordings in which they have no rights of reproduction is proscribed by California Civil Code § 980.  Dkt. No. 82 at 12.

1  SPE, the Simone Estate seeks a default judgment awarding it possession of the Simone

2  Materials other than the recordings and audiovisual works provided for separately in section

3  III(C)(1)(a)(i)(1) above.  Dkt. Nos. 263 at 22:3-5; 524 ¶¶ 12-13.

4       To establish conversion, a party must show "(1) plaintiffs' ownership or right to

5  possession of the property at the time of the conversion; (2) defendants' conversion by a

6  wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Messerall v.*

7  *Fulwider*, 199 Cal. App. 3d 1324, 1329 (1988) (emphasis omitted).  Furthermore, under the

8  common law remedy of replevin, a plaintiff could "recover both personal property and

9  incidental damages from an unlawful possessor." *Adler v. Taylor*, No. 04-cv-08472, 2005

10  WL 4658511, at *3 (C.D. Cal. Feb. 2, 2005).  "In federal courts, replevin is a remedy

11  specifically approved by rule, as governed by the appropriate state law." *Id.*  "For specific

12  recovery, a plaintiff only needs to show (1) a right to possession of the property, and (2) the

13  defendant's wrongful possession." *Id.*; *Stockton Morris Plan Co v Mariposa Cnty.*, 99 Cal.

14  App. 2d 210, 213 (1950).  In other words, replevin is an available remedy for conversion,

15  and when a complaint supports a conversion claim, it also supports a remedy of replevin.

16  *Adler*, 2005 WL 4658511, at *3; *see also Int'l Raelian Movement (IRM) v. Hashem*, No. 08-

17  cv-0687, 2011 WL 3794899, at *8 (E.D. Cal. Aug. 25, 2011) (recommending default

18  judgment and order of replevin requiring defaulted defendants to return to plaintiff film

19  footage they had wrongfully converted from plaintiff).

20       The factual allegations of the Simone Estate's operative counterclaims, which must be

21  accepted as true, support the elements of conversion and replevin as to the Remaining

22  Simone Materials, Dkt. No. 263 ¶ 39.[12]  By virtue of their default Andrew B. Stroud and

23  SPE have conceded that (1) the Simone Estate is the rightful owner of the Remaining

24  Simone Materials, and thus they own no interest in them, Dkt. No. 263 ¶¶ 20, 34, 37, 42,

25

---

26  [12]  In ruling on Andrew Stroud and SPE's motion to dismiss the Simone Estate's counterclaims, the
District Court previously held that the tangible property sought to be recovered by the Simone

27  Estate was described with sufficient certainty to withstand a motion to dismiss.  Dkt. No. 251 at 16-
17.  The court concluded that the primary property defined as the "Simone Materials" and sought to

28  be returned are the personal diaries of Simone identified in the complaint. *Id.*

69-70; (2) Andrew B. Stroud and SPE unlawfully retained possession of Remaining Simone Materials, which was concealed in violation of the fiduciary relationship which existed between Nina Simone and her Estate on one hand, and Andrew B. Stroud and SPE on the other, *id.* ¶¶ 51-64, 71-83; and (3) the Simone Estate has been injured, *id.* ¶¶ 65-66, 84-87.[13]

Accordingly, the undersigned Magistrate Judge finds that the Simone Estate has established that Andrew B. Stroud and SPE are liable for conversion of the Remaining Simone Materials and that the Simone Estate is entitled to physical possession of the Remaining Simone Materials. Therefore, the undersigned recommends that the District Court enter judgment providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are ordered to deliver to the Simone Estate all Remaining Simone Materials within thirty (30) days of entry of the default judgment to Dorothy Weber at Shukat, Arrow Hafer, Weber & Herbsman, LLP, 494 8th Avenue, 6th Floor, New York, New York 10001.

While the Simone Estate seeks a judgment of possession as to Remaining Simone Materials, it also seeks to invoke this Court's authority to retain jurisdiction over that judgment, as compensatory damages may be warranted in the event that any Remaining Simone Materials are not returned and monetary damages are necessary to compensate the Simone Estate for any lost or damaged property. Since it is not possible to calculate these possible monetary damages until it is known which property is returned, the Simone Estate seeks to have this Court retain jurisdiction so that the judgment may be modified as appropriate to award compensation for any property not returned. Dkt. No. 530 at 17-18.

---

[13] The Court previously denied Andrew B. Stroud and SPE's motion to dismiss the Estate's conversion claim for failure to state a claim and rejected the argument that the Estate's claim for replevin is not a separate claim for relief. Dkt. No. 251 at 11-12, 15-16. The Court, however, dismissed the conversion and replevin claims, with leave to amend, based on its conclusion that the Simone Estate failed to allege sufficient facts to show that the statute of limitations should be tolled. Dkt. No. 251 at 11:18-22:2. Subsequently, by its order dated August 10, 2011, this Court denied Andrew B. Stroud and SPE's renewed motion to dismiss these claims, concluding that the Simone Estate had alleged facts demonstrating a fiduciary duty and showing that the discovery rule applied to toll the statute of limitations as to the claims for conversion and replevin. Dkt. No. 309 at 3-5.

Monetary damages for conversion would be appropriate under California Civil Code § 3336. *See* Cal. Civ. Code § 3336; *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666-67 (9th Cir. 1981); *see also Al G. Barnes Shows Co. v. Tait*, 61 Cal. App. 304, 309 (1923) ("A judgment for defendant for a return of property, or for its value where return cannot be had, is a proper judgment in replevin."); *cf. Int'l Raelian Movement (IRM) v. Hashem*, No. 08-cv-0687, 2011 WL 3794899, at *8 (declining on a default judgment to reserve the issue of damages in the event of non-delivery of the property in a replevin action where plaintiff had two opportunities and ample time to propose alternative damages and provide evidence in support of the award of such damages, but failed to do so). Furthermore, it is within the Court's power to retain jurisdiction for the purpose of amending the judgment by default once an audit assesses the damages. *See, e.g., Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. Cal. v. Shade Const. & Eng'g*, No. 06-cv-06830 PJH, 2007 WL 3071003, at *5 (N.D. Cal. Oct. 19, 2007); *Bay Area Painters v. Alta Specialty*, No. 06-cv-06996 MJJ (JCS), 2008 WL 114931, at *6 (N.D. Cal. Jan. 10, 2008) (retaining jurisdiction over future requests for attorneys' fees and costs incurred in judgment collection).

Accordingly, the undersigned Magistrate Judge recommends that the District Court reserve jurisdiction to amend the judgment to award money damages to the Simone Estate resulting from any failure of SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, to deliver possession of any property awarded or to account as required in this order.

### iv.  The Request for Accounting (the Simone Estate)

The Simone Estate also moves for default judgment on its claim for accounting against Andrew B. Stroud and SPE.  Dkt. Nos. 530 at 15-16; 524 ¶ 15.

To state a claim for accounting, a plaintiff needs to show "(1) [a] relationship between plaintiff and defendant, such as a fiduciary relationship, that calls for an accounting, and (2) that defendant owes a balance to plaintiff that is too complicated to calculate without an accounting from the court." *EMC Corp. v. Sha*, No. 13-cv-00118 (EJD), 2013 WL

4399025, at *6 (N.D. Cal. Aug. 13, 2013) (citations omitted); *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179-80 (2009).  "However, a fiduciary relationship between the parties is not required to state a cause of action for accounting.  The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." *Teselle*, 173 Cal. App. 4th at 179-80 (citation omitted); *see also In re Niles*, 106 F.3d 1456, 1462 (9th Cir. 1997) ("Basic principles of the law of fiduciaries therefore place the burden to render an accounting on the fiduciary once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted for.").  A claim for an accounting may be decided on a motion for default judgment. *See, e.g.*, *Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. 06-cv-6572 (JSW) (MEJ), 2007 WL 4973848, at *7, 10 (N.D. Cal. Dec. 6, 2007) (recommending that the District Court grant default judgment and permit plaintiff the opportunity to brief the specific amount of damages after a full accounting).

Having established that Andrew B. Stroud and SPE converted the Remaining Simone Materials in violation of their fiduciary duties to the Simone Estate, the Estate has demonstrated that it is entitled to an accounting in order to assess the full extent of its damages.  However, because the Simone Estate is not seeking at this time an adjudication of its conversion and replevin claims as to any recordings and audiovisual works which have been addressed separately in section III(C)(1)(a)(i)(1) above, its request for accounting of "any and all assets in the possession, custody or control of the Stroud Defendants," Dkt. No. 524 ¶ 15, should be limited to the Remaining Simone Materials.

Furthermore, the Simone Estate has not provided a valid basis for the Court to order an accounting "for all profits, gains and advantages derived from any and all exploitation, reproduction, sale, or other use of the Nina Simone Materials and any Nina Simone recordings and audiovisual works," with respect to any Simone Materials other than the pre-February 15, 1972 Nina Simone sound recordings and unpublished audiovisual works which are not the subject of any audiovisual copyright registrations.  Dkt. No. 524 ¶ 15. The Simone Estate's counterclaims do not state a counterclaim for conversion or replevin as

to such profits.  Even if it did, however, such a claim would be preempted under the Copyright Act.  A state law cause of action is preempted by the Copyright Act if two elements are satisfied: (1) "the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103," and (2) "the rights that plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act."  *Kodadek v. MTV Networks*, 152 F.3d 1209, 1212 (9th Cir. 1998) (citations omitted); *see Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (holding that, if a claim for conversion is only seeking damages for the interference with an intangible property right, such as "from a defendant's reproduction of the work—and not the actual return of a piece of property—the claim is preempted." (citation omitted))  *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) (holding plaintiff's claim for conversion was preempted where it "ma[de] the crucial allegation that Defendants have wrongfully used and distributed Plaintiff's work of authorship," as such an allegation is "'part and parcel' of a copyright claim.").  However, insofar as the Simone Estate seeks return of the tangible Remaining Simone Materials, this constitutes an extra element that cannot be preempted as the Copyright Act provides no such remedy.  *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984).

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter judgment ordering SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, to account for any and all Remaining Simone Materials in their possession, custody, or control, including any transactions, acquisitions, or transfers by the Andrew B. Stroud, Scarlett Stroud, as administratrix of the Stroud Estate, and SPE of or relating to the Remaining Simone Materials within thirty (30) days of entry of the default judgment.

### b. Remaining Factors

On balance, the remaining *Eitel* factors also favor entry of default judgment.  First, Brown, the Simone Estate, and Sony Music have demonstrated that they would be prejudiced if default judgment is not granted to enjoin the Stroud parties' conduct.  Dkt.

Nos. 522 at 11; 529 at 7-10; 530 at 16.  The moving parties have also shown that they have been prejudiced by the Stroud parties' failure to provide an accounting of all Simone Materials in their possession, or to permit the moving parties to copy and preserve the recordings.  Dkt. Nos. 522 at 9; 529 at 9-10; 530 at 10, 16.  This factor thus weighs in favor of default judgment.

Second, while the assertion of affirmative claims by the Stroud parties suggests a possibility of a dispute concerning the ownership of the Simone Materials, the Court's dismissal of those claims with prejudice based on failure to state a claim despite multiple opportunities to replead, *see* Dkt. No. 337, indicates that this factor also supports the entry of default judgment.

Third, while the public policy favoring disposition of cases on their merits usually counsels against dismissal, the history of the Stroud parties' unexcused delay, bad faith, and failure to respond to the Court's orders, *see* Dkt. No. 511, shows that it is unlikely that entry of default against the Stroud parties was the result of excusable neglect.

Fourth, the moving parties here are seeking a declaration of rights, injunctive relief, access for copying and preservation to the Nina Simone recordings and audiovisual work, and the return of the Remaining Simone Materials to the Estate.  With respect to possible compensatory damages which may be warranted in the event that the Remaining Simone Materials are not returned, the Simone Estate is asking the Court to retain jurisdiction to allow the Simone Estate to determine whether there are any monetary damages.  Dkt. No. 530 at 17-18.  The moving parties are not seeking an excessive or speculative monetary award.  Thus, there is no concern that a large, unreasonable monetary judgment will negatively impact the Stroud parties in this case.

Finally, although federal policy generally favors decisions on the merits, "the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dispositive.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citation omitted); *see Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (finding that entry of default judgment is warranted where a defendant's

failure to appear makes a decision on the merits impracticable, if not impossible).   The
Stroud parties' conduct, which has been found to hinder, delay and obfuscate the judicial
process, has made a decision against them on the merits impracticable, if not impossible.

**2.     Judgment of Dismissal as to Stroud's Affirmative Claims**

Brown and the Simone Estate seek entry of judgment of dismissal on the Stroud
parties' fourth amended counterclaims.   Dkt. Nos. 297; 522 at 11; 530 at 19-20.   In an
order issued October 3, 2011, the Court granted the motion to dismiss the fourth amended
counterclaims brought by Brown and the Estate, dismissing all claims brought by Stroud
and SPE with prejudice, and also dismissing all claims brought by ASI on the basis that it
was not properly joined as a party.   Dkt. No. 337.   This order and dismissal predate the
February 14, 2013 order in which the Court dismissed "all affirmative claims by the estate
of Andrew Stroud, ASI and SPE," and entered default against them.   Dkt. No. 511.   Based
on the Court's prior order of dismissal, the undersigned Magistrate Judge recommends that
the District Court enter a judgment of dismissal on the Stroud parties' fourth amended
counterclaims in favor of Brown and the Simone Estate.

**3.     Judgment of Sanctions**

In addition, in their motions for default judgment, Brown, the Simone Estate, and
Sony Music request that the judgment against the Stroud Estate include the remaining
monetary sanctions that have not been paid despite the Court's orders.   *See* Dkt. Nos. 445,
477, 483, 511.   In support of his motion for default judgment, Brown has submitted a
declaration stating that the monetary sanctions awarded to him, in the amount of $4,706.25,
remain unpaid.   Dkt. Nos. 445; 522 at 11-12; 523 ¶ 11.   The Simone Estate has submitted a
declaration indicating that while it has received the monetary sanctions owed by Andrew B.
Stroud's former counsel, the Estate has not received any portion of the $1,035.00 awarded
against Andrew B. Stroud.   Dkt. Nos. 445; 530 at 20; 531 ¶ 6.   Finally, based on a
declaration of Sony Music's counsel executed February 8, 2013, Sony Music states that it
has received the portion of the sanctions due from Andrew B. Stroud's former counsel and
that the sanctions awarded against Andrew B. Stroud, in the amount of $17,994.53, remain

unpaid.  Dkt. Nos. 445; 508-3 ¶ 2; 529 at 7:9-21.  In their opposition to the motions for default judgment, Dkt. No. 550, the Stroud parties do not address the moving parties' request for the judgment to include the unpaid sanctions.

Accordingly, the undersigned Magistrate Judge recommends that the District Court enter judgment jointly and severally against Andrew B. Stroud, SPE, and Scarlett Stroud as the administrator of the Stroud Estate, that includes the unpaid monetary sanctions as follows: $4,706.25 to Brown; $1,035.00 to the Simone Estate; and $17,994.53 to Sony Music.

## IV. CONCLUSION

The undersigned Magistrate Judge RECOMMENDS that the District Court GRANT IN PART AND DENY IN PART the motions for default judgment by Brown, the Simone Estate, and Sony Music, and as follows:

1.      The undersigned recommends that the District Court enter default judgment in favor of Brown and the Simone Estate declaring that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, have no rights of reproduction in any Nina Simone recordings or audiovisual works.  That being so, the undersigned recommends that the District Court also enter default judgment declaring that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, own no interest in any Nina Simone performance embodied in the works bearing the following U.S. Copyright Office registrations:

| Title | Registration number |
| --- | --- |
| Nina Simone Sings Billie Holiday | N-4087 |
| Revolution: College Concerts (Amherst/Morehouse) | PAu-296-1390 |
| Nina Simone Protest Anthology | SRu-613-162 |
| Nina Simone Recordings: Vol. 2 | SRu-618-625 |
| Nina Simone Recordings: Vol. 5 | SRu-591-966 |
| Nina Simone Recordings: Vol. 6 | SRu-590-905 |

| Nina Simone – Montreux Jazz Festival | SRu-606-013 |
|---|---|
| Nina Simone Great Performances | PAu-335-5670 |
| Nina Simone Assorted Photographs | PAu-688-185 |
| Nina Simone Home Movie | PAu-293-401 |

The undersigned further recommends that the District Court hold that the default judgment does not adjudicate as between Brown, the Simone Estate, and Sony Music, the ownership rights to any Nina Simone recordings or audiovisual works or the right to possession of any objects in which they are embodied, or the right to keep copies thereof, or the right to any of Stroud's profits thereon.

2.    The undersigned Magistrate Judge recommends that the District Court enter a default judgment in favor of the Simone Estate declaring that the Simone Estate is the rightful owner of the Remaining Simone Materials and that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, have no rights of reproduction in any Remaining Simone Materials.

3.    The undersigned Magistrate Judge recommends that the District Court enter a permanent injunction in favor of the Simone Estate providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and each of them, and each of their respective officers, agents and employees, and all persons acting in concert with them, their agents, assigns, affiliates and representatives, are permanently enjoined, restrained and prohibited from licensing, reproducing, manufacturing, printing, distributing, selling, marketing, promoting, advertising, broadcasting, publishing and/or otherwise exploiting the Remaining Simone Materials, or causing the foregoing activities to take place.

4.    The undersigned Magistrate Judge recommends that the District Court enter a declaratory judgment in favor of Brown and the Simone Estate providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are bound by the permanent injunctions issued in the prior actions.

5.    The undersigned Magistrate Judge recommends that the District Court enter default judgment in favor of Brown and the Simone Estate providing that SPE, Andrew B.

Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are ordered to forthwith make available to Brown, the Simone Estate, and Sony Music all Nina Simone recordings and audiovisual works in their possession, custody, or control for digital copying and, if appropriate, non-destructive preservation. The undersigned Magistrate Judge further recommends that the District Court enter default judgment ordering that all recordings and audiovisual works that were or may have been recorded during the term of Nina Simone's contracts with RCA must be delivered to Sony Music, 550 Madison Avenue, New York, New York 10022 within thirty (30) days of entry of the default judgment and must be held in escrow pending determination of the ownership rights in those works, with reasonable access to Brown, the Simone Estate, and Sony Music to inspect and copy as they deem fit.

6.     The undersigned Magistrate Judge recommends that the District Court enter a default judgment in favor of Brown providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are permanently enjoined from exploiting or attempting to license or exploit any Nina Simone recordings or audiovisual works.

7.     The undersigned Magistrate Judge recommends that the District Court enter default judgment in favor of the Simone Estate providing that SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, and all those acting in concert with them, are ordered to deliver to the Simone Estate all of Remaining Simone Materials within thirty (30) days of entry of the default judgment to Dorothy Weber at Shukat, Arrow Hafer, Weber & Herbsman, LLP, 494 8th Avenue, 6th Floor, New York, New York 10001.

8.     The undersigned Magistrate Judge recommends that the District Court reserve jurisdiction to amend the judgment to award money damages to the Simone Estate resulting from any failure of SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, to deliver possession of any property awarded or to account as required in this order.

9.     The undersigned Magistrate Judge recommends that the District Court enter

judgment in favor of the Simone Estate ordering SPE, Andrew B. Stroud, and Scarlett Stroud, as administratrix of the Stroud Estate, to account for any and all Remaining Simone Materials in their possession, custody, or control, including any transactions, acquisitions, or transfers by the Andrew B. Stroud, Scarlett Stroud, as administratrix of the Stroud Estate, and SPE of or relating to the Remaining Simone Materials within thirty (30) days of entry of the default judgment.

10. The undersigned Magistrate Judge recommends that the District Court enter a judgment of dismissal on the Stroud parties' fourth amended counterclaims in favor of Brown and the Simone Estate.

11. The undersigned Magistrate Judge recommends that the District Court enter judgment jointly and severally against Andrew B. Stroud, SPE, and Scarlett Stroud as the administrator of the Stroud Estate, that includes the unpaid monetary sanctions as follows: $4,706.25 to Brown; $1,035.00 to the Simone Estate; and $17,994.53 to Sony Music.

12. The undersigned Magistrate Judge recommends that the District Court deny the request for relief against Scarlett Stroud as an individual.

The moving parties must serve the Stroud parties with this order in a manner to ensure notice.

Any party may object to this recommendation within 14 days after being served with a copy. Fed. R. Civ. P. 72(b).

IT IS SO ORDERED.

Date: March 31, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge